UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GREENWICH LIFE SETTLEMENTS, INC. and      : No. 08 Civ. 3062 (PKL)
GREENWICH SETTLEMENTS MASTER TRUST        :
                                          :
                Plaintiffs,               :
                                          :
          - against -                     :
                                          :
VIASOURCE FUNDING GROUP, LLC,             :
                                          :
                Defendant.                :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## CORRECTED AMENDED COMPLAINT

Plaintiffs Greenwich Life Settlements, Inc. ("Greenwich Life") and Greenwich Settlements Master Trust ("Greenwich Trust") (collectively referred to at times as, "Greenwich"), by and through their counsel, Otterbourg, Steindler, Houston & Rosen, P.C., for their Amended Complaint against Defendant ViaSource Funding Group, LLC ("Defendant"), respectfully allege as follows:

## NATURE OF THE ACTION

1.      Through this action, Greenwich seeks recovery of losses sustained when Defendant failed to fulfill its obligations under a life insurance assignment contract to which Greenwich was a third-party beneficiary.

2.      Specifically, Defendant breached the Purchase Agreement and Irrevocable Absolute Assignment of Life Insurance Policy executed by Defendant on June 11, 2007 (the "Purchase Agreement"), pursuant to which Defendant had agreed to sell a certain life insurance

policy insuring the life of an individual known as Melanie Weller (the "Insured") issued by TransAmerica Occidental Life Insurance Company, (the "Insurer"), under the policy number 92551064 (the "Policy"). A copy of the Purchase Agreement is attached hereto as Exhibit "A."

3.    The Policy was purchased from Defendant by Legacy Benefits Corporation ("Legacy") on behalf of, and for the ultimate benefit of Greenwich. Upon completion of the sale, Greenwich became entitled to receive the Policy's death benefit upon the passing of the Insured under the Policy. However, the Defendant, apparently realizing that the Insured's life expectancy was much shorter than initially anticipated, directed the Insurer to refuse to recognize the change in beneficiary form submitted, so that, upon the Insured's death, Defendant retained the entire death benefit.

## THE PARTIES

4.    Plaintiff Greenwich Life Settlements, Inc., is a Delaware corporation with its principal place of business in Greenwich, Connecticut. Greenwich is in the business of investing in the life settlement market.

5.    Plaintiff Greenwich Settlements Master Trust is a Delaware Trust owned by Greenwich Life and serves to receive, on behalf of Greenwich Life, rights, title and interest in in-force life insurance policies purchased in the life settlement market.

6.    Defendant ViaSource Funding Group, LLC, is, upon information and belief, a limited liability company, organized, existing and doing business under the laws of the State of New Jersey, with its principal place of business in Bernard Township, New Jersey. Defendant is registered with New York State as a foreign limited liability company authorized to conduct business in the State of New York, and upon further information and belief, Defendant does in fact conduct business in the State of New York, specifically, in New York County.

- 2 -

## JURISDICTION, VENUE AND CHOICE OF LAW

7.     Jurisdiction is premised upon diversity of citizenship.  Defendant has advised Plaintiffs that all of the members of the Defendant limited liability company are New Jersey citizens of New York, New Jersey or Pennsylvania, and that neither the Defendant, nor any of its members, are citizens of Delaware or Connecticut.

8.     Defendant has consented to a New York forum by signing the Purchase Agreement, which provides that "any litigation related to this Purchase Agreement shall be brought in the State of New York."  Purchase Agreement at p. 4.  Further, many of the acts complained of herein occurred in, or were directed to the State of New York.

9.     The Purchase Agreement provides that it is to "be construed and enforced in accordance with the laws of the State of New York."  Purchase Agreement at p. 4.

## FACTUAL BACKGROUND

### Industry Background

10.     A life insurance settlement is the sale of an in-force life insurance policy to a third party for a value in excess of the insurance policy's cash surrender value, but less than its death benefit.  In a typical life settlement transaction, an investor would pay an insured a discounted lump sum value reflective of the life insurance policy's net present value of expected future cash flows, and make premium payments to keep the policy in force, becoming the owner and beneficiary of the life insurance policy in order to realize its benefits at the time of the insured's death.

