UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| GREENWICH LIFE SETTLEMENTS, INC.  and GREENWICH SETTLEMENTS MASTER TRUST, | : | No. 08 Civ. 3062 (PKL) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| - against - | : | |
| | : | |
| VIASOURCE FUNDING GROUP, LLC, | : | |
| | : | |
| Defendant. | : | |

---

## MEMORANDUM OF LAW ON BEHALF OF DEFENDANT, VIASOURCE FUNDING GROUP, LLC, IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND FOR ALTERNATIVE RELIEF

---

Michael D. Schottland, Esq.,
      Admitted *pro haec vice*,
      Of Counsel

Peter V. Koenig, Esq.,
      On the Brief

## PRELIMINARY STATEMENT

The background of this action is explained in the accompanying Certification of Marc E. Feaster, the President and Chief Executive Officer of ViaSource, and the Certification of Counsel for ViaSource. Respectfully, the Certifications and Exhibits should be examined in detail.

As a brief summary:

ViaSource and Legacy Benefits Corporation are in the business of viatical settlements. Viatical settlement companies purchase life insurance policies during the lifetimes of the insureds. The owners / beneficiaries receive payments during the insureds' lifetimes. When the insureds pass away, the viatical settlement company receives the death benefit.

Time is critical to viatical settlement transactions. If a policy is to be purchased or sold, the transaction must close promptly.

In May of 2007, ViaSource and Legacy Benefits entered into discussions for the sale by ViaSource of a life insurance policy owned by ViaSource, insuring the life of one Melanie Weller. In anticipation of the potential sale, ViaSource and its financing source, GE Capital, signed preliminary documents and a proposed Purchase Agreement. Legacy Benefits, however, did *not* sign and return the Purchase Agreement or other required documents. The potential transaction required that Legacy Benefits place the purchase price -- nearly $4 million -- into escrow with Wells Fargo Bank. Legacy Benefits did *not* do so. After increasingly urgent demands for completed documents, ViaSource considered the potential transaction to be aborted.

Unbeknownst to ViaSource, Legacy Benefits fraudulently changed documents that ViaSource had provided. Legacy Benefits changed the dates of signatures, and filled in the names and addresses of the "new owner" and "beneficiary" of the Weller Policy. Legacy Benefits also secretly signed --

1

*but never provided to ViaSource* – a copy of the proposed Purchase Agreement.

As a result, the proposed transaction was never implemented.

Beginning in August 2007, Legacy Benefits claimed that the transaction was still in effect. Legacy and its attorneys wrote "demand letters" to ViaSource. Of present significance, Legacy Benefits stated that it was the sole party in interest. There was no mention whatsoever of any "assignment," of the Greenwich plaintiffs, or of any third party involvement.

On September 13, 2007, ViaSource filed an action in the Superior Court of New Jersey, Law Division, Monmouth County -- its State and county of domicile -- to vindicate its rights to the Weller Policy against the claims of Legacy Benefits. Legacy Benefits filed a belated action in New York State court, claiming that it owned the policy. Again, Legacy Benefits claimed that it was the sole party in interest. Again, Legacy Benefits never mentioned an "assignment," the Greenwich plaintiffs, or any third party.

Thereafter, Legacy Benefits abandoned its claims to the Weller Policy. This was implemented by a dismissal with prejudice of Legacy Benefits' New York action and the subsequent dismissal of ViaSource's New Jersey action. Throughout, Legacy Benefits maintained that it was the sole party in interest. Once again, there was no mention of an "assignment," the Greenwich plaintiffs, or any third party.

ViaSource and Legacy Benefits also entered into a confidential Settlement Agreement, which purports to prohibit disclosure of its terms or of the substance of the settlement negotiations. However, the mutual dismissals by Legacy Benefits and ViaSource, of record, should suffice for purposes of the present Motion.

On or about February 29, 2008, the Greenwich plaintiffs commenced the present action

against ViaSource, claiming that they were the assignees of Legacy Benefits' rights with respect to the Weller Policy. ViaSource received notice of the Greenwich action in early March of 2008.