11.     It is common for an investor such as the Defendant, who has purchased an in-force life insurance policy through a life insurance settlement, to then re-sell that policy in a

secondary market. The new purchaser, here Greenwich, is then responsible for continuing to make any premium payments, and is entitled to realize the benefit of the policy at the time of the insured's death.

12.    A life settlement transaction under the laws in many states is required to be transacted through a licensed provider company. The purchase of a life insurance policy in the secondary market is often transacted through a provider company, although not required under the law. In both life settlement and secondary market transactions, the provider acts as an intermediary to represent the interests of the purchasing party, and earns a fee or commission, paid for by the purchasing party, upon the close of the transaction. Providers purchase in-force life insurance policies on behalf of third party institutional investors known as financing entities, which are not required to be licensed. Legacy is a provider, and is a licensed purchase intermediary in many states. Greenwich is a financing entity. A licensed agent or broker represents the seller's interests in a life settlement, while a seller usually represents its own interests in a secondary market transaction.

13.    The purchase and sale of a life insurance policy through a provider in the secondary market involves several steps. First, after a provider and seller enter into a purchase agreement, the financing entity places the acquisition funds into escrow. Forms to change the ownership and beneficiary designation of the policy are executed by the seller in favor of the provider, and a duplicate set of such forms are executed by the provider in favor of the financing entity. Both sets of forms are sent to the insurance company that issued the policy. Once the insurance company, pursuant to the change of ownership/beneficiary forms which were sent, ultimately records the policy ownership and beneficiary designation to the financing entity, the financing entity and provider instruct the escrow agent to release the acquisition funds to the

seller. As the new owner of the policy, the financing entity then continues to make premium payments to the insurer, and upon the passing of the insured, collects the policy's death benefit.

## Purchase Agreement Background

14.     Upon information and belief, the Policy was originally purchased in November of 1993 by Frozen Foods Express Industries, Inc. ("Frozen Foods"). The Insured and her husband were majority shareholders of Frozen Foods, and the Policy was purchased to be used as part of a stock redemption plan in the event of the Insured's death. Thereafter, Defendant purchased the Policy from Frozen Foods in a life settlement transaction facilitated through a provider by the name of Life Equity, LLC, and in doing so, became entitled to receipt of the Policy's death benefit upon the Insured's passing.

15.     On January 26, 2007, Greenwich Life and Legacy entered into a Life Settlement Origination and Financing Agreement ("Origination Agreement"). Pursuant to the Origination Agreement, Legacy agreed to source, purchase, arrange and effect the purchase of in-force life insurance policies on behalf of Greenwich Life, or such special purpose entities as Greenwich might form for the purpose of financing such purchases, and receiving the death benefits payable under the purchased in-force life insurance policies. Under the terms of the Origination Agreement, Greenwich Life (or a special purpose entity formed by it), would become the sole owner and beneficiary of the in-force life insurance policy purchased by Legacy.

16.     In return for the services performed by Legacy under the Origination Agreement, Legacy is entitled to receive a commission for each policy purchased on behalf of Greenwich Life.

17.     On June 11, 2007, Defendant executed the Purchase Agreement, agreeing to sell Legacy the Policy for consideration of $3,951,662.

- 5 -

18.    At the time the Purchase Agreement was executed by Defendant, the Policy had a death benefit of approximately $5,200,000, to be paid to the named beneficiary upon the death of the Insured.

19.    Legacy entered into the Purchase Agreement in order to secure the approximately $5,200,000 death benefit at the time of the Insured's death on behalf of Greenwich.  Greenwich's expected profit was the difference between the purchase price and the death benefit, less the commission to Legacy, less any premiums paid between the close of the transaction and the Insured's death, as well as less any costs or expenses incurred as a result of the transaction.

20.    Pursuant to the terms and conditions of the Purchase Agreement, Defendant executed a Beneficiary Designation Form in favor of Legacy,  and also executed an Assignment to Transfer Ownership for Life Insurance Policies Form in favor of Legacy.   Additionally, Legacy executed a Beneficiary Designation Form in favor of Greenwich Trust, and also executed an Assignment to Transfer Ownership for Life Insurance Policies Form in favor of Greenwich Trust.  The forms described in this Paragraph are collectively, referred to herein as the "Change of Ownership Forms."