By this Motion, ViaSource seeks to dismiss the Greenwich action, and alternative relief.

The Greenwich action is barred by res judicata and the finality of judgments. Legacy Benefits' claims regarding the Weller Policy were extinguished by the dismissals, with prejudice, of the prior New Jersey action and the prior New York action. This Court must give full faith and credit to those dismissals. The Greenwich plaintiffs cannot impeach them in this action. Argument, Point I.

This action should be dismissed because the Greenwich plaintiffs have failed to join an indispensable party -- Legacy Benefits. Point II.

If this action be not dismissed, then it should be transferred to the United States District Court for the District of New Jersey. This Court lacks jurisdiction, because the Greenwich plaintiffs cannot utilize the "forum selection" provisions of the proposed (but ineffective) agreement between ViaSource and Legacy Benefits. New Jersey is the appropriate State for continuing this action -- if it continues at all. Point III.

## ARGUMENT

### POINT I

### THE PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA AND THE FINALITY OF JUDGMENTS

The material facts are simple, persuasive and dispositive.

Legacy Benefits[1] claimed to be the owner of the subject Policy. ViaSource vigorously denied Legacy's claim. On September 13, 2007, ViaSource filed an action in New Jersey to vindicate its interests. On October 9, 2007, Legacy served a Complaint filed in New York, averring[2] that it was the sole owner of the Policy.[3]

Thereafter, Legacy *withdrew and dismissed* all claims to the Policy under its purported agreement with ViaSource. On December 3, 2007, Legacy dismissed and discontinued, with prejudice, its New York action claiming to own the Policy. In reliance upon the dismissal of Legacy's claims of ownership, ViaSource dismissed its action in New Jersey on January 29, 2008.

In March of 2008, Greenwich served the original Complaint in this action, predicated upon Legacy's right to the Policy. As a matter of law, Greenwich's claims are barred by res judicata and the finality of the dismissals in the courts of New York and New Jersey. Legacy has no right to the Policy, therefore, Greenwich can have no right.

The finality and effect of a State court's judgments and orders is determined by the law of

---

[1] And *only* Legacy Benefits -- Legacy claimed to be the sole and exclusive owner; Legacy never mentioned an "assignment," an "assignee" (Greenwich) or any other party with any interest in the Policy.

[2] *Averring* -- it was a *Verified* Complaint, under oath.

[3] ViaSource denied the New York court's jurisdiction over the matter.

4

the State:

> As the United States Supreme Court has acknowledged,
>
>> [t]he preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of [preclusion] in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." Kremer v. Chemical Construction Corp., 456 U.S. 461, 481-482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); see also Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts.
>
> Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).
>
> [Howard v. Town of Bethel, 481 F.Supp. 295, 301 (S.D.N.Y. 2007)]

The federal courts in New Jersey likewise recognize:

> The federal courts are referred, for the claim and issue preclusion effect of a state court judgment, at least initially, to the law of the rendering state. 28 U.S.C. s 1738. New Jersey requires, for the application of res judicata, identity of causes of action, of parties or their privies, and of issues. E. g., Brick Tp. Ocean County v. Vannell, 55 N.J.Super. 583, 590, 151 A.2d 404, 408 (App.Div.1959) (Haneman, J.).
>
> [New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868, 874 (3rd Cir. 1981)]

Here, the claims and issues in the prior actions are the same as those broached by the subsequent Greenwich action. The prior actions were premised upon the existence of a contract to

sell the Policy to Legacy; the same alleged contract forms the basis for Greenwich's action. Legacy

dismissed and abandoned its claims. Greenwich, the alleged privy of Legacy, cannot revive those

dismissed claims.

The claims in this case were extinguished by the voluntary dismissal of the prior actions:

Plaintiff relies on the following passage from Kelleher v. Lozzi, 7 N.J. 17, 26,
80 A.2d 196, 200 (1951):

'It has been held that a dismissal of a suit made after, and based upon,
an agreement between the parties by which a compromise settlement
and adjustment of the subject matter in dispute is made, is a dismissal
on the merits and would be a bar to further litigation on the same
subject between the parties; * * *.'