21.    Thereafter, Greenwich transferred $3,951,662 to Wells Fargo Bank Northwest, N.A., as Escrow Agent (as such term is defined by the Purchase Agreement) in order to fund Legacy's purchase of the Policy for Greenwich's benefit, thereby completing all conditions precedent required of the purchaser for the completion of the sale, and demonstrating its readiness, willingness and ability to complete the transaction governed by the Purchase Agreement.  Greenwich did not seek to recover the funds it had deposited with the Escrow Agent until it was informed by Legacy that Defendant would not proceed with the transaction.

22.    Legacy and Greenwich Trust executed an Assignment and Assumption Agreement on July 25, 2007, (the "Assignment").  Under the Assignment, Legacy agreed to sell, transfer, assign and convey to Greenwich Trust, all of Legacy's rights, title and interest in the Policy obtained by it pursuant to the Purchase Agreement.

23.    On or about August 1, 2007, the two sets of Change of Ownership Forms were sent to the Insurer for processing and recording.

24.    Upon information and belief, on August 9, 2007, Legacy contacted the Insurer to confirm that the Change of Ownership Forms had been received and processed.  Upon further information and belief, the Insurer notified Legacy that Defendant had instructed the Insurer to disregard any Change of Ownership Forms submitted after July 31, 2007, even though the Escrow Agent had already received the purchase price from Greenwich without objection or complaint of any kind by Defendant.

25.    Upon information and belief, Defendant never informed Legacy (or Greenwich) that it had instructed the Insurer to disregard any Change of Ownership Forms with respect to the Policy received after July 31, 2007.

26.    Although the Purchase Agreement provides Defendant with a limited right to rescind the sale, upon information and belief, Defendant never provided notice to Legacy (or Greenwich) of any rescission of the sale, or in any way complied with the applicable provisions of the Purchase Agreement.

27.    Upon information and belief, when Defendant learned of the deterioration of the Insured's health, it decided to disregard the terms and conditions of the Purchase Agreement, and scuttle the sale by disrupting the Insurer's recording of the Change of Ownership Forms.  Upon learning of the state of the Insured's health, Defendant determined that it would realize a far

greater profit from receiving the expected death benefit itself than it would from consummating the sale it had already contracted for with Legacy.

28.    At all times, Greenwich was ready, willing and able to complete the purchase of the Policy, and did in fact provide the purchase funds to the Escrow Agent in accordance with the Purchase Agreement.

29.    Because of its prior experience with providers in general, Defendant knew that providers such as Legacy purchased in-force life insurance policies on behalf of third party beneficiary financing entities such as Greenwich.    Additionally, here the Defendant was specifically aware that Legacy was purchasing the Policy on behalf of a third party financing entity, and that such third party would be providing the funding to complete the transaction. Therefore, when Defendant willfully breached the Purchase Agreement, it was aware that it would inflict economic damage upon Greenwich or whatever third party Legacy was purchasing the Policy on behalf of.

30.    Upon information and belief, the Insured passed away on September 21, 2007.

31.    All conditions precedent to the filing of this action have been satisfied or waived.

## FIRST CAUSE OF ACTION

### Breach of Contract and Covenant of Good Faith and Fair Dealing

32.    Greenwich    repeats and re-alleges each and every allegation in Paragraphs 1 through 31 above as though fully set forth herein.

33.    Defendant entered into the Purchase Agreement by which it agreed to sell the Policy to Legacy.    Legacy entered into the Purchase Agreement for the ultimate benefit of Greenwich.

- 8 -

34.     Greenwich transferred $3,951,662 to Wells Fargo Bank Northwest, N.A., as Escrow Agent for the benefit of Defendant as consideration for Defendant's sale of the Policy.

35.     Defendant breached the Purchase Agreement by instructing the Insurer to disregard the Change of Ownership Forms which would have entitled Greenwich to realize the benefit sought for it by Legacy in the Purchase Agreement.