This, as stated in the opinion, is suggestive of a retraxit. Restatement of Judgments,
s 53(a); 50 C.J.S., Judgments, s 634; cf. Public Service Elec. and Gas Co. v.
Waldroup, 38 N.J.Super. 419, 426, 119 A.2d 172 (App.Div.1955). **Thus, when a
plaintiff compromises his claim and as a result his action is dismissed, the order
of dismissal operates as an adjudication that he has no cause of action.** United
States v. Parker, 120 U.S. 89, 95, 7 S.Ct. 454, 30 L.Ed. 601, 604 (1887).

[Gray v. Cholodenko, 39 N.J.Super. 406, 409, 121 A.2d 417, 418 (App.Div. 1956),
certif. den. 22 N.J. 602, 127 A.2d 12 (1956); emphasis added]

See Joseph L. Muscarelle, Inc. v. State, Department of Transportation, 175 N.J.Super. 384, 394, 418

A.2d 1310, 1316 (App.Div. 1980), app. dism. 87 N.J. 321, 434 A.2d 73 (1981) (consent judgment

precludes any other or further claim for damages). New York law is the same in this regard.

Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc., 159 F.3d 129, 134 (3rd Cir.

1998) (New York law) and authorities cited therein.

The validity of State court proceedings must not be impeached by re-litigation:

The United States Supreme Court has long recognized that "[p]ublic policy dictates
that there be an end of litigation; that those who have contested an issue shall be
bound by the result of the contest, and that matters once tried shall be considered
forever settled as between the parties." Baldwin v. Traveling Men's Assn., 283 U.S.

6

522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). The Court has also stated that "res judicata is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...." Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917) (cited in Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).FN1 Res judicata encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes. See Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

[In re Matunas, 261 B.R. 129, 130 (Bankr. D.N.J. 2001)]

Where a subsequent action is precluded by the termination of a prior action in State court -- here, *two*

prior actions -- this Court should dismiss the subsequent action:

As the Supreme Court made clear in Exxon Mobil [Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)], "a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment" even if there is jurisdiction to hear the merits of the claim, and the claim is otherwise properly presented. Exxon Mobil, 544 U.S. at 293, 125 S.Ct. 1517; see Hoblock [v. Albany County Bd. of Elections,] 422 F.3d [77,] 92 [(2nd Cir. 2005)] (citing Exxon Mobil). In determining whether claim or issue preclusion applies, our inquiry is governed by New York state law.[4] See 28 U.S.C. § 1738 ("Such ... judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."); see also Hoblock, 422 F.3d at 93; Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986).

[McKithen v. Brown, 481 F.3d 89, 103-104 (2nd Cir. 2007), *cert.* denied, ___ U.S. ___, 128 S.Ct. 1218, 170 L.Ed.2d 59 (2008)]

ViaSource's ownership fo the policy was confirmed months ago, as a matter of record, in the

courts of both New Jersey and New York. Legacy's claims under its purported contract were

dismissed and extinguished, again in two courts. Greenwich cannot resurrect those claims, or

challenge that ownership, in a subsequent action. Its Complaint should be dismissed.

Greenwich's purported assignment from Legacy does not impair the effectiveness of the

---

[4] The issuing court was a New York state court.

7

dismissals. As a matter of law, in both New Jersey and New York, an assignment is ineffective

unless and until the obligor is notified of the assignment:

> [A]n individual may have rights in a contract which have been assigned to
> him. *See, e.g.*, Berkowitz v. Haigood, 256 N.J.Super. 342, 346, 606 A.2d 1157 (Law
> Div.1992). . . . **To be effective, the assignment** must be clear and unequivocal and
> **must be noticed to the obligor.** Berkowitz, *supra*, 256 N.J.Super. at 346, 606 A.2d
> 1157 (citing Costanzo v. Costanzo, 248 N.J.Super. 116, 590 A.2d 268 (Law
> Div.1991)). **Once properly notified of the assignment**, the obligor has the duty to
> pay the assignee, rather than the assignor. Ibid.
>
> [Tirgan v. Mega Life and Health Insurance, 304 N.J.Super. 385, 389-390, 700 A.2d
> 1239, 1241 (Law Div. 1997); emphasis added; other cits. om.]