36.     As a result of Defendant's breach, Greenwich has been damaged in an amount not less than $1,200,000, representing the difference between the purchase price and the death benefit paid upon the Insured's death, less the commission to Legacy.  Further, Greenwich has been damaged as a result of losses associated with expenses incurred with respect to its investigation, analysis of the Policy and negotiation of the Assignment, as well as costs associated with having its monies held in escrow.

37.     Additionally, Defendant violated the covenant of good faith and fair dealing by taking actions which destroyed the rights of Greenwich to receive the benefits of the Purchase Agreement.   Specifically, by instructing the Insurer to disregard the Change in Ownership Forms, Defendant destroyed Greenwich's right to have Legacy assign it the right to receive the Policy's death benefit.

38.     As a result of Defendant's bad faith disregard of Greenwich's rights to receive the Policy's death benefit, Greenwich has been damaged in an amount not less than $1,200,000, representing the difference between the purchase price and the death benefit paid upon the Insured's death, less the commission to Legacy.  Further, Greenwich has been damaged as a result of losses associated with expenses incurred with respect to its investigation, analysis of the Policy and negotiation of the Assignment, as well as costs associated with having its monies held in escrow.

## SECOND CAUSE OF ACTION

### Tortious Interference with Contract

39.    Greenwich Trust repeats and re-alleges each and every allegation in Paragraphs 1 through 38 above as though fully set forth herein.

40.    Greenwich Trust and Legacy were parties to the Assignment.

41.    Under the Assignment, Legacy was to sell, transfer, assign and convey to Greenwich Trust, all of Legacy's rights, title and interest in the Policy obtained by it pursuant to the Purchase Agreement, once Legacy's purchase of the Policy from Defendant was completed.

42.    Upon information and belief, at the time it told the Insurer to disregard the Change of Ownership Forms, Defendant was aware of the Assignment, or alternatively, was aware that Legacy has agreements and/or obligations to third parties arising out of the Purchase Agreement.

43.    By instructing the Insurer to disregard the Change in Ownership Forms, Defendant intentionally interfered with Legacy's ability to fulfill its obligations under the Assignment or other agreement Legacy had with a third party stemming from the Purchase Agreement.  Further, Defendant's instructions to the Insurer (to disregard Change in Ownership Forms with respect to the Policy received after July 31, 2007) were given for its own benefit, so that it could receive a windfall by receiving the Policy's expected death benefit of $5,200,000, instead of the sale price of $3,951,662.

44.    Upon information and belief, Defendant, upon learning of the deterioration of the Insured's health after it entered into the Purchase Agreement, realized that the Policy's death benefit would be paid in the near term, and that it could increase its profit by awaiting the death benefit, rather then by completing the immediate sale required by the Purchase Agreement.

45.    Defendant's instructions to the Insurer not to process the Change in Ownership Forms constitutes an intentional interference with Legacy's ability to fulfill its obligations under the Assignment.

46.    As a result of the foregoing, Greenwich Trust has been damaged in an amount not less than $1,200,000, representing the difference between the purchase price and the death benefit paid upon the Insured's death, less the commission to Legacy. Further, Greenwich Trust has been damaged as a result of losses associated with expenses incurred with respect to its investigation, analysis of the Policy and negotiation of the Assignment, as well as costs associated with having its monies held in escrow.

47.    Given the deleterious impact conduct of this type can wreak upon the life settlement market, ultimately to the detriment of consumers and other members of the public who may choose to sell their interests in life insurance, as well as the intentional, malicious and wanton conduct of Defendant, Greenwich Trust is also entitled to, and hereby demands, punitive damages in the amount of $5,000,000.

### THIRD CAUSE OF ACTION

### <u>Tortious Interference with Business Relations</u>

48.    Greenwich Life repeats and re-alleges each and every allegation in Paragraphs 1 through 47 above as though fully set forth herein.

49.    The Origination Agreement between Greenwich Life and Legacy provided the basis for prospective transactions between Greenwich Life and Legacy, namely the financing and purchase of life settlements.

50.    Upon information and belief, at the time it told the Insurer to disregard the Change of Ownership Forms, Defendant was aware of the relationship between Greenwich Life and Legacy, founded upon the Origination Agreement.