In Smith v. Kissel, 92 A.D. 235, 87 N.Y.S. 176 (A.D. 1904), aff'd. p.c. 181 N.Y. 536, 73

N.E. 1133 (1905), the plaintiff and defendant entered into an agreement for the purchase of property.

Thereafter, they agreed to terminate their agreement:

> The plaintiff produced an assignment of Smith's right under this agreement
> with the defendant, dated April 2, 1897. This was some time before the arrangement
> between Smith and the defendant by which Smith terminated his interest in the
> contract. The evidence is clear that the defendant had no knowledge of this transfer.
> **The plaintiff gave him no notice of it, and the defendant continued to treat
> Smith as the principal**, and, relying upon Smith's undertaking, made these payments
> and relieved Smith from his obligations upon the mortgages. **There can be no
> question but that, in the absence of knowledge of the assignment, the plaintiff
> was justified in treating Smith as the person entitled to whatever rights there
> were under the contract, and the plaintiff, therefore, is bound by the act of
> Smith, her assignor, in releasing the defendant from any obligation under the
> contract** in relation to the profits to be realized from the sale of this property.
>
> [Id., 187 N.Y.S. at 180; emphasis added]

Likewise in the case at bar, Greenwich cannot avoid Legacy's release of claims via an alleged

assignment that was not provided to ViaSource. *See* The Poughkeepsie Savings Bank v. R & G

Sloane Manufacturing Company, Inc., 84 A.D.2d 212, 216, 445 N.Y.S.2d 560, 563 (A.D. 1981)

(assignment of chose in action ineffective as to obligor without notice; citing Smith and other

authorities).

Two Courts have entered dismissals with prejudice, disposing of Legacy's claims concerning the Policy. This Court must give full faith and credit to these final dismissals.

### POINT II
### THIS ACTION SHOULD BE DISMISSED BECAUSE THE PLAINTIFF FAILED TO IDENTIFY AND JOIN LEGACY AS AN INDISPENSABLE PARTY

Legacy Benefits is indispensable to the claims at issue:

> That brings us to a consideration of the term 'indispensable party'. The definition is not found in the Federal Rules of Civil Procedure. It must be gathered from the decisions of the federal courts. The following quotation from Barney v. Baltimore City, 6 Wall. 280, 284, 73 U.S. 280, 284, 18 L.Ed. 825 [(1867)], points out the distinction between proper parties, necessary parties and indispensable parties:

> > 'There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that while they may be called proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such, that if their interest and their absence are formally brought to the attention of the court, it will require them to be made parties if within its jurisdiction, before deciding the case. But if this cannot be done, it will proceed to administer such relief as may be in its power, between the parties before it. And there is a third class, **whose interests in the subject-matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit, when these parties cannot be subjected to its jurisdiction.**

> > 'This class cannot be better described than in the language of this court, in Shields v. Barrow, {17 How. 130, 15 L.Ed. 158} in which a very able and satisfactory discussion of the whole subject is had. They are there said to be 'persons who not only have an interest in the controversy, but an interest of such a nature, that a final decree cannot be made without either affecting that interest, or leaving the

9

> controversy in such a condition that its final determination may be
> wholly inconsistent with equity and good conscience."
>
> **If an indispensable party is absent from an action, the court is obliged to dismiss
> the action entirely.** Metropolis Theatre Co. v. Barkhausen, 7 Cir., 170 F.2d 481
> [(7th Cir. 1948)], *certiorari* denied 336 U.S. 945, 69 S.Ct. 812, 93 L.Ed. 1101
> [(1949)].
>
> [Photometric Products Corp. v. Radtke, 17 F.R.D. 103, 108-109 (S.D.N.Y. 1954);
> emphasis added]

Legacy Benefits is an indispensable party to this action. Legacy Benefits averred, under oath,

that it was the sole purported owner of the Policy under its alleged agreement with ViaSource.