51.    Defendant intentionally interfered with the prospective business relationship between Greenwich Life and Legacy when it instructed the Insurer not to process the Change in Ownership Forms.

52.    Defendant's instructions to the Insurer to disregard the Change in Ownership Forms (without alerting Legacy and without rescinding the Purchase Agreement) constitute wrongful means of interfering with the prospective business relationship between Greenwich Life and Legacy.

53.    As a result of the foregoing, Greenwich Life has been damaged in an amount not less than $1,200,000, representing the difference between the purchase price and the death benefit paid upon the Insured's death, less the commission to Legacy.  Further, Greenwich Life has been damaged as a result of losses associated with expenses incurred with respect to its investigation, analysis of the Policy and negotiation of the Assignment, as well as costs associated with having its monies held in escrow.

54.    Given the deleterious impact conduct of this type can wreak upon the life settlement market, ultimately to the detriment of consumers and other members of the public who may choose to sell their interests in life insurance, as well as the intentional, malicious and wanton conduct of Defendant, Greenwich Life is also entitled to, and hereby demands, punitive damages in the amount of $5,000,000.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

55.    Greenwich repeats and re-alleges each and every allegation in Paragraphs 1 through 54 above as though fully set forth herein.

56.    Defendant received the Policy's death benefit under circumstances in which it would be unjustly enriched if it were to retain ownership of the Policy along with its accompanying death benefit.

57.    Specifically, Greenwich paid funds to the Escrow Agent so that it would become the owner of the Policy, and be entitled to receive the Policy's death benefit. Defendant's actions in instructing the Insurer to ignore the Change in Ownership Forms, after Defendant had executed the Purchase Agreement and Greenwich acted in reliance thereon by funding the escrow, allowed Defendant to retain the ability to receive the death benefit.

58.    Defendant has been unjustly enriched and may not in equity and good conscience retain the Policy's death benefit.

59.    As a result of the foregoing, Greenwich has been damaged in an amount not less than $1,200,000, representing the difference between the purchase price and the death benefit paid upon the Insured's death, less the commission to Legacy. Further, Greenwich has been damaged as a result of losses associated with expenses incurred with respect to its investigation, analysis of the Policy and negotiation of the Assignment, as well as costs associated with having its monies held in escrow.

60.    Given the deleterious impact conduct of this type can wreak upon the life settlement market, ultimately to the detriment of consumers and other members of the public who may choose to sell their interests in life insurance, as well as the intentional, malicious and

wanton conduct of Defendant, Greenwich is also entitled to, and hereby demands, punitive damages in the amount of $5,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Greenwich Life Settlements, Inc. and Greenwich Settlements Master Trust respectfully request that this Court enter an order:

a) Awarding damages on the First, Second, Third and Fourth Causes of Action in an amount not less than $1,200,000;

b) Awarding punitive damages on the Second, Third and Fourth Causes of Action in the amount of $5,000,000; and

c) For costs and such other damages and relief as this Court may deem just and appropriate.

Dated: New York, New York
       June 18, 2008

                                OTTERBOURG, STEINDLER, HOUSTON &
                                ROSEN, P.C.

                                By: _____
                                      Richard G. Haddad (RH - 6438)
                                      A Member of the Firm
                                230 Park Avenue
                                New York, New York 10169
                                (212) 661-9100
                                Fax (212) 682-6104
                                Email: rhaddad@oshr.com

                                *Attorneys for Plaintiffs Greenwich Life
                                Settlements, Inc. and Greenwich Settlements
                                Master Trust*