Legacy dealt with ViaSource, throughout, as if it were the sole party in interest. Legacy never

mentioned a purported "assignment," "a "third party beneficiary" or any other party with any interest

in the alleged transaction. Legacy dismissed all claims under its alleged contract with ViaSource,

in their entirety and with prejudice, in two courts. Further, Legacy entered into a settlement

agreement with ViaSource, which Legacy required be "confidential." This case cannot proceed in

this court without Legacy Benefits as a party.[5]

Greenwich, as the plaintiff, breached its obligations to identify Legacy Benefits, and to either

join Legacy or justify non-joinder. F.R.Civ. P. 19 provides, in pertinent part:

> (c) Pleading the Reasons for Nonjoinder. When asserting a claim for relief, a party
> must state:
>
>> (1) the name, if known, of any person who is required to be joined if
>> feasible but is not joined; and
>>
>> (2) the reasons for not joining that person.

Of course, "reasons" means *valid* reasons. Under the material facts, one can understand why

---

[5] *See* discussing in Point III, *post*.

Greenwich may wish to exclude Legacy Benefits and hide Legacy's pre-suit activities. It is certainly embarrassing -- as well as fatal to Greenwich's claims -- that its purported assignor Legacy averred, in two courts, that Legacy was the sole "owner" and party in interest concerning the Policy; that Legacy concealed Greenwich's alleged interest in the matter; that Legacy dismissed with prejudice all claims against ViaSource and renounced all claims to the Policy; that neither Legacy nor Greenwich ever informed either ViaSource or the courts of New Jersey or the courts of New York of Greenwich's alleged interest in the matter; that, if Greenwich be the assignee of Legacy's rights, then Legacy perpetrated a fraud upon the courts of two States as well as upon ViaSource.

Indeed, one may fairly characterize Greenwich's action in this Court and its failure to identify and join Legacy as an attempted fraud, upon a third Court.

However, we need not go that far. It is sufficient to find that Legacy is an indispensable party; that Greenwich has failed to identify and join Legacy; that Greenwich's action should therefore be dismissed.

## POINT III

### IF THIS ACTION BE NOT DISMISSED, THEN THIS ACTION SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

All claims by and through Legacy Benefits to the Policy were dismissed, in their entirety and with prejudice, by the dismissal of the first-filed New Jersey action and Legacy's belated New York action. As a matter of law, Greenwich simply has no case to pursue, anywhere.

If, however, this Court is inclined to allow Greenwich to proceed, then this action should be transferred to the United States District Court for the District of New Jersey. There are several reasons for this transfer -- some factual and pragmatic; others chiefly jurisdictional.

**A.     The Greenwich Claims Inevitably Involve Fraud and Wrongdoing Perpetrated in New Jersey, Victimizing a New Jersey Party and the New Jersey Courts**

In New Jersey, on the record of New Jersey's court, Legacy averred that it was the sole (alleged) owner and party in interest under its alleged agreement with ViaSource, a New Jersey company. The courts in New Jersey should be able to vindicate their interest in the integrity of their proceedings.

**B.     An Action is Pending in New Jersey Against Legacy Benefits**

On June 21, 2008, ViaSource filed an action against Legacy Benefits in New Jersey State court -- the court in which Legacy perpetrated its fraud. Legacy is indispensable to a meritorious and just resolution of this matter. Legacy *is* a party to a New Jersey action, but (through Greenwich's flouting of its duties under F.R.Civ.P. 19 and otherwise) *is not* a party to Greenwich's action in this Court.

If Greenwich's action be permitted to proceed at all, it should be transferred to the federal

12

court in New Jersey, where it can be joined with the pending action against Legacy Benefits.

**C.    This Court, Sitting in New York, Lacks Jurisdiction Over ViaSource, Because the Alleged Contract Between ViaSource and Legacy Does Not Confer Jurisdiction Over the Claims of Greenwich**

Greenwich bases its claim of jurisdiction in New York upon the alleged agreement between ViaSource and Legacy. *Greenwich is not a party* to the purported agreement. Therefore, Greenwich cannot impose any "forum selection" provisions of the agreement upon ViaSource as to Greenwich's claims.