# EXHIBIT "A"

# PURCHASE AGREEMENT AND IRREVOCABLE ABSOLUTE ASSIGNMENT OF LIFE INSURANCE POLICY ("PURCHASE AGREEMENT")

ViaSource Funding Group, LLC, domiciled at 106 Allen Road, Bernard Township, NJ 07920 ("SELLING POLICY OWNER") and Melanie Weller ("INSURED") residing at 1034 Liberty Park Drive, Apt. 120, Austin, TX 78746, the owner and insured, respectively, of life insurance policy number 92551064 ("POLICY") issued by TransAmerica Occidental Life Insurance Company ("INSURANCE COMPANY"), and having a total face value of $ 4,312,500.00  (Four Million Three Hundred Twelve Thousand Dollars and 00/100 cts) in consideration of $3,951,662.00 (Three Million Nine Hundred Fifty One Thousand Six Hundred Sixty Two Dollars and 00/100) ("PURCHASE PRICE") to be paid to the SELLING POLICY OWNER by Legacy Benefits Corporation ("LBC"), a New York corporation having offices at Empire State Building, 350 Fifth Avenue, Suite 4320, New York, NY 10118, hereby assigns, transfers, and delivers to LBC, its successors, and/or assigns all of the rights, title, interest, options, and privileges in, to, and under the POLICY as owner/assignee thereof, subject to the terms of this agreement.

Included in this sale, assignment, transfer, and delivery shall be all monies due and to become due or payable under the POLICY and all dividends, options, benefits, and advantages derived from the POLICY, including, but not limited to, the right to surrender the POLICY at any time and to receive the surrender value thereof; the right upon the death of the insured, to collect the death benefit payable under the POLICY; and all other rights and benefits afforded to the owner, insured and/or beneficiary(ies) of and under the POLICY.

SELLING POLICY OWNER warrants the validity and sufficiency of this absolute and unconditional sale and assignment to LBC, its successors and/or assigns, of all of SELLING POLICY OWNER'S rights, title, to and/or interest in, and to the POLICY. SELLING POLICY OWNER further warrants that no tax or creditor's lien has been filed against SELLING POLICY OWNER, no judgment has been filed against SELLING POLICY OWNER or any of SELLING POLICY OWNER'S property, and no assignment has been made by SELLING POLICY OWNER for the benefit of creditors or any other persons.

SELLING POLICY OWNER hereby acknowledges and agrees that (a) SELLING POLICY OWNER is represented in this transaction by SELLING POLICY OWNER's independent life settlement broker ("BROKER") which BROKER acts as SELLING POLICY OWNER's agent in negotiations of the PURCHASE PRICE and in providing information and documentation to LBC on behalf of SELLING POLICY OWNER; (b) in addition to the PURCHASE PRICE, LBC will pay a commission to BROKER as compensation for this transaction; (c) regardless of BROKER'S receipt of commissions

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

or other compensation from LBC, BROKER represents the interests of SELLING POLICY OWNER only and does not represent the interests of INSURANCE COMPANY or LBC in the sale of the POLICY; (d) BROKER is not an agent of LBC; and (e) LBC does not represent SELLING POLICY OWNER in the sale of the POLICY.

SELLING POLICY OWNER further represents and warrants to LBC that: (a) this PURCHASE AGREEMENT is the legal, valid and binding obligation of the SELLING POLICY OWNER enforceable in accordance with its respective terms, (b) SELLING POLICY OWNER is the sole and undisputed owner of the POLICY, (c) the face amount of, and net death benefit payable under, the POLICY is correctly set forth herein, (d) the benefits under the POLICY are incontestable, as set forth in any contestability provisions of the POLICY and to the best of SELLING POLICY OWNER's knowledge there are no facts or circumstances in existence as of the date hereof which could serve as a defense to payment in full of the death benefits payable by the INSURANCE COMPANY to the named beneficiaries upon the death of the INSURED, (e) there are no liens on the POLICY, (f) (1)SELLING POLICY OWNER has not filed for bankruptcy and the POLICY has not been subject to any bankruptcy proceedings since both the date of the POLICY was issued and the effective date of any additions or changes in coverage provided by the POLICY or (2) if SELLING POLICY OWNER has filed for bankruptcy, the POLICY was not subject to the claims of creditors and SELLING POLICY OWNER has provided LBC with a true, complete and correct copy of the bankruptcy discharge document and any bankruptcy documents related to the POLICY, (g) the POLICY is not the subject of any law, divorce decree or other legal impediment which requires that the POLICY be maintained for the benefit of any person or entity or which prohibits or restricts SELLING POLICY OWNER from executing this PURCHASE AGREEMENT and/or from transferring the full ownership of the POLICY and changing the beneficiary designation thereof, (h) there are no restrictions on the transfer of the POLICY, (i) there are no unpaid premiums on the POLICY, (j) the POLICY is in full force and effect and has not lapsed, and, the original owner of the POLICY at issuance had an insurable interest in the INSURED at the time the POLICY was originally issued, and (k) all of the information contained in each of the documents delivered by or on behalf of SELLING POLICY OWNER to LBC in connection with this PURCHASE AGREEMENT is true, complete and correct and none of such information or representation and warranty omits to state a material fact necessary to make such information, representation and/or warranty not misleading in light of the circumstances under which such statement(s) were made.