This would be true even if the underlying agreement between Legacy and ViaSource were valid (and ViaSource demonstrates it is *not*). There is *no* agreement, purported agreement, proposal, or otherwise, under which ViaSource agreed to litigate *with Greenwich* in New York. Legacy *is not the plaintiff* and *is not a party* to this action.

With due respect, nothing more need be said.

**D.    The Alleged Contract Between ViaSource and Legacy Benefits Is Void By Virtue of the Dismissals of the Prior Actions**

Legacy abandoned its claim that the alleged agreement with ViaSource was valid, by dismissals in New Jersey and New York. Greenwich cannot resurrect the alleged agreement to impose New York's jurisdiction upon ViaSource. Again, this proposition appears self-evident.

**E.    The Alleged Contract Between ViaSource and Legacy Benefits Is Void Because It Was Never Delivered to ViaSource**

As averred in the Certification of Marc Feaster, President of ViaSource, Legacy Benefits never delivered a signed "Purchase Agreement" to ViaSource. As a matter of law, this is fatal to Legacy Benefits' position regarding the "forum selection clause" -- and indeed to other claims that Legacy Benefits may make.

13

Delivery is essential to a binding contract:

> It is an essential ingredient of every written contract that it be delivered by the party obligating himself to someone who has a right to control it; since the delivery is evidence of the assent of the promisor and of the reception by the promisee, it consummates the contract. As a general rule, a negotiable instrument, like any other written instrument, has no legal inception or valid existence as such until it has been delivered in accordance with the purpose and intention of the parties. Inasmuch as actual or constructive delivery is the final act in the execution of the instrument, it is as essential to impart validity to the paper as is the signature of the maker. Until that is done, it is a nullity.

[Straut v. Hollinger, 139 N.J.Eq. 206, 209 (Ch. 1947), quoting with approval 7 Am.Jur. 807, ¶32]

Builders Fair, Inc. v. Youmans, 39 N.J.Super. 183, 186 (App.Div. 1956) ("Assuredly the existence of an intention to deliver a written legal instrument by the party to be thereby obligated is an essential constituent of a valid delivery"; citing Straut, supra and Krysztofel v. Krysztofel, 1 N.J.Super. 381 (Ch.1948)); National City Bank of New York v. Borowicz, 40 N.J.Super. 414, 416 (App.Div. 1956); Barbetta Agency v. Sciaraffa, 135 N.J.Super. 495 (App.Div. 1975) ("there never was a completed delivery giving rise to a binding contract of sale"; citing with approval 1A Corbin on Contracts, §§ 250, 251 and 589 (1963) and other authorities).

Here, Legacy Benefits never provided a signed Purchase Agreement to ViaSource. Legacy Benefits cannot create a binding bilateral contract by signing the document (in secret) but not delivering the signed document to ViaSource. In the case of In re The Score Board, Inc., 238 B.R. 585, 591 (D.N.J. 1999):

> The Bankruptcy Court found that despite Debtor's inability to produce a signed contract, a contract existed because Debtor allegedly signed the counter-offer made by Bryant and placed it in its files. This Court rejects the Bankruptcy Court's holding to the extent that it held that signing the counter-offer and placing it in the files constituted acceptance. While signing a document may demonstrate an intention to accept an offer, such acceptance is not effective until if and when it is conveyed to

14

the other party. *See* <u>Hahn v. Vermont Law School</u>, 698 <u>F.2d</u> 48 (1st Cir.1983) (The First Circuit found that a formal signing was not sufficient in contract formation, rather, a court should focus on acts of conveyance such as the sending of information or a letter).

This rule is even more important in the case at bar, where the proposed Purchase Agreement included a 30-day revocation period measured from the date the agreement was fully executed. Here, Legacy Benefits purportedly signed[6] the Purchase Agreement on July 25, 2007, but never sent the signed agreement to ViaSource. Instead, Legacy Benefits waited until after the 30-day revocation period had expired (unbeknownst to ViaSource), and only then demanded "performance."