In the event that a premium payment on the POLICY becomes due following the date on which settlement funds are deposited to ESCROW AGENT's escrow account but prior to the date on which INSURANCE COMPANY has recorded that the POLICY's ownership has been transferred to LBC or the ESCROW AGENT, SELLING POLICY OWNER shall make the minimum required premium payment to INSURANCE COMPANY to maintain the POLICY in force.

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

SELLING POLICY OWNER hereby acknowledges and understands that this AGREEMENT is based upon SELLING POLICY OWNER's application to LBC and that the statements and answers therein contained, continue to be true to the best of the SELLING POLICY OWNER's knowledge and belief, and shall continue to be true of the time of closing. Any change in SELLING POLICY OWNER's application shall be made in writing and signed by SELLING POLICY OWNER and LBC.

SELLING POLICY OWNER hereby acknowledges and agrees that LBC shall be permitted to disclose the identity and/or medical and financial information of SELLING POLICY OWNER to a third person if such disclosure is necessary to effect this PURCHASE AGREEMENT or necessary to permit LBC's financing entity, related trust or special purpose entity to finance the purchase of the POLICY by LBC.

Notwithstanding the foregoing, SELLING POLICY OWNER hereby acknowledges and agrees that LBC, at its own will and discretion, may transfer, sell, assign, or otherwise dispose of the POLICY and all its related legal, insurance, and medical documents to another purchaser(s) or financial institution at any time. SELLING POLICY OWNER and INSURED hereby acknowledge and agree that following the transfer of the POLICY by LBC, a subsequent owner of the POLICY shall have the right to directly request and obtain updated medical records regarding the INSURED from INSURED's medical practitioners for purpose of updating the INSURED's mortality evaluation or selling the POLICY to potential third parties. SELLING POLICY OWNER further acknowledges and agrees that any consents and authorizations relating to the release of personal data and medical information specifically contemplate the potential resale of the POLICY and the redisclosure of such information to potential purchasers of the POLICY.

There are no fees to be paid by SELLING POLICY OWNER to LBC in order to sell the POLICY.

It is agreed that an escrow agreement ("ESCROW AGREEMENT") shall be signed by LBC, SELLING POLICY OWNER, Wells Fargo Northwest, National Association, as escrow agent ("ESCROW AGENT"). The ESCROW AGREEMENT provides for the transfer of settlement proceeds due to SELLING POLICY OWNER within three (3) business days of receipt by LBC of written confirmation from INSURANCE COMPANY that the POLICY's ownership and/or assignment has been transferred to LBC.

It is agreed that LBC, as per the ESCROW AGREEMENT, shall arrange for the settlement funds to be deposited to ESCROW AGENT's escrow account within three (3) business days of receipt by LBC or ESCROW AGENT of SELLING POLICY OWNER'S signed documents necessary to effect the transfer of the POLICY to LBC, its assigns or to the ESCROW AGENT.

SELLING POLICY OWNER has the right to rescind this PURCHASE AGREEMENT

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.825.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

before the earlier of thirty calendar days after the date when this PURCHASE AGREEMENT is executed by all parties or fifteen calendar days after the receipt of the settlement proceeds by the SELLING POLICY OWNER, provided that, within the rescission period SELLING POLICY OWNER advises LBC of SELLING POLICY OWNER'S desire to rescind and refunds LBC the settlement proceeds and any premiums, loans and loan interest. LBC's rights and interest in the POLICY will terminate upon LBC's timely receipt of such payment.