In sum, the absence of delivery of a signed document to ViaSource vitiates the Purchase Agreement. The "forum selection clause" falls with the agreement.

**F.    The Documents Relied Upon by Greenwich Were Fraudulently Altered**

The instances of Legacy Benefits' fraudulent alteration of documents are explained in the accompanying Certification by Mr. Feaster. In brief: ViaSource provided several documents signed in May and June of 2007, which did not designate a new owner or beneficiary for the subject policy. These documents were received by Legacy Benefits on June 20, 2007. Thereafter, Legacy Benefits fraudulently altered the dates of signature to be in July of 2007, and also fraudulently inserted other information into the documents. Legacy Benefits kept its forgeries a secret from ViaSource.

At this point, we do not yet know whether Greenwich connived in the fraudulent alteration of these documents. For purposes of jurisdiction and venue, it is sufficient to find that Greenwich cannot impose a New York forum upon ViaSource on the basis of these fraudulent documents.

---

[6] We do not know when Legacy Benefits *really* signed the Purchase Agreement. Given Legacy Benefits' fraudulent alteration of the signature dates in other documents, this too could be a fraud.

**G.    The Forum-Selection Clause is Void Because Legacy Renounced the Alleged Agreement and Requested Different Terms**

Greenwich relies upon the purported Purchase Agreement.  ViaSource denies the validity of *that* agreement -- both substantively and by virtue of the dismissals of Legacy's claims.

However, as averred by Mr. Feaster, Legacy Benefits sought to have ViaSource sign a *new agreement* beginning on July 27, 2007 -- the "Offer Acceptance" -- as explained in Paragraphs 27 through 29 of his Certification.  Clearly, Legacy Benefits did not consider the prior Purchase Agreement to be operative.

Of interest, Legacy Benefits' requests that ViaSource sign the *new* "Offer Acceptance" began on July 27, 2007 -- two days *after* Legacy Benefits secretly signed[7] the proposed Purchase Agreement.  Again, Legacy Benefits did not regard the proposed Purchase Agreement as sufficient for the potential transaction.  Legacy Benefits wanted a new document; one that ViaSource never signed.

Again, the venue provisions of the Purchase Agreement cannot be imposed upon ViaSource -- not by Legacy and not by Greenwich.

**H.    If This Action Be Not Dismissed, Then It Should Be Transferred to the District Court for the District of New Jersey**

The most appropriate resolution of the action by Greenwich is to dismiss it.  All claims by and through Legacy's alleged agreement with ViaSource were extinguished months ago.  This will allow ViaSource to pursue its pending action in New Jersey State court -- the court where Legacy perpetrated its fraud, in the State where Viasource, Legacy's victim, resides.

---

[7] *Purportedly* signed: we don't know when Legacy Benefits really signed the Purchase Agreement.

If the Court is not inclined to dismiss Greenwich's action, then the action should be transferred to federal court in New Jersey. The "forum selection clause" of the (discredited and void) agreement does not pertain to Greenwich. The agreement itself is void for substantive reasons as well as the prior dismissals with prejudice. Greenwich cannot utilize the void agreement to hale ViaSource into court in a foreign State. The courts of New Jersey have an interest in vindicating the integrity of their proceedings, in protecting their "citizen" ViaSource, and in calling Legacy Benefits and Greenwich to account for their wrongdoing. This Court should respect and facilitate that process.

17

## CONCLUSION

For the reasons set forth herein, it is respectfully urged that the Complaint in this action be dismissed, in its entirety and with prejudice.

In the alternative, if the action be not dismissed, then it is respectfully urged that the action be transferred to the United States District Court for the District of New Jersey.

Respectfully submitted,

Lomurro, Davison, Eastman & Muñoz, P.A.,
Attorneys for Defendant,
ViaSource Funding Group, LLC,
admitted *pro haec vice*

BY: _____
                Michael D. Schottland

DATED: August 15, 2008

18