Should INSURED die prior to the end of the rescission period, it shall be deemed that SELLING POLICY OWNER has rescinded this PURCHASE AGREEMENT if repayment of all settlement proceeds and, if applicable, any premiums, loans and loan interest to LBC is made within forty-five days after the end of the rescission period.

SELLING POLICY OWNER hereby acknowledges that SELLING POLICY OWNER has been given the opportunity to review this PURCHASE AGREEMENT with independent counsel of SELLING POLICY OWNER'S choosing and is entering into this PURCHASE AGREEMENT freely and voluntarily, without constraint and without anyone exerting any influence of any kind over SELLING POLICY OWNER.

SELLING POLICY OWNER hereby acknowledges that SELLING POLICY OWNER consents to this PURCHASE AGREEMENT, has a full and complete understanding of this PURCHASE AGREEMENT and the benefits of the POLICY, has released INSURED's medical records to LBC, and has consulted with any such persons as SELLING POLICY OWNER shall have deemed appropriate prior to entering into this PURCHASE AGREEMENT.

This PURCHASE AGREEMENT, together with SELLING POLICY OWNER's APPLICATION and ESCROW AGREEMENT, constitute the entire contract between LBC and OWNER.

This PURCHASE AGREEMENT shall be construed and enforced in accordance with the laws of the State of New York excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this agreement to the law of another jurisdiction, and any litigation related to this PURCHASE AGREEMENT shall be brought in the State of New York.

ANY PERSON WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE OR VIATICAL SETTLEMENT CONTRACT IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES OR CONFINEMENT IN PRISON.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

08-PA-Weller, M-92551064

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____11_____ day of _____June_____, 200 7 .

SELLING POLICY OWNER: _____

STATE OF _____New Jersey_____ )
                                  ) SS:
COUNTY OF _____Somerset_____ )

On this __11__ day of ____June____, 200 7 , before me came ____
____Christopher T. Daly - CFO/VP____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires ____4/21/2010____

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____11_____ day of _____June_____, 200 7 .

SELLING POLICY OWNER: _____

STATE OF _____New Jersey_____ )
                                  ) SS:
COUNTY OF _____Somerset_____ )

On this __11__ day of ____June____, 200 7 , before me came ____
____Marc E. Feaster - CEO/Pres.____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires ____4/21/2010____

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

08-PA-Weller, M-92551064                    Page 5 of 7

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____ day of _____, 200____ .

SELLING POLICY OWNER: _____

STATE OF _____ )

COUNTY OF _____ ) SS:

On this _____ day of _____, 200____ , before me came _____
_____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____ day of _____, 200____ .

INSURED: _____

STATE OF _____ )

COUNTY OF _____ ) SS:

On this _____ day of _____, 200____ , before me came _____
_____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____

08-PA-Weller, M-92551064                    Page 6 of 7

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

**LEGACY BENEFITS CORPORATION**

By:    _____    _____
       Name                                 Title

       _____
       Date

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

GREENWICH LIFE SETTLEMENTS, INC. and        :        No. 08 Civ. 3062  (PKL)
GREENWICH SETTLEMENTS MASTER TRUST          :
                                            :        **CERTIFICATE**
                    Plaintiffs,             :        **OF SERVICE**
                                            :
          - against -                       :
                                            :
VIASOURCE FUNDING GROUP, LLC,               :
                                            :
                    Defendant.              :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

          RICHARD G. HADDAD, hereby certifies that:

          I am a Member of the law firm of Otterbourg, Steindler, Houston & Rosen, P.C., New

York, New York, counsel for Plaintiffs Greenwich Life Settlements, Inc. and Greenwich

Settlements Master Trust.

          On June 18, 2008, I caused a copy of the Corrected Amended Complaint and the Exhibit

thereto, to be served by hand upon John W. Dunne, Esq., attorney for Defendant, at Kelleher &

Dunne LLP, 17 Battery Place, 11th Floor, New York, New York 10004.

Dated: New York, New York
          June 18, 2008

                                                    _____
                                                    RICHARD G. HADDAD