UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GREENWICH LIFE SETTLEMENTS, INC. and GREENWICH SETTLEMENTS MASTER TRUST, | No. 08 Civ. 3062 (PKL) |
| Plaintiffs, | |
| - against - | |
| VIASOURCE FUNDING GROUP, LLC, | |
| Defendant. | |

## CERTIFICATION OF MARC E. FEASTER
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT
## AND FOR ALTERNATIVE RELIEF

Michael D. Schottland, Esq.,
    Admitted *pro haec vice*,
    Of Counsel

Peter V. Koenig, Esq.,
    On the Brief

I, Marc E. Feaster, of full age, hereby certify and say:

1. I am the President and Chief Executive Officer of ViaSource Funding Group, L.L.C. ("ViaSource"), the plaintiff in this action. I have personal knowledge of the facts and circumstances set forth herein, and am a custodian of the corporate documents attached hereto. I make this Certification in support of the Motion on behalf of ViaSource to dismiss the Complaint of plaintiffs, Greenwich Life Settlements, Inc. and Greenwich Settlements Master Trust ("Greenwich") and for alternative relief.

### No Contact with Greenwich and No Notice of an "Assignment"

2. At the outset, I aver absolutely and unequivocally that ViaSource never had any communications or contact whatsoever with the plaintiffs or anyone acting on their behalf regarding the matters in controversy in this action. I have reviewed all of ViaSource's records and spoken with ViaSource's officers and employees, which inquiries confirm this fact.

3. Likewise, I aver absolutely and unequivocally that neither Legacy Benefits Corporation nor anyone else ever notified ViaSource that the plaintiffs (or any parties other than Legacy Benefits) had or claimed to have any right, title, interest, assignment or involvement whatsoever in the proposed transaction between ViaSource and Legacy Benefits. I have reviewed all of ViaSource's records and spoken with ViaSource's officers and employees, which inquiries confirm this fact.

4. At all times until being served with the plaintiff's Complaint, ViaSource was told and believed that the sole party in interest in the proposed transaction, the subsequent lawsuits, and the dismissal of Legacy Benefits' claims was Legacy Benefits itself. I have reviewed all of ViaSource's records and spoken with ViaSource's officers and employees, which inquiries confirm this fact.

5. Without limiting the generality of the foregoing, ViaSource had no notice whatsoever of

1

any "assignment" or other arrangement between Legacy Benefits and Greenwich (or any other party or parties) regarding the Policy or the proposed transaction until ViaSource received the Complaint in the present action.

### No Contract

6. I also aver, at the outset, that there is no contract between ViaSource and Legacy Benefits, and no such contract ever came into existence. Legacy Benefits never signed the required documents. Legacy Benefits never funded the transaction. Legacy Benefits altered the proposed documents after ViaSource had signed the proposal. Legacy Benefits never provided a signed contract to ViaSource. In addition, any and all claims that such a contract ever existed were extinguished and dismissed months ago.

### Background

7. ViaSource is a "viatical settlements" company. Basically, ViaSource acquires the right to receive the proceeds of life insurance policies, from individuals who have been told that their life expectancy has been curtailed. The insureds receive cash payouts during their lifetimes. This is called a viatical settlement. When the individuals pass away, ViaSource receives the death benefit. At times, ViaSource also re-sells policies to other firms, such as Legacy Benefits. This is a simplified explanation of the process.

8. Viatical settlements are highly time-sensitive. The value of a policy depends heavily upon the health and life expectancy of the insured. The longer the policy is held, the more it is worth, as the insured's life draws closer to its close. The value also depends upon the length of time the policy is held by the viatical settlements company. The longer the policy is held, the more premiums the viatical settlements company must pay to keep the policy in force. When ViaSource buys or sells a policy, the transaction must be closed quickly. Otherwise, the policy's face value,

the premiums, the insured's life expectancy and other key financial conditions will change. In our business, time is money.

9. Viatical settlements are capital-intensive. ViaSource needs to borrow or raise capital to buy policies, with the prospect of a return later when the insureds pass away and the policies become payable. In particular, GE Capital loans money to ViaSource for the purchase of policies. GE Capital's credit is secured by the policy proceeds. GE Capital retained the right to approve or disapprove any sale of a policy in which it has a security interest. The longer a policy is owned by ViaSource, the more interest it must pay to GE Capital. If ViaSource sells a policy, the sale must close promptly. Again, time is critical.

### The Documents Actually Signed by ViaSource

10 In the course of its business, ViaSource acquired a multi-million dollar policy insuring the life of Ms. Melanie Weller (the "Weller Policy"). The Weller Policy was subject to GE Capital's security interest.

11. In April of 2007, ViaSource placed the Weller Policy out to market, to see if it could be re-sold for an acceptable price.

12. In May of 2007, Legacy Benefits proposed to purchase the Weller Policy for $4,000,000. At that time, the Weller Policy had a face amount of $5,287,265.

13. In anticipation of a potential sale to Legacy Benefits, ViaSource executed an Assignment to Transfer Ownership for Life Insurance Policies (Exhibit A) and a Beneficiary Designation for Life Insurance Policies (Exhibit B), **on May 16, 2007. The date and content of Exhibits A and B are critically important.** As I will show below, Legacy Benefits fraudulently altered these documents after they were signed by ViaSource.

14. On or about June 7, 2007, the proposed price was changed. The new proposal was for

3

a purchase price of $3,951,662 as against a face value of $5,223,371. These figures changed because the face amount of the Weller Policy was reduced by the monthly premium. The price change shows the impact of time on the transaction, and the critical need to complete the proposed transaction promptly.

15. On **June 11, 2007,** ViaSource signed various documents for the potential sale. These documents included forms prepared by Legacy Benefits: the Disclosure Statement (Exhibit C), Beneficiary's Absolute Assignment and Waiver of Claim (Exhibit D), Escrow Agreement (Exhibit E), and Purchase Agreement (Exhibit F).

16. **These Exhibits are also critically important.** ViaSource signed all of these documents on **June 11, 2007** -- as confirmed by the notarizations on Exhibits D and F. As explained below, Legacy Benefits later fraudulently altered the dates on documents after they were signed.

17. The documents attached as Exhibits C through F are the only versions ViaSource ever had. **ViaSource never received signed copies of these documents from Legacy Benefits.** This includes documents to be signed by Legacy Benefits and by Wells Fargo as the escrow agent for the proposed transaction. Legacy Benefits apparently "signed" some of these documents in July of 2007, after altering the dates of ViaSource's signatures. This was also fraudulent.

18. On **June 18, 2007,** the Assignment to Transfer Ownership for Life Insurance Policies (Exhibit A) and a Beneficiary Designation for Life Insurance Policies (Exhibit B) were signed by Mr. John Garvey, on behalf of GE Capital. GE Capital's approval was required, as I explained above. Legacy Benefits was well aware of GE Capital's interest and the requirement for its approval. **The date of Mr. Garvey's signature on Exhibits A and B is critically important.** Legacy Benefits later fraudulently changed the date of Mr. Garvey's signature on the Assignment to Transfer Ownership for Life Insurance Policies (Exhibit A), in addition to its other fraudulent

4

alterations of documents. ViaSource sent the proposed documents to Legacy Benefits by Federal Express on June 19, 2007: Legacy Benefits received them on June 20, 2007.

### Legacy Benefits Fails to Execute the Documents and Fails to Fund the Proposed Sale

19.  On June 20, 2007, Legacy Benefits received Exhibits A through F. ViaSource assumed that Legacy Benefits would (1) sign the Purchase Agreement (Exhibit F) and return it to ViaSource, and (2) place the purchase price in escrow, and (3) promptly complete the transaction. **In fact, Legacy Benefits did none of these things.**

20.  The date of **June 20, 2007** is important, because the Purchase Agreement would have required Legacy Benefits to place the purchase price in escrow within three days after receiving the change of ownership forms. Since June 23rd was a Saturday, the third day would have been June 26th. In Fact, Legacy Benefits never placed the purchase price in escrow.

21.  On June 27, 2007, I received a short list of questions from Legacy Benefits, to which I responded. Exhibit G.

22.  Legacy Benefits failed to move forward. Legacy Benefits did not return the signed agreement, apparently did not place the purchase price in escrow, and did not implement the transfer of the Weller Policy from ViaSource to Legacy Benefits.

23.  On July 11, 2007, I sent an e-mail to Legacy Benefits to move forward with the proposed transaction. Exhibit H. At my direction, Sonia Ayers of ViaSource again urged Legacy Benefits to implement the proposed transaction. Exhibit I (July 16, 2007); Exhibit J (July 18, 2007).

24.  Legacy Benefits still did not return a signed Purchase Agreement. Instead, on **July 18, 2007**, Legacy Benefits stated that it was sending the change of beneficiary forms (*see* Exhibits A and B) to the insurance carrier **that day**. Exhibit K. Again, the date is important. In fact, Legacy

Benefits did not consummate the change of ownership for the Weller Policy on July 18, 2007, or ever.

25. As late as July 25, 2007, Legacy Benefits was still demanding changes and more information about the proposed transaction. Exhibit L.

27. Of major significance, as late as July 27, 2007, Legacy Benefits acknowledged that the necessary contract documents had not yet been signed. Exhibit M is a copy of an e-mail dated July 25, 2007, from Mr. Nelson Barrera of Legacy Funding, stating that ViaSource had to sign an "offer acceptance" for the proposed transaction.

28. This is important for two reasons. First, Legacy Benefits had never returned its signed Purchase Agreement (Exhibit F) to ViaSource. As of July 27, 2007, Legacy Benefits wanted ViaSource to sign another document to express the proposed contract.

29. Second, Legacy Benefits recognized that as of July 27, 2007, there was no contract between ViaSource and Legacy Benefits. Legacy Benefits requested that ViaSource sign a new document -- and had never returned a signed Purchase Agreement to ViaSource. *See* Exhibit F.

30. I knew by that time that Legacy Benefits had not in fact sent the change of beneficiary forms to the insurance carrier. *See* ¶ 24 and Exhibit K. On July 18, 2007, Legacy Benefits had stated that it was forwarding the change documents to the carrier that day. As of July 27, Legacy Benefits still had not done so. Legacy Benefit's statement was obviously false.

31. I also knew that Legacy Benefits could not possibly implement the proposed transaction by July 31, 2007. Legacy Benefits did not, in fact, send the change forms to the carrier on July 18th, and had not done so as of July 27th. Accordingly, I instructed my staff to contact the carrier, and direct them not to accept any change of ownership until further notice from ViaSource as the owner of the Weller Policy.

6

32. On August 1, 2007, Legacy Benefits again requested that ViaSource execute the proposed "Offer Acceptance." Exhibit M. My assistant Sonia Ayers responded, correctly, that the transaction had to be closed by the end of July. Since Legacy Benefits did not do so, and could not have done so, and never returned the signed documents to ViaSource, and never funded the escrow, the proposed transaction was moot and no longer operative.

33. By August 9, 2007 at the latest, Legacy Benefits was well aware that the proposed transaction with ViaSource was over. Exhibit M. Legacy Benefits contacted ViaSource, stating that the insurance carrier had declined the change of ownership forms. Again, as of that date, Legacy Benefits had never returned a signed Purchase Agreement, had never returned a signed escrow agreement, and had never placed the purchase funds in escrow. As of that date, ViaSource had not signed the "Offer Acceptance" document that Legacy Benefits required on July 27th.

### Legacy Benefits Claims That a Contract Exists

34. On **August 28, 2007**, Legacy Benefits wrote a "demand letter" claiming that the transaction was in effect. Exhibit N. **The date of that letter is significant**, in light of Legacy Benefit's fraud that came to light later. As shown by the "demand letter" -- and every other document before and after -- **Legacy Benefits always presented itself as the sole party in interest**; Legacy Benefits never mentioned an "assignment" or Greenwich or any third party.

35. On September 10, 2007, I received a further "demand letter" from a law firm in Georgia representing Legacy Benefits. Exhibit O. The Georgia attorney also invoked the Purchase Agreement (Exhibit F) -- which, as far as ViaSource knew, Legacy Benefits had never signed. Again, Legacy Benefits had never provided a signed copy of the Purchase Agreement to ViaSource, and had instead asked ViaSource to sign a proposed "Offer Acceptance" which ViaSource never signed. **Again, Legacy Benefits represented that it was the sole party in interest**, and never

7

mentioned an "assignment" or Greenwich or any third party.

### ViaSource Files An Action in New Jersey to Declare There is No Contract

36. On September 13, 2007, ViaSource filed an action in the Superior Court of New Jersey, Law Division, Monmouth County, its county of residence, for the primary purpose of declaring that there was no contract between ViaSource and Legacy Benefits for the sale of the Weller Policy. Exhibit P. As the Court can see, there are two Counts. Count One is to declare that there is no contract between the parties. This was ViaSource's position as of July 27, 2007, and this remains ViaSource's position today.

37. Count Two of the Complaint is clearly prefaced by Count One. Count Two does not, and is not intended to, concede that there is any contract between the parties. The only place that the word "contract" appears in Count Two is in the following phrase:

2.    While not conceding that any contract came into existence . . .

Count Two explicitly refers to the matter between ViaSource and Legacy Benefits as an "attempted assignment and purchase." Nothing whatsoever in Count Two affirms or relies upon an actual contract between the parties.

### Legacy Benefits Relies Upon Fraudulent Documents and False Averments of Fact

38. It appears that on September 21, 2007 -- about two weeks after ViaSource's Complaint was filed -- Legacy Benefits filed a competing and duplicitous action in New York State. Exhibit Q is a copy of the purported "Summons and Complaint" that were supposedly "served" on ViaSource on October 9, 2007. Of major significance, **Legacy Benefits averred, under oath, that it was the sole owner, claimant and party in interest** regarding its claims to the Policy and the alleged transaction with ViaSource.

8

39. Legacy Benefits' New York Complaint, and its position before the New Jersey Court, were based upon Legacy Benefits' version of three documents: the Purchase Agreement, the Assignment to Transfer Ownership for Life Insurance Policies, and the Beneficiary Designation for Life Insurance Policies. Copies of these three documents, as relied upon by Legacy Benefits, were attached to the New York Complaint, and were also filed by Legacy Benefits in this Court.

40. **I aver, of my own personal knowledge, that the versions of these documents as filed on behalf of Legacy Benefits are fraudulent.** Legacy Benefits (or other persons unknown) altered these documents after they were signed by ViaSource and by Mr. Garvey for GE Capital. Neither ViaSource nor GE Capital ever signed these documents in the form offered by Legacy Benefits. Legacy Benefits never sent ViaSource or GE Capital these documents in the form offered by Legacy Benefits.

41. Exhibit R is a side-by-side comparison of the *real* Assignment to Transfer Ownership for Life Insurance Policies form signed by myself, Mr. Daly and Mr. Garvey (Exhibit A to this Certification) with the *fraudulent* document offered by Legacy Benefits. The Legacy Benefits version displays fraudulent alterations and additions, which were made after I and Messrs. Daly and Garvey signed it:

A. The New Policy Owner's Name at the upper left is *blank* on the real form. Legacy Benefits fraudulently altered the form by filling in its name and address as the new policy owner.

B. The details as to the New Owner, including name, Tax Identification number, address, contingent owner, etc., are *blank* on the real form. Legacy Benefits fraudulently added this information.

C. As averred above, I and Mr. Daly signed the real form on *May 16, 2007.* Legacy Benefits fraudulently altered the Date Signed to be July 17, 2007 -- over two months later. The fraud is

9

particularly obvious if you compare the "crossed 7" used by the forger with the "uncrossed 7" in the real document.

D. The date of Mr. Garvey's signature was fraudulently altered. He signed the real form on *June 18, 2007*. Legacy Benefits deleted the real date, and forged a date of July 18, 2007 -- a month later. Again, the fraud is obvious because the forger used "crossed 7s" in the fraudulent date.

E. The fraudulent alteration is confirmed by the fact that the real document was received by Legacy Benefits on June 20, 2007. *See* ¶18 above. ViaSource and GE Capital *did not have this document* in their possession after June 19th -- Legacy Benefits had it.

42. Exhibit S is a side-by-side comparison of the *real* Beneficiary Designation for Life Insurance Policies (Exhibit B) with the *fraudulent* document offered by Legacy Benefits. The fraudulent alterations include the following:

A. The Owner's Name block at the upper left is *blank* on the real form. Legacy Benefits fraudulently inserted ViaSource Funding Group, LLC as the "owner." I add that the forger wasn't too subtle. If the proposed transaction had been completed, then Legacy Benefits would have become the new owner and its name would have been filled in -- not ViaSource.

B. The new beneficiary's name, address and relationship are *blank* on the real form. Legacy Benefits fraudulently inserted its name, address and purported "relationship" to ViaSource.

C. Again, Mr. Daly and I signed the real form on May 16, 2007. Again, Legacy Benefits fraudulently altered the date to be July 17, 2007, including the forger's "crossed 7s."

D. Of interest, the Legacy Benefits forger forgot to change the date of Mr. Garvey's signature on the fraudulent Beneficiary Designation. This renders the forgeries even more overt.

E. Again, Legacy Benefits received the real document on June 20th. ViaSource and GE Capital did not have this document on July 17th -- Legacy Benefits had it.

43.  Exhibit T is a side-by-side comparison of the signature pages of the real Purchase Agreement signed by ViaSource (but not by Legacy Benefits) with the purported version offered by Legacy Benefits.  The most obvious difference is that the real and *only* version of this document ever possessed or received by ViaSource *does not have Legacy Benefits' signature.*  Again, I aver that **Legacy Benefits never gave ViaSource a signed Purchase Agreement.**

44.  The date chosen by the forger -- July 25, 2007 -- is significant.  I do not know when Legacy Benefits' signature and date were inserted into the Purchase Agreement, because Legacy Benefits never delivered a signed Agreement to ViaSource.  However, I note that the proposed Purchase Agreement allowed ViaSource to cancel the transaction within 30 days after the Agreement was signed.  If the Agreement were signed on July 25, 2007, the 30 day period would have expired at the close of business on Friday, August 24, 2007.  Legacy Benefits' "demand letter" to ViaSource (Exhibit N), was dated Monday, August 27, 2007 -- the first business day after the period expired.

45.  Thus, Legacy Benefits secretly dated its signature on the Purchase Agreement as of July 25, 2007, but concealed the signed document from ViaSource.  By August 9th, Legacy Benefits knew that ViaSource considered the proposed transaction to have failed.  Legacy Benefits continued to conceal the "signed" version of the Agreement, and dispatched a demand letter on the first business day after the thirty-day revocation period expired.

### Legacy Benefits Utters a Fraud Regarding Escrow of the Purchase Price

46.  The proposed Purchase Agreement required that Legacy Benefits place the full purchase price in escrow with Wells Fargo Bank, pursuant to a written Escrow Agreement.

47.  Legacy Benefits never provided a signed Escrow Agreement to ViaSource.

48.  In its New York Complaint, Legacy Benefits asserted that "the purchase price of

11

$3,951,662 was deposited into escrow with Wells Fargo Northwest." A copy of the New York Complaint was filed by Legacy Benefits as an Exhibit in this action as well.

49. On information and belief, Legacy Benefits' assertion is false and fraudulent. The sources of my information and belief are as follows:

A. Legacy Benefits never provided a signed copy of the Escrow Agreement to ViaSource. This is vital, because the escrow agent would have fiduciary duties to both parties.

B. Legacy Benefits never provided any form of confirmation that it had deposited the funds.

C. On October 9, 2007, I telephoned the trust department of Wells Fargo, speaking with Mr. Brant Oliver. He stated, on behalf of Wells Fargo, that (1) Wells Fargo was never presented with the Weller Policy; (2) no funds are or were ever escrowed by Wells Fargo for the proposed transaction; (3) he had no record that anyone at Wells Fargo has ever signed any documents concerning the proposed sale of the Weller Policy.

### Legacy Benefits Never Mentions Greenwich

50. Never, in any document relating to the proposed transaction or filed with the courts of New Jersey or New York, or anywhere else, did Legacy Benefits so much as mention Greenwich. On the contrary, Legacy Benefits averred of record that it was the sole party in interest and that there were no other parties involved in the dispute.

### Legacy Benefits Withdraws Its Claims

51. After ViaSource filed its New Jersey action and Legacy Benefits filed its tardy New York action, Legacy Benefits abandoned all claims concerning the Policy and the alleged transaction. The documents of record extinguishing those claims are attached to the Certification of Michael D.. Schottland, Esq., which is being filed herewith. I would add and confirm that at no time did anyone ever so much as mention that either Greenwich or any other parties were or might

12

be involved.

52. In reliance upon Legacy Benefits' repeated representations that it was the only party in interest and that Legacy Benefits was abandoning its claims, and in further reliance on Legacy Benefits' dismissal of its New York action, I authorized counsel for ViaSource to dismiss the New Jersey action against Legacy Benefits. If Legacy Benefits, Greenwich or anyone else had indicated that a third party was involved or could make a claim, I would not have authorized the withdrawal of ViaSource's New Jersey action.

53. In addition to the dismissals of record, ViaSource and Legacy Benefits entered into a confidential settlement agreement. (If this action continues, ViaSource is asking this Court to allow disclosure of the settlement agreement.) No payment was made to Legacy Benefits in connection therewith, and the Court should not assume otherwise.

I certify that each of the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

_____
MARC E. FEASTER

DATED: August 15, 2008

13

# EXHIBIT A

**TRANSAMERICA LIFE COMPANIES**

### Assignment To Transfer Ownership
### for Life Insurance Policies
This form cannot be used for Annuity Plans or Contracts
(This form does not change the beneficiary of the Policy)



☐ **Transamerica Occidental Life Insurance Company**
P.O. Box 419521
Kansas City, MO 64141-6521

☐ **Transamerica Assurance Company**
P.O. Box 30852
Los Angeles, CA 90030

☐ **Transamerica Life Insurance and Annuity Company**
P.O. Box 419521
Kansas City, MO 64141-6521

This Policy of Insurance is issued or assumed by one of the companies shown above, herein called the "Company"

**Policy Number:** 9255 1064        **Insured's Name:** Melanie A. Weller

| New Owner's Name | | | The recorded designation form will be mailed to the address shown at the left, unless otherwise indicated below and initialed by the owner. |
| Address | | | **Return Owner's Copy to:**                    Owner's Initials |
| | | | ☐ General Agency/GA Code _____ |
| City | State | Zip | ☐ Fax to: ( _____ |

**THIS FORM WILL NOT BE RECORDED IF MODIFIED UNLESS APPROVED BY THE COMPANY'S ADMINISTRATIVE OFFICES**

☑ For good and sufficient consideration,   ☐ As a gift for love and affection with no valuable consideration, all rights, title and interest of the undersigned in the Policy is hereby assigned for the purpose of transferring ownership by:

NAME OF NEW OWNER: _____                    New Owner's Social Security No./Tax ID No.

TRUSTEE (S) NAME IF TRUST OWNER: _____

ADDRESS OF NEW OWNER: _____

| | Address | City | State | Zip |
| The new Owner is: | ☐ Individual | ☐ Corporation | ☐ Partnership | ☐ Trust: (indicate date) | ☐ Other (specify) |

NAME OF CONTINGENT OWNER (Optional): _____   Contingent Owner's Social Security No./Tax ID No.

TRUSTEE (S) NAME IF TRUST CONTINGENT OWNER: _____

ADDRESS OF CONTINGENT OWNER: _____

| | Address | City | State | Zip |
| The Contingent Owner is: | ☐ Individual | ☐ Corporation | ☐ Partnership | ☐ Trust: (indicate date) | ☐ Other (specify) |

Before the death of the Insured, the New Owner of the Policy alone shall be entitled to all rights granted by the Policy or allowed by the Company under the Policy, including the right to assign the Policy and the right to transfer ownership thereby revoking any prior designation of a Contingent Owner. If the New Owner is a Partnership, all rights of the Owner belong to the Partnership as constituted at the time a right is exercised. This Assignment revokes any previous designations of Contingent Owner for the Policy, regardless of whether a Contingent Owner is designated on this Assignment. If there is a designation for a New Contingent Owner, then if the Owner, or a Contingent Owner after becoming Owner, predeceases the Insured, the next successive living Contingent Owner designated shall be the Owner of the Policy. If there is no surviving Contingent Owner, the estate of the deceased Owner (or the estate of a Contingent Owner who became the Owner) shall own the Policy.

Beneficiary Not Changed: This Assignment does not change the beneficiary of the Policy. Unless the right to change the beneficiary is specifically exercised by the New Owner, the beneficiary of the Policy shall be the same as the beneficiary of record at the time of this Assignment.

The Company may rely solely upon the signature of the Owner under this Assignment for any receipt, release, waiver, transfers or other instruments, to whomsoever made. The validity of this Assignment is hereby guaranteed by the undersigned. The signature to this Assignment is a warranty that the undersigned is legally capable of executing this Assignment and that no proceedings in insolvency or bankruptcy have been instituted by or against the undersigned.

**ASSIGNMENT BY:** (Signature Requirement on Reverse Side)

DATE SIGNED: 5-16-07                    ViaSource Funding Group, LLC
                                         Print Current Owner's Complete Name

(732) 280-8500                           22-3849632
Current Owner's Daytime Telephone Number   Current Owner's Social Security Number/Tax ID Number

x _____                        _____   Christopher T Daly-CFO/VP
Witness Signature                        Current Owner's Signature (include Title, if Business or Trust)   ViaSource Funding Group, LLC

x 166 Allen Road, Bernard Township, NJ 07920   _____   ViaSource Funding Group, LLC
Address of Witness                       Current Owner's Signature (include Title, if Business or Trust)

| This Assignment has been recorded at the Company. The Company assumes no legal responsibility for the sufficiency or validity of the Assignment. | |
| Date recorded: _____ | by: _____ |

**TRANSFER OF OWNERSHIP**                                         TOA 504 M ED. 0899

_____ John Garvey – Duly Authorized Signatory _____   6/18/07
Current Collateral Assignee – General Electric Capital Corporation            Date

A

# EXHIBIT B

TRANSAMERICA
LIFE COMPANIES

**Beneficiary Designation**
for Life Insurance Policies

☐ Transamerica Occidental Life Insurance Company
P.O. Box 419521
Kansas City, MO 64141-6521

☐ Transamerica Assurance Company
P.O. Box 30852
Los Angeles, CA 90030

☐ Transamerica Life Insurance & Annuity Company
P.O. Box 419521
Kansas City, MO 64141-6521

This Policy of Insurance is issued or assumed by one of the companies shown above, herein called the "Company"

**Policy Number:** 9255 1064          **Insured's Name:** Melanie A. Weller

| Owner's Name | The recorded designation form will be mailed to the address shown at the left, unless otherwise indicated below and initialed by the owner. |
| Address | Return Owner's Copy to:                          Owner's Initials |
| City          State          Zip | ☐ General Agency/GA Code_____ ☐ Fax to: (      ) _____ |

This Beneficiary Designation cancels all prior Beneficiary Designations and settlement agreements for the policy, identified by the number above, herein called the "Policy. Please see instructions, signature requirements, special provisions and sample Beneficiary Designations before completing this Form. The Policy's Death Benefit shall be paid in one sum to the designated beneficiary (ies), unless otherwise requested.

BENEFICIARY: Print full name, address and relationship to Insured. For multiple beneficiaries of unequal shares, indicate each beneficiary's share in parts or as a percentage of the Policy's Death Benefit next to their names. *(See reverse for additional instructions)*

Primary Beneficiary (ies): If more than one beneficiary is named, payment will be made in equal shares to the survivor(s), unless otherwise indicated.

| *Name* | *Address* | *City, State, Zip Code* | *Relationship* |

Contingent Beneficiary (ies): Receives proceeds at the death of the Insured only if all of the Primary Beneficiaries predecease the Insured.

| *Name* | *Address* | *City, State, Zip Code* | *Relationship* |

**Signatures (Signature Requirements on Reverse Side)**

DATE SIGNED: 5-16-07                    ViaSource Funding Group, LLC
                                        Financial Institution Complete Name

(732) 280-8500                          22-3649832
Current Owner's Daytime Telephone Number    Current Owner's Social Security Number/Tax ID Number

                                        Christopher T Daly-CFO/VP
x _____                     Current Owner's Signature (include Title, if Business or Trust)
Witness Signature                       ViaSource Funding Group, LLC
                                        Must Be Familiar-CEO/President
x 106 Allen Road, Bernards Township, NJ 07920
Address of Witness                      Current Owner's Signature (include Title, if Business or Trust)
                                        ViaSource Funding Group, LLC

| This Beneficiary Designation has been recorded by the Company's Administrative Offices. The Company assumes no legal responsibility for the sufficiency or validity of the Beneficiary Designation. |
| Date recorded: _____          by: _____ |

                            **BENEFICIARY DESIGNATION**                    TOB 306 MED. 0799

_John Garay_ — _Duly Authorized Signatory_   6/18/07
Current Collateral Assignee – General Electric Capital Corporation    Date

B

# EXHIBIT C



350 Fifth Avenue, Suite 4320, New York, NY 10118 • 800-875-1000

## DISCLOSURE STATEMENT

*The following information and disclosure is being provided in order to assist you in making a decision with regard to the sale of your life insurance policy.*

1. There exist possible alternatives to a viatical settlement contract including any accelerated death benefits or policy loans offered under your life insurance policy.

2. Some or all of the proceeds of the viatical settlement contract may be taxable under federal income tax and state franchise and income taxes. Guidance and assistance on these issues may be sought from a professional tax advisor.

3. Proceeds of the viatical settlement contract may be subject to the claims of creditors.

4. Receipt of the proceeds of a viatical settlement contract may adversely affect the policy owner's eligibility for Medicaid or other government benefits or entitlements. Advice may be obtained from the appropriate government agencies.

5. The policy owner has the right to rescind a viatical settlement contract before the earlier of 30 calendar days after the date upon which the viatical settlement contract is executed by all parties or for 15 calendar days after the receipt of the viatical settlement proceeds by the policy owner. Rescission, if exercised by policy owner, is effective only if both notice of rescission is given and repayment of all proceeds and any premiums, loans, and loan interest to Legacy Benefits Corporation is made within the rescission period. If the Insured dies during the rescission period, the viatical settlement contract will be deemed to have been rescinded, subject to repayment of all viatical settlement proceeds and any premiums, loans and loan interest being made to Legacy Benefits Corporation.

6. The settlement funds will be sent to the policy owner within three business days after Legacy Benefits Corporation has received the insurer or group administrator's acknowledgment that ownership of the purchased policy has been transferred and the beneficiary has been designated pursuant to the viatical settlement contract.

7. Entering into a viatical settlement contract may cause other rights or benefits, including conversion rights and waiver of premium benefits that may exist under the

policy, to be forfeited by the policy owner.  Assistance may be sought from an independent financial adviser.

8. All medical, financial, or personal information solicited or obtained by a viatical settlement provider or a life insurance producer about an insured, including the insured's identity or the identity of family members, a spouse, or a significant other, may be disclosed as necessary to effect the viatical settlement between the seller and the viatical settlement provider. If you are asked to provide this information, you will be asked to consent to the disclosure.  The information may be provided to someone who buys the policy or provides funds for the purchase.  You may be asked to renew your permission to share information every two years.

9. The insured may be contacted by either Legacy Benefits Corporation or its authorized representative for the purpose for determining the insured's health status.  This contact is limited to once every three months if the insured has a life expectancy of more than one year and no more than once each month if the insured has a life expectancy of one year or less.

10. In addition to this Disclosure Statement, you will receive a Legacy Benefits Corporation brochure describing the process of viatical settlements.

11. Legacy Benefits Corporation has no affiliation with the insurance company that issued your policy or certificate.

12. The independent third-party escrow agent who will handle matters related to your policy is Wells Fargo Northwest, National Association with an address and phone number of 299 South Main Street, 12th Floor, Salt Lake City, UT 84111.  You may inspect or receive copies of the relevant escrow or trust agreements or documents upon request.

13. If the policy that you present to Legacy Benefits Corporation for settlement has been issued as a joint policy or involves family riders or any coverage of a life other than the insured under the policy to be acquired pursuant to a viatical settlement contract, you may lose the coverage on the other lives under the policy.  Therefore, you should consult with your insurance producer or the insurance company regarding advice on the proposed viatical settlement transaction.

14. The dollar amount of the current death benefit that would be payable to Legacy Benefits Corporation under your policy is $ 5,223,371.00.

15. The life settlement broker solely represents your interests as the policy owner, and does not represent the interests of the insurance company or Legacy Benefits Corporation in any transaction involving the sale of your policy.  Specifically, the life settlement broker has a fiduciary duty to you as the policy owner to fully represent your interests in the sale of your policy.  Legacy Benefits Corporation does not represent you in this transaction and is not affiliated in any way with the life settlement broker that acts as your agent in negotiating the

sale of your policy.

16. Legacy Benefits Corporation will pay the life settlement broker a fee as compensation for the sale of your policy to us. Regardless of the fact that the life settlement broker receives a commission payment from Legacy Benefits Corporation, the life settlement broker acts solely as your representative in the sale of your policy and is not an agent of Legacy Benefits Corporation.

**SIGNATURE OF POLICY OWNER**

_Christopher T. Daly - CFO/VP_

ViaSource Funding Group, LLC

Date: 6/11/07

_Marc E. Feaster - CEO/Pres._

ViaSource Funding Group, LLC

Date: 6/11/07

ViaSource Funding Group, LLC

Date: _____

**LEGACY BENEFITS CORPORATION**

By: _____
    Name:
    Title:

Date: _____

# EXHIBIT D



350 Fifth Avenue, Suite 4320, New York, NY 10118 • 800-875-1009

## BENEFICIARY'S ABSOLUTE ASSIGNMENT AND
## WAIVER OF CLAIM

ViaSource Funding Group, LLC ("Beneficiary"), a beneficiary under TransAmerica Occidental Life Insurance Company policy number 92551064 ("Policy") insuring the life of Melanie Weller ("Insured") does hereby expressly acknowledge, understand, and agree to waive any and all rights, claims, interest in, powers, and privileges which Beneficiary may now or in the future possess under the Policy.

Beneficiary hereby expressly acknowledges, understands, consents to, and authorizes that ViaSource Funding Group, LLC ("Selling Policy Owner") shall enter into a Purchase Agreement with Legacy Benefits Corporation ("Purchase Agreement") thereby creating an absolute and irrevocable assignment of the Policy and Beneficiary hereby renounces any interest therein.

To the extent that Beneficiary has an interest in the Policy, Beneficiary hereby gives its expressed consent and authorizes the Selling Policy Owner to enter into the Purchase Agreement. Beneficiary agrees to waive all legal claims, both in law and in equity, which Beneficiary may have had in and to the Policy.

Beneficiary hereby acknowledges that Beneficiary has been given the opportunity to review this Waiver of Claim Form with independent counsel.

ViaSource Funding Group, LLC

By: _____

STATE OF _New Jersey_____ )
                                ) SS:
COUNTY OF _Somerset_____ )

SUBSCRIBED, SWORN TO, AND ACKNOWLEDGED before me this _11_ day of
_June_____, 200_7_ by _Christopher T. Daly - CFO/VP_

_____
Notary Public

MY COMMISSION EXPIRES: _4/21/2010_

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

08-BW-Weller, M-92551064                    Page 1 of 2



By: _____

STATE OF ___New Jersey___ )
                          ) SS:
COUNTY OF ___Somerset___ )

SUBSCRIBED, SWORN TO, AND ACKNOWLEDGED before me this ___11___ day of

___June___, 200_7_ by ___Marc E. Feaster – CEO/Pres.___

_____
Notary Public

MY COMMISSION EXPIRES: ___4/21/2010___

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010


By: _____

STATE OF _____ )
                                 ) SS:
COUNTY OF _____ )

SUBSCRIBED, SWORN TO, AND ACKNOWLEDGED before me this _____ day of

_____, 200___ by _____.

_____
Notary Public

MY COMMISSION EXPIRES: _____

# EXHIBIT E

# ESCROW AGREEMENT

This Escrow Agreement ("ESCROW AGREEMENT") is made and entered into by and between ViaSource Funding Group, LLC, with an office located at 106 Allen Road, Bernards Township, New Jersey 07920 ("SELLER"), LegacyBenefitsCorporation, with an office at 350 Fifth Avenue, Suite 4320, New York, New York 10118 ("PURCHASER"), General Electric Capital Corporation, with an office at 201 Merritt 7, Norwalk, Connecticut 06851 ("LENDER") and Wells Fargo Bank Northwest, N.A., with an office at 299 South Main Street, 12th Floor, Salt Lake City, Utah 84111 ("ESCROW AGENT");

WHEREAS, SELLER and PURCHASER have entered into a purchase agreement ("PURCHASE AGREEMENT") related to the sale and/or assignment to PURCHASER of an insurance policy number 92551064 ("POLICY") issued by Transamerica Occidental Life ("INSURANCE COMPANY") insuring the life of Melanie A. Weller ("INSURED") and delivery of documents necessary to transfer ownership of the POLICY to PURCHASER;

WHEREAS, PURCHASER has agreed to pay to SELLER the amount of $3,951,662.00 to purchase the POLICY ("PURCHASE PRICE");

WHEREAS, LENDER has an outstanding lien against the POLICY in the amount of $3,951,662.00 ("REPAYMENT AMOUNT") and SELLER is the owner and beneficiary of the POLICY;

WHEREAS, the LIEN shall continue in effect until LENDER has notified INSURANCE COMPANY in writing that the LIEN is released;

WHEREAS, PURCHASER, LENDER, SELLER and ESCROW AGENT have agreed to enter into the ESCROW AGREEMENT in order to facilitate the consummation of the transactions contemplated in the PURCHASE AGREEMENT and to satisfy the LIEN, and the ESCROW AGENT is willing to do so on the terms and conditions hereinafter set forth;

NOW THEREFORE, in consideration of the mutual premises and conditions contained herein, SELLER, PURCHASER, LENDER, and ESCROW AGENT do hereby agree as follows:

1.  Within three (3) business days of the execution hereof by all parties and receipt by PURCHASER of all documents sent by PURCHASER to the SELLER, properly signed and notarized, which are necessary to transfer ownership or assignment of the POLICY to PURCHASER and name it as its beneficiary ("PURCHASE DOCUMENTS"), PURCHASER shall deposit into ESCROW AGENT's special escrow account ("ESCROW ACCOUNT") the PURCHASE PRICE.

2.  Upon deposit of the PURCHASE PRICE into the ESCROW ACCOUNT, ESCROW AGENT shall notify LENDER in writing of such deposit ("DEPOSIT NOTICE").

3.  Upon receipt of the DEPOSIT NOTICE by LENDER from ESCROW AGENT, LENDER shall deliver to ESCROW AGENT: (A) a written notice addressed to the INSURANCE COMPANY stating that LENDER'S interest in the POLICY is terminated and any other

E

documentation required to terminate any interests held by LENDER in the POLICY including a duly executed collateral release on a form approved by the INSURANCE COMPANY ("COLLATERAL RELEASE"); and (B) written instructions to ESCROW AGENT to submit the COLLATERAL RELEASE to INSURANCE COMPANY;

4.    Upon receipt by ESCROW AGENT of the documents listed in Section 3 herein, ESCROW AGENT shall submit to INSURANCE COMPANY: (A) the COLLATERAL RELEASE; and (B) the Change of Ownership and Change of Beneficiary Forms transferring ownership and beneficiary rights in the POLICY to PURCHASER ("CHANGE FORMS") (COLLATERAL RELEASE and CHANGE FORMS s shall be collectively referred to herein as the "TRANSFER DOCUMENTS").

5.    ESCROW AGENT shall disburse the REPAYMENT AMOUNT to LENDER within three (3) business days of its receipt of written notification from INSURANCE COMPANY or PURCHASER that INSURANCE COMPANY has: (A) accepted and recorded the CHANGE FORMS successfully transferring ownership or assignment of the POLICY to PURCHASER and successfully naming PURCHASER as its beneficiary; (B) acknowledged and recorded the release of the LIEN; and (C) confirmed that there are no other outstanding liens or encumbrances on the POLICY.

6.    Notwithstanding the foregoing, in the event that at the time of the receipt of written notification by ESCROW AGENT that INSURANCE COMPANY has accepted and recorded the CHANGE FORMS successfully transferring ownership or assignment of the POLICY to PURCHASER and successfully naming PURCHASER as beneficiary and ESCROW AGENT receives from PURCHASER written notice of the following: (i) other loans or cash advances have been made against the cash value of the POLICY or other encumbrance has been made against the POLICY, which did not exist when the PURCHASE AGREEMENT was executed by SELLER; (ii) the Policy is in grace period pursuant to the terms and conditions of the POLICY; (iii) SELLER has withdrawn cash from the POLICY following the date on which SELLER executed the PURCHASE AGREEMENT; or (iv) the POLICY is not in force, then ESCROW AGENT shall not disburse the REPAYMENT AMOUNT to LENDER until such time as the issues set forth in this paragraph 6 are resolved to PURCHASER's satisfaction. If any of the aforementioned events cannot be remedied to PURCHASER's satisfaction within a reasonable time, SELLER shall execute any and all documents required to collaterally assign the POLICY back to LENDER and provide such documentation to LENDER. Upon LENDER's approval of those documents, ESCROW AGENT shall return the PURCHASE PRICE to PURCHASER. PURCHASER and SELLER, if necessary, shall execute any documents necessary to reinstate SELLER as the owner and beneficiary of the POLICY, which ESCROW AGENT shall immediately submit to the INSURANCE COMPANY.

If PURCHASER notifies ESCROW AGENT that INSURANCE COMPANY has not accepted the TRANSFER DOCUMENTS and/or is unable to transfer ownership of the POLICY to PURCHASER, and/or has not named PURCHASER as the POLICY'S assignee, and/or has not named PURCHASER as the POLICY'S beneficiary, for whatever reason, and PURCHASER returns the TRANSFER DOCUMENTS to ESCROW AGENT, ESCROW AGENT shall then return: (1) to SELLER, the CHANGE FORMS transferring ownership

and beneficiary rights in the POLICY to PURCHASER; (2) to LENDER, the COLLATERAL RELEASE and if such documents are not returned by INSURANCE COMPANY, SELLER shall execute any and all documents required to collaterally assign the POLICY back to LENDER and provide such documents to LENDER; and (3) to PURCHASER, the PURCHASE PRICE. PURCHASER shall also execute any documents necessary to reinstate SELLER as the owner and beneficiary of the POLICY, and shall immediately file them with the INSURANCE COMPANY.

If, on September 30, 2007, the INSURANCE COMPANY has not yet transferred the POLICY'S ownership to PURCHASER, and/or has not named PURCHASER as the POLICY'S assignee, and/or has not named PURCHASER as the POLICY'S beneficiary, PURCHASER shall return the PURCHASE DOCUMENTS to ESCROW AGENT and upon receipt thereof, ESCROW AGENT shall then return: (1) to SELLER, the CHANGE FORMS transferring ownership and beneficiary rights in the POLICY to PURCHASER; (2) to Lender, the COLLATERAL RELEASE and if such documents are not returned by INSURANCE COMPANY, SELLER shall execute any and all documents required to collaterally assign the POLICY back to LENDER and provide such documentation to LENDER; and (3) to PURCHASER, the PURCHASE PRICE. PURCHASER also shall execute any documents necessary to reinstate SELLER as the owner and beneficiary of the policy and shall immediately file them with INSURANCE COMPANY.

7.  ESCROW AGENT may act in reliance upon any writing, instrument, certificate, opinion, notice, letter, document or signature that ESCROW AGENT, in good faith, believes to be genuine, and may assume any person purporting to give any notice, writing, advice, or instructions in connection with any provision herein has been duly authorized to do so.

8.  ESCROW AGENT shall have no duties or obligations other than those specifically set forth herein or as may subsequently be agreed in writing by the parties hereto and shall use the same degree of care and skill as is reasonably expected of a financial institution acting in comparable capacity as an escrow agent.

9.  ESCROW AGENT shall not be liable for any error of judgment, or for any act done or step taken or omitted by it, in good faith, or for any mistake of fact or law, or for anything that it may do or refrain from doing in connection therewith, except in the case of grossly negligent performance or omission or except in the event that ESCROW AGENT fails to exercise the same degree of care and skill as is reasonable expected of a financial institution acting in a comparable capacity as an escrow agent;

10. PURCHASER hereby agrees to indemnify and hold harmless ESCROW AGENT from any and all claims, liabilities losses, expenses, actions, suits, or proceedings at law or in equity, or any other expense, fees, or charges of any character or nature whatever that it may incur by reason of acting as ESCROW AGENT under the ESCROW AGREEMENT. ESCROW AGENT shall not be required to institute or maintain any litigation unless indemnified to its satisfaction for its counsel fees, costs, disbursements and all other expenses and liabilities that it may be subjected to in connection with the aforesaid action.

11. If SELLER, LENDER, or PURCHASER disagree about the interpretation of the ESCROW

AGREEMENT, about the rights and obligations of the parties, or the propriety of any action contemplated by ESCROW AGENT hereunder, ESCROW AGENT may file an action in court of competent jurisdiction to resolve the disagreement. ESCROW AGENT shall be indemnified for any costs including reasonable attorney's fees in connection with the aforesaid action.

12. The expenses and costs, if any, of the ESCROW AGENT for performing its obligations contained in the ESCROW AGREEMENT shall be born by PURCHASER.

13. ESCROW AGENT may resign upon thirty (30) days prior written notice to the parties to this ESCROW AGREEMENT. Upon the appointment of a successor escrow agent, ESCROW AGENT shall deliver the documents that it has to the successor escrow agent. If a successor escrow agent has not been appointed within a thirty (30) day period, ESCROW AGENT may petition any court of competent jurisdiction to appoint a successor.

14. The rights created by this ESCROW AGREEMENT shall inure to the benefit of and the obligations created hereby shall be binding upon the successors and assigns of ESCROW AGENT and all parties to this ESCROW AGREEMENT.

15. It is hereby recognized and agreed that ESCROW AGENT shall not be obligated to take any action that is not specifically set forth herein. In the event of a disagreement or dispute concerning the validity or interpretation of any condition of this ESCROW AGREEMENT, the ESCROW AGENT shall be empowered to submit the dispute to a court of competent jurisdiction for resolution. In such event, ESCROW AGENT shall be relieved of any other and further liability under this ESCROW AGREEMENT.

16. No amendment or modification of this ESCROW AGREEMENT nor any assignment of any rights hereunder shall be binding on any party hereto unless it is in writing and signed by each of the parties hereto, and any attempt to so amend, modify or assign except pursuant to such a writing shall be null and void. No waiver of any right hereunder shall be binding on any party hereto unless such waiver is in writing and signed by the party against whom enforcement is sought.

17. If any term or provision set forth in this ESCROW AGREEMENT shall be invalid or unenforceable, the remainder of this ESCROW AGREEMENT, other than those provisions held invalid or unenforceable, shall be construed in all respects as if such invalid or unenforceable term or provision were omitted.

18. Except as otherwise expressly provided herein, any notice, order, instruction, request or other communication required to permitted to be given under this ESCROW AGREEMENT shall be in writing and deemed to have been properly given when delivered in person, or when sent by electronic means and electronic confirmation of error free receipt is received or upon receipt of notice sent by certified or registered United States mail, return receipt requested, postage prepaid, addressed to the party at the address set forth above. Any party may change its address for notices in the manner set forth above.

19. This ESCROW AGREEMENT may be executed in any number of counterparts, all of which

shall constitute one and the same instrument.

20. The ESCROW AGREEMENT shall be construed and enforced in accordance with the laws of the State of New York.

21. Any notice required by this ESCROW AGREEMENT or given in connection with it, shall be in writing and shall be deemed to have been duly given if personally delivered by electronic mail, mailed by certified mail, return receipt requested, mailed by a nationally recognized overnight courier or sent via facsimile, to:

If to PURCHASER:
Legacy Benefits Corporation
350 Fifth Avenue, Suite 4320
New York, NY 10118
Tel: (212) 643-1190
Fax: (212) 643-1180
Email: meliav@legacybenefits.com

If to SELLER:
ViaSource Funding Group, LLC
106 Allen Road
Bernards Township, New Jersey
Attn: Marc Feaster
Tel: (908)394-7778
Fax: (732)280-8862
Email: mfeaster@viasourcefunding.com

If to LENDER:
General Electric Capital Corporation
201 Merritt 7
Norwalk, Connecticut 06851
Attn: Kevin Walder
Tel: (203) 956-4419
Fax: (203) 956-4237
Email: kevin.walder@ge.com

If to ESCROW AGENT:
Wells Fargo Bank Northwest, N.A.
MAC: U1228-120
299 South Main Street, 12th Floor
Salt Lake City, UT 84111
Tel: (801) 246-5119
Fax: (801) 246-5053
Email: joshua.elsmore@wellsfargo.com /ctsleasegroup@wellsfargo.com

IN WITNESS THEREOF, the undersigned being all the parties to the ESCROW AGREEMENT have hereunto set their hands.


**ViaSource Funding Group, LLC**

By: _____        6/11/07
Name/Title: Christopher T. Daly - CFO/VP    Date


**Legacy Benefits Corporation**

By: _____        _____
    Meir Eliav, President                 Date


**Wells Fargo Bank Northwest, N.A.**

By: _____        _____
Name/Title: _____        Date


**General Electric Capital Corporation**

By: _____        6/18/07
Name/Title: John Garvey - Duly Authorized Signatory  Date

# EXHIBIT F

# PURCHASE AGREEMENT AND IRREVOCABLE ABSOLUTE ASSIGNMENT OF LIFE INSURANCE POLICY ("PURCHASE AGREEMENT")

ViaSource Funding Group, LLC, domiciled at 106 Allen Road, Bernard Township, NJ 07920 ("SELLING POLICY OWNER") and Melanie Weller ("INSURED") residing at 1034 Liberty Park Drive, Apt. 120, Austin, TX 78746, the owner and insured, respectively, of life insurance policy number 92551064 ("POLICY") issued by TransAmerica Occidental Life Insurance Company ("INSURANCE COMPANY"), and having a total face value of $ 4,312,500.00 (Four Million Three Hundred Twelve Thousand Dollars and 00/100 cts) in consideration of $3,951,662.00 (Three Million Nine Hundred Fifty One Thousand Six Hundred Sixty Two Dollars and 00/100) ("PURCHASE PRICE") to be paid to the SELLING POLICY OWNER by Legacy Benefits Corporation ("LBC"), a New York corporation having offices at Empire State Building, 350 Fifth Avenue, Suite 4320, New York, NY 10118, hereby assigns, transfers, and delivers to LBC, its successors, and/or assigns all of the rights, title, interest, options, and privileges in, to, and under the POLICY as owner/assignee thereof, subject to the terms of this agreement.

Included in this sale, assignment, transfer, and delivery shall be all monies due and to become due or payable under the POLICY and all dividends, options, benefits, and advantages derived from the POLICY, including, but not limited to, the right to surrender the POLICY at any time and to receive the surrender value thereof; the right upon the death of the insured, to collect the death benefit payable under the POLICY; and all other rights and benefits afforded to the owner, insured and/or beneficiary(ies) of and under the POLICY.

SELLING POLICY OWNER warrants the validity and sufficiency of this absolute and unconditional sale and assignment to LBC, its successors and/or assigns, of all of SELLING POLICY OWNER'S rights, title, to and/or interest in, and to the POLICY. SELLING POLICY OWNER further warrants that no tax or creditor's lien has been filed against SELLING POLICY OWNER, no judgment has been filed against SELLING POLICY OWNER or any of SELLING POLICY OWNER'S property, and no assignment has been made by SELLING POLICY OWNER for the benefit of creditors or any other persons.

SELLING POLICY OWNER hereby acknowledges and agrees that (a) SELLING POLICY OWNER is represented in this transaction by SELLING POLICY OWNER's independent life settlement broker ("BROKER") which BROKER acts as SELLING POLICY OWNER's agent in negotiations of the PURCHASE PRICE and in providing information and documentation to LBC on behalf of SELLING POLICY OWNER; (b) in addition to the PURCHASE PRICE, LBC will pay a commission to BROKER as compensation for this transaction; (c) regardless of BROKER'S receipt of commissions

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

or other compensation from LBC, BROKER represents the interests of SELLING POLICY OWNER only and does not represent the interests of INSURANCE COMPANY or LBC in the sale of the POLICY; (d) BROKER is not an agent of LBC; and (e) LBC does not represent SELLING POLICY OWNER in the sale of the POLICY.

SELLING POLICY OWNER further represents and warrants to LBC that: (a) this PURCHASE AGREEMENT is the legal, valid and binding obligation of the SELLING POLICY OWNER enforceable in accordance with its respective terms, (b) SELLING POLICY OWNER is the sole and undisputed owner of the POLICY, (c) the face amount of, and net death benefit payable under, the POLICY is correctly set forth herein, (d) the benefits under the POLICY are incontestable, as set forth in any contestability provisions of the POLICY and to the best of SELLING POLICY OWNER's knowledge there are no facts or circumstances in existence as of the date hereof which could serve as a defense to payment in full of the death benefits payable by the INSURANCE COMPANY to the named beneficiaries upon the death of the INSURED, (e) there are no liens on the POLICY, (f) (1)SELLING POLICY OWNER has not filed for bankruptcy and the POLICY has not been subject to any bankruptcy proceedings since both the date of the POLICY was issued and the effective date of any additions or changes in coverage provided by the POLICY or (2) if SELLING POLICY OWNER has filed for bankruptcy, the POLICY was not subject to the claims of creditors and SELLING POLICY OWNER has provided LBC with a true, complete and correct copy of the bankruptcy discharge document and any bankruptcy documents related to the POLICY, (g) the POLICY is not the subject of any law, divorce decree or other legal impediment which requires that the POLICY be maintained for the benefit of any person or entity or which prohibits or restricts SELLING POLICY OWNER from executing this PURCHASE AGREEMENT and/or from transferring the full ownership of the POLICY and changing the beneficiary designation thereof, (h) there are no restrictions on the transfer of the POLICY, (i) there are no unpaid premiums on the POLICY, (j) the POLICY is in full force and effect and has not lapsed, and, the original owner of the POLICY at issuance had an insurable interest in the INSURED at the time the POLICY was originally issued, and (k) all of the information contained in each of the documents delivered by or on behalf of SELLING POLICY OWNER to LBC in connection with this PURCHASE AGREEMENT is true, complete and correct and none of such information or representation and warranty omits to state a material fact necessary to make such information, representation and/or warranty not misleading in light of the circumstances under which such statement(s) were made.

In the event that a premium payment on the POLICY becomes due following the date on which settlement funds are deposited to ESCROW AGENT's escrow account but prior to the date on which INSURANCE COMPANY has recorded that the POLICY's ownership has been transferred to LBC or the ESCROW AGENT, SELLING POLICY OWNER shall make the minimum required premium payment to INSURANCE COMPANY to maintain the POLICY in force.

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

SELLING POLICY OWNER hereby acknowledges and understands that this AGREEMENT is based upon SELLING POLICY OWNER's application to LBC and that the statements and answers therein contained, continue to be true to the best of the SELLING POLICY OWNER's knowledge and belief, and shall continue to be true of the time of closing. Any change in SELLING POLICY OWNER's application shall be made in writing and signed by SELLING POLICY OWNER and LBC.

SELLING POLICY OWNER hereby acknowledges and agrees that LBC shall be permitted to disclose the identity and/or medical and financial information of SELLING POLICY OWNER to a third person if such disclosure is necessary to effect this PURCHASE AGREEMENT or necessary to permit LBC's financing entity, related trust or special purpose entity to finance the purchase of the POLICY by LBC.

Notwithstanding the foregoing, SELLING POLICY OWNER hereby acknowledges and agrees that LBC, at its own will and discretion, may transfer, sell, assign, or otherwise dispose of the POLICY and all its related legal, insurance, and medical documents to another purchaser(s) or financial institution at any time. SELLING POLICY OWNER and INSURED hereby acknowledge and agree that following the transfer of the POLICY by LBC, a subsequent owner of the POLICY shall have the right to directly request and obtain updated medical records regarding the INSURED from INSURED's medical practitioners for purpose of updating the INSURED's mortality evaluation or selling the POLICY to potential third parties. SELLING POLICY OWNER further acknowledges and agrees that any consents and authorizations relating to the release of personal data and medical information specifically contemplate the potential resale of the POLICY and the redisclosure of such information to potential purchasers of the POLICY.

There are no fees to be paid by SELLING POLICY OWNER to LBC in order to sell the POLICY.

It is agreed that an escrow agreement ("ESCROW AGREEMENT") shall be signed by LBC, SELLING POLICY OWNER, Wells Fargo Northwest, National Association, as escrow agent ("ESCROW AGENT"). The ESCROW AGREEMENT provides for the transfer of settlement proceeds due to SELLING POLICY OWNER within three (3) business days of receipt by LBC of written confirmation from INSURANCE COMPANY that the POLICY's ownership and/or assignment has been transferred to LBC.

It is agreed that LBC, as per the ESCROW AGREEMENT, shall arrange for the settlement funds to be deposited to ESCROW AGENT's escrow account within three (3) business days of receipt by LBC or ESCROW AGENT of SELLING POLICY OWNER'S signed documents necessary to effect the transfer of the POLICY to LBC, its assigns or to the ESCROW AGENT.

SELLING POLICY OWNER has the right to rescind this PURCHASE AGREEMENT

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

before the earlier of thirty calendar days after the date when this PURCHASE AGREEMENT is executed by all parties or fifteen calendar days after the receipt of the settlement proceeds by the SELLING POLICY OWNER, provided that, within the rescission period SELLING POLICY OWNER advises LBC of SELLING POLICY OWNER'S desire to rescind and refunds LBC the settlement proceeds and any premiums, loans and loan interest. LBC's rights and interest in the POLICY will terminate upon LBC's timely receipt of such payment.

Should INSURED die prior to the end of the rescission period, it shall be deemed that SELLING POLICY OWNER has rescinded this PURCHASE AGREEMENT if repayment of all settlement proceeds and, if applicable, any premiums, loans and loan interest to LBC is made within forty-five days after the end of the rescission period.

SELLING POLICY OWNER hereby acknowledges that SELLING POLICY OWNER has been given the opportunity to review this PURCHASE AGREEMENT with independent counsel of SELLING POLICY OWNER'S choosing and is entering into this PURCHASE AGREEMENT freely and voluntarily, without constraint and without anyone exerting any influence of any kind over SELLING POLICY OWNER.

SELLING POLICY OWNER hereby acknowledges that SELLING POLICY OWNER consents to this PURCHASE AGREEMENT, has a full and complete understanding of this PURCHASE AGREEMENT and the benefits of the POLICY, has released INSURED's medical records to LBC, and has consulted with any such persons as SELLING POLICY OWNER shall have deemed appropriate prior to entering into this PURCHASE AGREEMENT.

This PURCHASE AGREEMENT, together with SELLING POLICY OWNER's APPLICATION and ESCROW AGREEMENT, constitute the entire contract between LBC and OWNER.

This PURCHASE AGREEMENT shall be construed and enforced in accordance with the laws of the State of New York excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this agreement to the law of another jurisdiction, and any litigation related to this PURCHASE AGREEMENT shall be brought in the State of New York.

ANY PERSON WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE OR VIATICAL SETTLEMENT CONTRACT IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES OR CONFINEMENT IN PRISON.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.895.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

____11____ day of ____June____, 200_7_.

SELLING POLICY OWNER: _____

STATE OF ____New Jersey____ )
                                          ) SS:
COUNTY OF ____Somerset____ )

On this ___11___ day of ___June_____, 200_07_, before me came ____
_Christopher T. Daly - CFO/VP____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires ____4/21/2010____

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010


IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

____11____ day of ____June____, 200_7_.

SELLING POLICY OWNER: _____

STATE OF ____New Jersey____ )
                                          ) SS:
COUNTY OF ____Somerset____ )

On this ___11___ day of ___June_____, 200_7_, before me came ____
_Marc E. Feaster - CEO/Pres.____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires ____4/21/2010____

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1390
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____ day of _____, 200___.

SELLING POLICY OWNER: _____

STATE OF _____ )
                                                    ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____
_____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____


IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____ day of _____, 200___.

INSURED: _____

STATE OF _____ )
                                                    ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____
_____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 6320
NEW YORK, NY 10118
800.375.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

**LEGACY BENEFITS CORPORATION**

By: _____

    Name                     Title

    _____

    Date

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1190
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

# EXHIBIT G

**Marc Feaster**

| | |
|---|---|
| **From:** | Papir, Josh [JPapir@legacybenefits.com] |
| **Sent:** | Wednesday, June 27, 2007 12:31 PM |
| **To:** | Marc Feaster; Sonia Ayers |
| **Subject:** | FW: Weller Closing Docs |

Marc/Sonia:
One other thing that I forgot to mention was that we need a copy of all the original closing documents.

Thank you,

Joshua Papir
Sr. Manager – Closing & Client Services
Legacy Benefits Corportation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

**From:** Papir, Josh
**Sent:** Wednesday, June 27, 2007 12:07 PM
**To:** 'mfeaster@viasourcefunding.com'
**Subject:** FW: Weller Closing Docs

Marc:

I sent this to Sonia this morning.  Please let me know if you have any questions.

Thank you,

Joshua Papir
Sr. Manager – Closing & Client Services
Legacy Benefits Corportation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

**From:** Papir, Josh
**Sent:** Wednesday, June 27, 2007 10:16 AM
**To:** 'Sonia Ayers'
**Subject:** RE: Weller Closing Docs

Sonia:

Here are the outstanding issues on the Weller case:
1) We do not believe that authority to view medical records can be passed from party to another under TX statutes.  Having said that, I have asked our funder to issue a waiver for this criterion.  In the event they do, I would still want the transfer from ViaSource to LBC to be amended to add our funder (I will provide the name later) and its affiliates.
2) No documents establishing initial insurable interest were provided.  We will need a statement from

9/12/2007



Frozen Foods, in the same format as the authorization to sell the policy, establishing what percentage ownership Melanie Weller held.
3)  ViaSource's formation documents (i.e. whatever documents were filed with the Secretary of State)
4)  ViaSource corporate resolution authorizing the re-sale of the policy
5)  ViaSource's operating/shareholder agreement
6)  Incumbency certificate (or equivalent document) showing authorized signatories on behalf of GE Capital.

Either criteria 4 or 5 should establish who can sign on behalf of ViaSource.

Please let me know if you have any questions.

Thank you,

Joshua Papir
Sr. Manager – Closing & Client Services
Legacy Benefits Corporation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

**From:** Sonia Ayers [mailto:sonia@viasourcefunding.com]
**Sent:** Monday, June 25, 2007 4:38 PM
**To:** Papir, Josh
**Subject:** RE: Weller Closing Docs

Hello,

I just left you a voice message.  Marc has asked me to contact you to get the list of outstanding items.
We want to bring this file to a closure as soon as possible.
Please send me  an email or call me to discuss the status of this file.

Please contact me if you have any questions or concerns.

Thank you,
Sonia L. Ayers

ViaSource Funding Group, LLC
106 Allen Road
Bernards Township, NJ 07920
Phone: (908)394-7778 ext 103
Fax: (732)280-8862
Email: sonia@viasourcefunding.com

**From:** Papir, Josh [mailto:JPapir@legacybenefits.com]
**Sent:** Thursday, June 21, 2007 6:54 PM
**To:** Sonia Ayers
**Subject:** Weller Closing Docs

Sonia:

I have been reviewing the closing documents that were sent.  There are a number of outstanding issues that we will need to resolve.  In the meantime, there are two topics that we have needed to discuss with our funder (an

9/12/2007

insurable interest question and the medical release provided). I expect that we will have some feedback on those issues on Monday. Once I have a clear understanding of how we will proceed, I will e-mail you with the details.

Thank you,

Joshua Papir
Sr. Manager - Closing & Client Services
Legacy Benefits Corporation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

*CONFIDENTIALITY NOTICE: This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete it and notify the sender immediately.*

9/12/2007

**Sonia Ayers**

From:           Marc Feaster
Sent:           Wednesday, June 27, 2007 9:16 AM
To:             'JPapir@legacybenefits.com'
Cc:             Sonia Ayers
Subject:        Weller

Josh:

I hope you're feeling better than earlier in the week. At some point this morning please send me the items we're missing. We really would like to bring this sale to closure and move on to some other cases. We're putting together 2-3 others files we've owned for several years and would consider selling, but this Weller sale needs to get wrapped up.

Thanks,


Marc E. Feaster
CEO ViaSource Funding Group, LLC

ViaSource Funding Group, LLC
81 East Water Street
Suite 2-B
Toms River, NJ 08753

Phone     (732) 280-8500
Fax       (732) 280-8862

1

*Legacy* ✗

## Marc Feaster

**From:** Papir, Josh [JPapir@legacybenefits.com]
**Sent:** Thursday, June 28, 2007 11:25 AM
**To:** Marc Feaster; Sonia Ayers; Meir Eliav
**Subject:** RE: Weller Closing Docs

Marc:
Thank you for 1 – 3. I am pushing the funder on # 5 and I hope it won't be an issue. As for #4, I am looking for a letter from the company stating that at the time the policy was purchased, Melanie Weller was the owner of Frozen Foods.

Thank you,

Joshua Papir
Sr. Manager – Closing & Client Services
Legacy Benefits Corportation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

**From:** Marc Feaster [mailto:mfeaster@viasourcefunding.com]
**Sent:** Thursday, June 28, 2007 11:10 AM
**To:** Papir, Josh; Sonia Ayers; Meir Eliav
**Subject:** RE: Weller Closing Docs


-----Original Message-----
**From:** Papir, Josh [mailto:JPapir@legacybenefits.com]
**Sent:** Thursday, June 28, 2007 10:49 AM
**To:** Marc Feaster; Sonia Ayers; Meir Eliav
**Cc:** Chris Daly
**Subject:** RE: Weller Closing Docs

Marc:
I have discussed this issue internally and I believe that this is the minimum we can accept to clean up the file and get the case closed:
1) A copy of all original closing documents
2) Formation Document or Certificate of Good Standing for your state of formation
3) A copy of the operating agreement or corporate resolutions authorizing the resale of the policy and who may sign on behalf of the LLC
4) Evidence of initial insurable interest. We cannot waive this even if it will be difficult to come by. What exactly are you looking for here so I only have to go to them once? She owned the company and the company purchased a policy on her life that was not premium financed. Tell me what you need specifically and I'll do what I can.
5) I am still working with our funder to waive a new HIPPA release but it may be necessary to have the insured sign one, as we were led to believe she would from the outset of this transaction. I'm not sure how you got the idea that she would sign another release because we've never committed to that – her people were hard enough to deal with the first go round. If you can't go without it, I'll try.

*Sonia: Please prepare as many of the items, 1-3 as you can and review them w/ Chris so we can pass*

9/12/2007

*this along to Josh today.  #3 will be a corporate resolution that Chris should be able to find.*

Thank you,

Joshua Papir
Sr. Manager – Closing & Client Services
Legacy Benefits Corportation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

**From:** Marc Feaster [mailto:mfeaster@viasourcefunding.com]
**Sent:** Wednesday, June 27, 2007 10:48 AM
**To:** Sonia Ayers; Papir, Josh; Meir Ellav
**Cc:** Chris Daly
**Subject:** RE: Weller Closing Docs

Josh: please see me comments below.

Calls w/ questions – thanks.

Marc

-----Original Message-----
**From:** Sonia Ayers
**Sent:** Wednesday, June 27, 2007 10:25 AM
**To:** Marc Feaster
**Cc:** Chris Daly
**Subject:** FW: Weller Closing Docs

Chris - Marc,

I attached the officer's cert on John Garvey -signor for GE which should meet item #6
As for the rest of the items, I am not sure where to get them or if we can get them.
Sonia

**From:** Papir, Josh [mailto:JPapir@legacybenefits.com]
**Sent:** Wednesday, June 27, 2007 10:16 AM
**To:** Sonia Ayers
**Subject:** RE: Weller Closing Docs

Sonia:

Here are the outstanding issues on the Weller case:
1)   We do not believe that authority to view medical records can be passed from party to
another under TX statutes.  Having said that, I have asked our funder to issue a waiver
for this criterion.  In the event they do, I would still want the transfer from ViaSource to
LBC to be amended to add our funder (I will provide the name later) and its affiliates.
**This shouldn't be a problem but I'll discuss it w/ Chris**
2)   No documents establishing initial insurable interest were provided.  We will need a
statement from Frozen Foods, in the same format as the authorization to sell the policy,
establishing what percentage ownership Melanie Weller held.  This will be
exceptionally difficult, if not impossible, to obtain.  The attorney's for Frozen

9/12/2007

Foods were difficult to work with. That said, I'll see what we have that may help us here.

3) ViaSource's formation documents (i.e. whatever documents were filed with the Secretary of State) Why, and what are you trying to establish?
4) ViaSource corporate resolution authorizing the re-sale of the policy No problem
5) ViaSource's operating/shareholder agreement No
6) Incumbency certificate (or equivalent document) showing authorized signatories on behalf of GE Capital.

Either criteria 4 or 5 should establish who can sign on behalf of ViaSource.

Please let me know if you have any questions.

Thank you,

Joshua Papir
Sr. Manager – Closing & Client Services
Legacy Benefits Corportation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

**From:** Sonia Ayers [mailto:sonia@viasourcefunding.com]
**Sent:** Monday, June 25, 2007 4:38 PM
**To:** Papir, Josh
**Subject:** RE: Weller Closing Docs

Hello,

I just left you a voice message. Marc has asked me to contact you to get the list of outstanding items.
We want to bring this file to a closure as soon as possible.
Please send me an email or call me to discuss the status of this file.

Please contact me if you have any questions or concerns.

Thank you,
Sonia L. Ayers

ViaSource Funding Group, LLC
106 Allen Road
Bernards Township, NJ 07920
Phone: (908)394-7778 ext 103
Fax: (732)280-8862
Email: sonia@viasourcefunding.com

**From:** Papir, Josh [mailto:JPapir@legacybenefits.com]
**Sent:** Thursday, June 21, 2007 6:54 PM
**To:** Sonia Ayers
**Subject:** Weller Closing Docs

Sonia:

I have been reviewing the closing documents that were sent. There are a number of outstanding issues that we will need to resolve. In the meantime, there are two topics that we have needed to discuss with our funder (an insurable interest question and the medical release provided). I expect that we will have some feedback on those issues on Monday. Once I have a clear understanding of how we will proceed, I will e-mail you with the details.

Thank you,

Joshua Papir
Sr. Manager - Closing & Client Services
Legacy Benefits Corporation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

*CONFIDENTIALITY NOTICE: This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete it and notify the sender immediately.*

9/12/2007

# EXHIBIT H

## Sonia Ayers

| | |
|---|---|
| **From:** | Papir, Josh [JPapir@legacybenefits.com] |
| **Sent:** | Wednesday, July 11, 2007 11:03 AM |
| **To:** | Marc Feaster; Meir Eliav |
| **Cc:** | Sonia Ayers |
| **Subject:** | RE: |

Marc:

I follow up with the carrier on a daily basis regarding the VOC and illustration. I will let you know as soon as I have some information. The HIPPA issue is still pending but I will do my best to have a resolution by the end of today.

Thank you,

Joshua Papir
Sr. Manager - Closing & Client Services
Legacy Benefits Corporation
646.878.2928
jpapir@legacybenefits.com

*CONFIDENTIALITY NOTICE: This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete it and notify the sender immediately.*

**From:** Marc Feaster [mailto:mfeaster@viasourcefunding.com]
**Sent:** Wednesday, July 11, 2007 11:00 AM
**To:** Papir, Josh; Meir Eliav
**Cc:** Sonia Ayers
**Subject:**

Good morning to all. We really need to bring this Weller case to closure for all parties. Sonia will have the letter from GE Capital today regarding the policy transfer and so on. I think we need to apply some passively aggressive pressure on the carrier to get these illustrations and VOC completed. I'd really like to get this finished up so we can move on to other endeavors.

Thanks, and call with questions.

Marc E. Feaster

CEO ViaSource Funding Group, LLC

ViaSource Funding Group, LLC

81 East Water Street

Suite 2-B

9/11/2007

*H*

# EXHIBIT I

Sent: Monday, July 16, 2007 5:28 PM
To: Papir, Josh
Subject: RE: 92551064 WELLER

Josh,

What is the status with the Hippa Issue?  Marc is getting annoyed about there being no updates.
What are the issues?

Please send me an email or give me a call on the status of this.

Thanks,
Sonia

-----Original Message-----
From: Papir, Josh [mailto:JPapir@legacybenefits.com]
Sent: Friday, July 13, 2007 1:57 PM
To: Sonia Ayers
Subject: RE: 92551064 WELLER

Sonia:

Thanks. I got it and the illustration.  Will let you know final word on HIPPA soon.

Thank you,

Joshua Papir
Sr. Manager - Closing & Client Services
Legacy Benefits Corporation
646.878.2928
jpapir@legacybenefits.com

CONFIDENTIALITY NOTICE:  This e-mail and any attachments are only for the use of the intended recipient and may contain
information that is confidential and privileged.  If you are not the intended recipient, any disclosure, distribution or other use of this e-
mail message or attachments is prohibited.  If you have received this e-mail message in error, please delete it and notify the sender
immediately.

-----Original Message-----
From: Sonia Ayers [mailto:sonia@viasourcefunding.com]
Sent: Friday, July 13, 2007 12:31 PM
To: Papir, Josh
Subject: FW: 92551064 WELLER

Hey Josh,

Wanted to give you a heads up.  Received an email from Transamerica.
A New VOC emailed to Josh Papir at Legacy Benefits 12:02 pm 7/12/07.

Thanks,
Sonia

2

I

# EXHIBIT J

# Sonia Ayers

**From:** Sonia Ayers
**Sent:** Wednesday, July 18, 2007 9:41 AM
**To:** Marc Feaster
**Subject:** FW: 92551064 WELLER

-----Original Message-----
From: Sonia Ayers
Sent: Tuesday, July 17, 2007 9:37 AM
To: 'Papir, Josh'
Subject: RE: 92551064 WELLER

Joshua,

I realize the issue with the Hippa. That is not what I was referring to when I asked the issue.
I was questioning whether or not it can be "worked out" & how long it will take to get this resolved.

You have said in previous emails that you expected an answer sooner but the expected time passes & still we have no answer.
I expect that there are issues that are being worked out to try & get this passed. This is the issue I am referring to.

Marc is getting impatient with the delay & needs an answer soon. This is starting to have an impact on other files that we are working on. Is there anything needed by us that may help this along?

Thanks,

Sonia

-----Original Message-----
From: Papir, Josh [mailto:JPapir@legacybenefits.com]
Sent: Monday, July 16, 2007 5:48 PM
To: Sonia Ayers
Subject: RE: 92551064 WELLER

Sonia:

I have previously explained that we do not believe that HIPPA releases can be transferred from one party to another. I am trying to work it out so that you don't have to approach the insured again. I will get back to you as soon as I have an answer.

Thank you,

Joshua Papir
Sr. Manager - Closing & Client Services
Legacy Benefits Corporation
646.878.2928
jpapir@legacybenefits.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete it and notify the sender immediately.

-----Original Message-----
From: Sonia Ayers [mailto:sonia@viasourcefunding.com]

1

# EXHIBIT K

**Sonia Ayers**

| | |
|---|---|
| **From:** | Marc Feaster |
| **Sent:** | Wednesday, July 18, 2007 9:49 AM |
| **To:** | Chris Daly |
| **Cc:** | Sonia Ayers |
| **Subject:** | Weller |

I just spoke w/ Josh @ Legacy and w/ Meir. The change forms are going out to the carrier today. The HIPPA thing is no longer an issue; I helped get over the problem they thought they were having.

Marc E. Feaster
CEO ViaSource Funding Group, LLC

ViaSource Funding Group, LLC
81 East Water Street
Suite 2-B
Toms River, NJ 08753

| Phone | (732) 280-8500 |
|---|---|
| Fax | (732) 280-8862 |

# EXHIBIT L

**Sonia Ayers**

| | |
|---|---|
| **From:** | Papir, Josh [JPapir@legacybenefits.com] |
| **Sent:** | Wednesday, July 25, 2007 10:21 AM |
| **To:** | Sonia Ayers |
| **Subject:** | Weller |

Sonia:
Our finder has raised an issue that the address on the policy, which matches the address on her driver's license, does not match the address you completed on the LBC Application. Can you please explain why the discrepancy? I ran an electronic search on Melanie Weller and the Austin, TX address listed in the app does not appear. I may need an affidavit completed depending on the answer. Please advise.

Thank you,

Joshua Papir
Sr. Manager - Closing & Client Services
Legacy Benefits Corporation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2928 Direct
646.878.2929 Fax
jpapir@legacybenefits.com
www.legacybenefits.com

*CONFIDENTIALITY NOTICE: This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete it and notify the sender immediately.*

9/11/2007

# EXHIBIT M

## Sonia Ayers

| | |
|---|---|
| **From:** | Nelson Barrera [NBarrera@legacybenefits.com] |
| **Sent:** | Friday, July 27, 2007 12:23 PM |
| **To:** | Sonia Ayers; Marc Feaster |
| **Subject:** | FW: Melanie Weller – 2nd request 7-27-07 |
| **Attachments:** | Form-Offer Acceptance.pdf |

Nelson Barrera
Relationship Manager
Legacy Benefits Corporation
646.878.2956 Direct
nbarrera@legacybenefits.com

*CONFIDENTIALITY NOTICE: This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete it and notify the sender immediately.*

**From:** Nelson Barrera
**Sent:** Thursday, July 26, 2007 8:18 AM
**To:** 'sonia@viasourcefunding.com'
**Subject:** FW: Melanie Weller

Nelson Barrera
Relationship Manager
Legacy Benefits Corporation
646.878.2956 Direct
nbarrera@legacybenefits.com

*CONFIDENTIALITY NOTICE: This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited. If you have received this e-mail message in error, please delete it and notify the sender immediately.*

**From:** Nelson Barrera
**Sent:** Wednesday, July 25, 2007 2:05 PM
**To:** 'mfeaster@viasourcefunding.com'
**Subject:** Melanie Weller

Hi Mark

I just got back from vacation and been advised by Josh that this case is with our fund.

However I do not show an offer acceptance having been received from Viasource. Please complete the attached offer

9/11/2007

acceptance and return for our records as soon as possible.

Thank you

Nelson Barrera
Relationship Manager
Legacy Benefits Corporation
350 Fifth Avenue, Suite 4320
New York, NY 10118
646.878.2956 Direct
646.878.2957 Fax
nbarrera@legacybenefits.com
www.legacybenefits.com

CONFIDENTIALITY NOTICE:  This e-mail and any attachments are only for the use of the intended recipient and may contain information that is confidential and privileged. If you are not the intended recipient, any disclosure, distribution or other use of this e-mail message or attachments is prohibited.  If you have received this e-mail message in error, please delete it and notify the sender immediately.

9/11/2007

# EXHIBIT N

 **LegacyBenefits**
*Capitalize On Experience*

Legacy Benefits Corporation
Empire State Building
350 Fifth Avenue, Suite 4320
New York, NY 10118

T 800.875.1000
T 212.643.1190
F 212.643.1180

legacybenefits.com

August 28, 2007

**VIA OVERNIGHT MAIL**

Mr. Mark Feaster
ViaSource Funding Group, LLC
106 Allen Road
Bernard Township, NJ  07920

Re:    TransAmerica Occidental Life Insurance Company Policy Number 92551064 (the
       "Policy")
       Insured:  Melanie Weller

Dear Mr. Feaster:

As you are aware, on June 11, 2007, a Purchase Agreement and Irrevocable Absolute
Assignment of Life Insurance Policy by and between ViaSource Funding Group, LLC
("ViaSource") and Legacy Benefits Corporation ("Legacy") (the "Purchase Agreement")
was executed by Christopher T. Daly and you on behalf of ViaSource.  Pursuant to the
Purchase Agreement, ViaSource entered into a binding contract to sell the Policy to
Legacy Benefits Corporation in consideration of $3,951,662 per the terms of the Purchase
Agreement.

On August 1, 2007, an Assignment to Transfer Ownership for Life Insurance Policies
form and a Beneficiary Designation form (both of which were signed on behalf of
ViaSource and by General Electric Capital Corporation, as the Collateral Assignee, and
indicated an instruction to change the ownership and beneficiary designation on the
Policy to Legacy) were submitted via fax to TransAmerica Occidental Life Insurance
Company.

On August 9, 2007, Legacy contacted TransAmerica to ascertain the status of such
change forms.  We were notified at that time that ViaSource had instructed TransAmerica
that any change forms submitted after July 31, 2007 should be disregarded.  Legacy was
not notified by ViaSource of such instruction to TransAmerica, any change of heart nor
of any impending deadline to submit the change of ownership/beneficiary forms to the
carrier.

**LegacyBenefits**

Although the Purchase Agreement provides that ViaSource has the right to rescind the Purchase Agreement before (i) the earlier of thirty calendar days after the date when the Purchase Agreement is executed by all parties or (ii) fifteen calendar days after the receipt of the settlement proceeds by ViaSource, such right is conditioned on the fact that within the aforementioned rescission period, ViaSource must have advised Legacy of its desire to rescind.

As of the date hereof, no correspondence has been received from you or any other representative of ViaSource pertaining to this matter. Indeed, in an email sent to you on August 9, 2007 by Meir Eliav, he asked you for your position on this transaction. You did not respond to his email. Although you had ample opportunity to advise Legacy of any decision to rescind, you failed to do so. Indeed, there has been no notice to Legacy made by ViaSource of its desire to rescind the contract. As such, pursuant to the terms of the Purchase Agreement, which was signed by ViaSource on June 11, 2007 and by Legacy on July 25, 2007, the rescission period expired on August 25, 2007 and the Purchase Agreement is still in place.

ViaSource's attempt to renege on the Purchase Agreement (by instructing TransAmerica to disregard the change forms that ViaSource expected Legacy to file) is simply ineffectual. The Purchase Agreement that was counter-signed by Legacy on July 25, 2007 created a contract binding on the parties thereto. Your attempt to renege is a clear breach of such contract and is not an effective exercise of your rescission right, which has now expired.

ViaSource signed the definitive transaction documentation for Legacy's purchase of the Policy and did not rescind such agreements in a timely manner. As such, Legacy expects the transaction to proceed according to its terms.

Please be advised that if within five (5) business days of the date of this letter you fail to instruct TransAmerica to proceed to record the change forms filed by Legacy on August 1, 2007 and proceed with the closing of Legacy's purchase of the Policy subject to the terms set forth in the definitive transaction documents, Legacy will seek all legal and equitable remedies available to it. We trust that this will not be necessary.

Very truly yours,

Anat Peirez
General Counsel

# EXHIBIT O



LORD BISSELL ▽ BROOK LLP
ATTORNEYS AT LAW

THE PROSCENIUM | SUITE 1900
1170 PEACHTREE STREET, NE | ATLANTA, GEORGIA 30309-3602
404.870.4600 | 404.872.5547 FAX | WWW.LORDBISSELL.COM

September 10, 2007

Brian T. Casey

404.870.4638
Fax: 404.806.5638
bcasey@lordbissell.com

**VIA EMAIL & U.S. CERTIFIED MAIL**

Mr. Mark Feaster
ViaSource Funding Group, LLC
106 Allen Road
Bernard Township, NJ 07920

Re:    Purchase Agreement and Irrevocable Absolute Assignment of Life Insurance Policy between
       ViaSource Funding Group, LLC and Legacy Benefits Corporation dated June 11, 2007 (the
       "Agreement")

Dear Mr. Feaster:

This firm represents Legacy Benefits Corporation ("LBC") in connection with the above-referenced Agreement for the sale by ViaSource Funding Group, LLC ("VFG") to LBC of life insurance policy number 92551064 issued by TransAmerica Occidental Life Insurance Company and insuring the life of Melanie Weller (the "Policy"). Our client has provided us with a copy of its letter to you dated August 28, 2007, in reference to the Agreement to which letter LBC has never received any response.

Under the plain, express terms of the Agreement, VFG, unambiguously has agreed to sell to LBC the Policy for a purchase price of $3,951,662 and funds for the payment of which LBC escrowed with Wells Fargo Northwest, the escrow agent, as contemplated by the Agreement. Subsequent to the signing of the Agreement by both LBC and VFG and LBC's escrow of funds for payment of the purchase, LBC learned that VFG, after LBC having submitted the change of ownership and change of beneficiary forms for the Policy to TransAmerica Occidental Life Insurance Company (the "Insurer") to effectuate the change of ownership and beneficiary of the Policy from VFG to LBC, instructed the Insurer to cease processing these change forms. Such action of VFG is clearly an intentional breach by it of the Agreement.

LBC hereby demands that VFG immediately cause the Insurer to effectuate the processing of the change forms and provide to me no later than 5:00 p.m. e.t. on Wednesday, September 12, 2007, the written assurance of VFG that such processing has been reinstituted. If VFG fails to reinstitute such processing or deliver such written assurance to me by such time and date, we will commence proceedings on behalf LBC against VFG to pursue all of LBC's equitable and legal remedies for this blatant and intentional breach by VFG of the Agreement, including without

ATLANTA  |  CHICAGO  |  LONDON  |  LOS ANGELES  |  NEW YORK  |  SACRAMENTO  |  WASHINGTON

ATL 342076v1



Mr. Mark Feaster
ViaSource Funding Group, LLC
September 10, 2007
Page 2

limitation, punitive damages for VFG's intentional wrongful act and collection of LBC's attorneys' fees and expenses incurred in connection therewith.

Govern yourself accordingly.

Regards,

Brian T. Casey

cc:    Anat E. Peirez, Esq.
       Steven M. Goldman, New Jersey Commissioner of Insurance

# EXHIBIT P

FILED
MONMOUTH COUNTY
SEP 1 3 2007
OFFICE OF THE SUPERIOR COURT CLERK
CIVIL DIVISION

LOMURO, DAVISON, EASTMAN & MUÑOZ, P.A.
Monmouth Executive Center
100 Willowbrook Rd., Bldg. 1
Freehold, New Jersey 07728
(732) 462-7170
Attorneys for Defendant

| | |
|---|---|
| VIASOURCE FUNDING GROUP, L.L.C., a New Jersey Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>LEGACY BENEFITS CORPORATION,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>MONMOUTH COUNTY<br>DOCKET NO. mon-L- 4381- 07<br><br>Civil Action<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND** |

Plaintiff, ViaSource Funding Group, L.L.C., having a principal office at 457-R Sycamore

Avenue in the Borough of Shrewsbury, Monmouth County, New Jersey, by way of complaint

against the defendant, says:

<u>COUNT ONE</u>

1.    Plaintiff is a limited liability company organized under the laws of the State of

New Jersey which is engaged in the viatical funding business.  As such, the company purchases,

holds, and sells ownership interests in various life insurance policies that have been issued in the

name of an owner who for a sum certain transfers the right to receive the benefits under the

policy upon the owner's death.

2.    Defendant is a New York limited liability company and is engaged in the same

business as the plaintiff.



3.     On or about June 11, 2007, the plaintiff executed an agreement/assignment whereby it attempted to assign and sell to the defendant the rights to the life insurance proceeds under a certain policy issued by TransAmerica Occidental Life Insurance Company bearing Policy No. 92551064 insuring the life of one, M.W.  The defendant never completed execution of the necessary documents, nor did it provide to the plaintiff signed documents indicating that defendant in fact agreed to the terms of the agreement, even though the documents were on forms provided to the plaintiff by the defendant.

4.     Under the terms of the proposed agreement, the defendant needed to fund the assignment price, i.e., $3,951,662.00, with an escrow agent within three (3) days after its execution of the contract.   In fact, to the knowledge of the plaintiff, the defendant never funded the project, let alone execute the documents, and attempted to treat the matter as an option.

5.     After a certain period of time, plaintiff realized that the defendant was not adhering to the terms of the agreement which plaintiff had signed and executed on June 11, 2007, and plaintiff notified the defendant that it was rescinding the agreement.

6.     Defendant, both individually and through counsel, has claimed that the agreement is in force and effect and is threatening legal action.

7.     By this count the plaintiff seeks a declaratory judgment that the agreement was never effective and, if it came into existence, was immediately breached by the defendant through its failure to fund the project within three (3) days.

WHEREFORE, Plaintiff seeks a declaratory judgment that it has no obligations under the contract it executed on June 11, 2007 to the defendant.

## COUNT TWO

1.      Plaintiff repeats the allegations contained in Count One and incorporates same herein by reference.

2.      While not conceding that any contract ever came into existence, it is contended that by virtue of the relational interests in sharing in the same viatical funding business, the defendant owed the plaintiff a duty of good faith and fair dealing in the manner in which it acted in connection with this particular attempted assignment and purchase.

3.      The defendant, through its actions subsequent to June 11, 2007, followed a pattern and practice which breached the duty of good faith and fair dealing which, under the unusual circumstances present here, gives rise to a claim for damages in favor of the plaintiff and against the defendant.

WHEREFORE, Plaintiff seeks the entry of judgment against the defendant for damages plus costs of suit.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury as to all issues.

LOMURRO, DAVISON,
EASTMAN & MUÑOZ, P.A.
Attorneys for Plaintiff

Dated: _9/13/07_            By: _____ FOR
                                MICHAEL D. SCHOTTLAND

## TRIAL ATTORNEY DESIGNATION

Please take notice that Michael D. Schottland, Esq. is hereby designated trial counsel for the plaintiff in the within captioned matter pursuant to Rule 4:25-4.

## CERTIFICATION PURSUANT TO RULE 4:5-1

I certify that pursuant to R. 4:5-1, to my knowledge and based on the information available to me at this time, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and that no additional parties are known at this time who should be added.

Dated: 9/13/07

MICHAEL D. SCHOTTLAND

# EXHIBIT Q

███████████████████████████████████████

GREGORY T. CASAMENTO
SARAH M. CHEN
LORD, BISSELL & BROOK LLP
Attorneys For Plaintiff
Legacy Benefits Corporation
885 Third Ave.
New York, NY 10022
212.947.4700
Fax 212-812-8385

**SERVED ON**
DATE _10-9-07_
BY _DBB_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -x
LEGACY BENEFITS CORPORATION              :     Index No. _603172/07_

        Plaintiff,                      :

    - against -                              :

VIASOURCE FUNDING GROUP, LLC,             :     **SUMMONS**

        Defendant.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - -x

**TO THE ABOVE-NAMED DEFENDANT:**

    YOU ARE HEREBY SUMMONED to answer the Complaint of Plaintiff, Legacy

Benefits Corporation ("Legacy"), and to serve a copy of your Answer upon counsel for the

Plaintiff, within twenty (20) days after the service of this Summons, exclusive of the day of

service (or within thirty (30) days after service is completed if this Summons is not personally

delivered to you within the State of New York); and in case of your failure to appear or answer,

judgment will be taken against you by default for the relief demanded in the Complaint.

NEW YORK
COUNTY CLERK'S OFFICE

SEP 2 5 2007

NOT COMPARED
WITH COPY FILED



Dated:     New York, New York
              September 21, 2007

                    Lord, Bissell & Brook LLP

                    By:_____
                         Gregory T. Casamento

                    Attorneys For Plaintiff
                    Legacy Benefits Corporation
                    885 Third Ave.
                    New York, NY  10022
                    212.947.4700
                    Fax 212-812-8385.

TO:   ViaSource Funding Group, LLC
       106 Allen Road
       Bernard Township, NJ  07920

2

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Case Processing Section, Room 119
Justice Center, 10 Main Street
Hackensack, NJ 07601-0769
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Floor, Court Facility,
49 Rancocas Road
Mount Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
First Floor, Hall of Records
101 South Fifth Street
Camden, NJ 08103
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 North Main Street, Box DN-209
Cape May Court House, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Streets, P.O. Box 615
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
50 West Market Street, Room 131
Newark, NJ 07102
LAWYER REFERRAL
(973) 622-6207
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Floor, Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Civil Records Dept.
Brennan Courthouse, First Floor
583 Newark Avenue
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 263-6109
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 South Broad St., P.O. Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Administration Building, 3rd Floor
1 Kennedy Square, P.O. Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Monmouth County Courthouse
71 Monument Park, P.O. Box 1269
Freehold, NJ 07728-1269
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
30 Schuyler Place, P.O. Box 910
Morristown, NJ 07960-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Passaic County Court House
77 Hamilton Street
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market Street, P.O. Box 18
Salem, NJ 08079
LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
New Court House, 3rd Floor
P.O. Box 3000
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
Court House, First Floor
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Warren County Courthouse
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 387-1835
LEGAL SERVICES
(908) 475-2010

**Powered by**
**HotDocs®**

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com    800.222.0510    Page 2

GREGORY T. CASAMENTO
LORD, BISSELL & BROOK LLP
Attorneys For Plaintiff
Legacy Benefits Corporation
885 Third Ave.
New York, NY 10022
212.947.4700
Fax 212-812-8385

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LEGACY BENEFITS CORPORATION           :    Index No. 60.3172/07

        Plaintiff,                    :

    - against -                               :

VIASOURCE FUNDING GROUP, LLC,          :    **VERIFIED COMPLAINT**

        Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    Plaintiff, Legacy Benefits Corporation ("Legacy"), by its attorneys, Lord, Bissell & Brook, LLP, alleges as follows on knowledge as to its own actions and otherwise on information and belief:

## NATURE OF THE ACTION

    1.    This is an action for damages for breach of contract, punitive damages, and attorneys' fees from Defendant, ViaSource Funding Group, LLC ("ViaSource").

    2.    Plaintiff brings this action against ViaSource for willful breach of a Purchase Agreement and Irrevocable Absolute Assignment of Life Insurance Policy (the "Purchase Agreement") pursuant to which ViaSource had agreed to sell to Legacy Life Insurance Policy No. 92551064.

    3.    Plaintiff Legacy hereby seeks damages arising from the breach of contract, punitive damages, and Legacy's attorneys' fees.

## PARTIES

4.      Legacy is a corporation organized, existing, and doing business under the laws of the State of New York, with its principal place of business located in New York. Legacy is an innovative specialty-finance firm focused on the life settlement market.

5.      ViaSource is a limited liability company organized, existing, and doing business under the laws of the State of New Jersey, with its principal place of business in Bernard Township, New Jersey. Upon information and belief, ViaSource is also a specialty-finance firm focused on the life settlement market.

6.      Jurisdiction and venue are appropriate in this Court because, upon information and belief, at all times hereinafter mentioned, ViaSource was and still is a foreign corporation duly authorized to transact business within the State of New York. Additionally, ViaSource has consented to this jurisdiction and venue pursuant to the terms of the Purchase Agreement at issue in this action.

## FACTUAL BACKGROUND

7.      Both ViaSource and Legacy are in the business of, among other things, purchasing and selling life insurance policies.[1]

8.      On June 11, 2007, ViaSource executed a binding Purchase Agreement, pursuant to which ViaSource agreed to sell Legacy policy number 92551064 (the "Policy"), in consideration of $3,951,662. *See Ex. A*.[2]

9.      On July 27, 2007, Legacy executed the binding Purchase Agreement.

10.     Upon information and belief, the Policy was originally issued by TransAmerica Occidental Life Insurance Company (the "Insurer"), insuring the life of M.W. (the "Insured").

---

[1] The purchase and sale of a life insurance policy in the secondary market involves several steps. Generally after the purchase agreement is entered into between a buyer and a seller and all requested information/documentation is provided to the buyer, the buyer places the purchase funds in escrow. The buyer then sends change of ownership/beneficiary forms to the insurance company that issued the policy. Once the insurance company, pursuant to the change of ownership forms, changes the policy ownership and beneficiary from the seller to the buyer, the buyer instructs the escrow agent to release the purchase funds to the seller.

[2] True Copies of all exhibits referenced herein are annexed.

11.    Upon information and belief, ViaSource purchased the policy from the Insured.

12.    At the time the Purchase Agreement was entered into, the Policy had a total face value of $4,312,500, to be paid to the Policy beneficiary upon the death of the Insured.

### The Life Settlement Transaction

13.    Pursuant to the Purchase Agreement, the purchase price of $3,951,662 was deposited into escrow with Wells Fargo Northwest, the agreed upon escrow agent.

14.    As provided for by the Purchase Agreement, ViaSource executed the Assignment to Transfer Ownership for Life Insurance Policies Form and a Beneficiary Designation Form on July 17, 2007 and July 16, 2007, respectively, (the "Change of Ownership Forms"), which instructed the Insurer to institute Legacy as the owner and beneficiary of the Policy.

15.    As contemplated by the Purchase Agreement, Legacy then sent the Insurer the Change of Ownership Forms via fax. *See Ex. B.*

### ViaSource Violates the Purchase Agreement

16.    On August 9, 2007, Legacy contacted the Insurer to confirm the Change of Ownership Forms were received and processed.

17.    The Insurer notified Legacy that ViaSource had instructed the Insurer to disregard any Change of Ownership Forms submitted after July 31, 2007.

18.    ViaSource never informed Legacy that the Insurer had been instructed to disregard the Change of Ownership Forms submitted after July 31, 2007.

19.    Moreover, ViaSource never provided notice to Legacy pursuant to the Purchase Agreement to rescind either during or following the rescission period. *See Ex. A* at Pg. 4.

### COUNT I

### (Breach of Contract)

20.    Legacy hereby incorporates the allegations set forth in the paragraphs listed above.

21.    ViaSource entered into a valid and binding contract with Legacy, which is reflected in the Purchase Agreement.

3

22.     By the terms of the Purchase Agreement and for adequate consideration, ViaSource agreed to sell the Policy to Legacy.

23.     ViaSource breached the Purchase Agreement by willfully instructing the Insurer to obstruct performance of the Purchase Agreement.

24.     As a consequence of the foregoing, Legacy has been damaged in the amount of $151,838.

25.     Legacy is entitled to receive damages as a result of ViaSource's breach of contract.

## COUNT II

### (Punitive Damages)

26.     Legacy hereby incorporates the allegations set forth in the paragraphs listed above.

27.     ViaSource acted maliciously in instructing the Insurer to disregard any Change of Ownership Forms submitted after July 31, 2007, because such instruction was given in willful, wanton, and reckless disregard of Legacy's contractual rights.

28.     Legacy is therefore entitled to punitive damages.

4

WHEREFORE, Legacy respectfully requests that this Court enter an order:

a.     Awarding Legacy damages for breach of contract in an amount no less than $151,838.00;

b.     Awarding Legacy punitive and exemplary damages;

c.     Awarding Legacy its reasonable attorneys' fees and costs and disbursements of the action; and

d.     For such other damages and relief as this Court may deem just and appropriate.

Dated:       New York, New York
             September 21, 2007

                              Lord, Bissell & Brook LLP

                              By: _____
                              Gregory T. Casamento
                              Sarah M. Chen
                              Attorneys For Plaintiff
                              Legacy Benefits Corporation
                              885 Third Ave.
                              New York, NY  10022
                              212.947.4700
                              Fax 212-812-8385

TO:    ViaSource Funding Group, LLC
       106 Allen Road
       Bernard Township, NJ  07920

5

Exhibit A

## PURCHASE AGREEMENT AND IRREVOCABLE
## ABSOLUTE ASSIGNMENT OF LIFE INSURANCE POLICY
## ("PURCHASE AGREEMENT")

ViaSource Funding Group, LLC, domiciled at 106 Allen Road, Bernard Township, NJ 07920 ("SELLING POLICY OWNER") and Melanie Weller ("INSURED") residing at 1034 Liberty Park Drive, Apt. 120, Austin, TX 78746, the owner and insured, respectively, of life insurance policy number 92551064 ("POLICY") issued by TransAmerica Occidental Life Insurance Company ("INSURANCE COMPANY"), and having a total face value of $ 4,312,500.00 (Four Million Three Hundred Twelve Thousand Dollars and 00/100 cts) in consideration of $3,951,662.00 (Three Million Nine Hundred Fifty One Thousand Six Hundred Sixty Two Dollars and 00/100) ("PURCHASE PRICE") to be paid to the SELLING POLICY OWNER by Legacy Benefits Corporation ("LBC"), a New York corporation having offices at Empire State Building, 350 Fifth Avenue, Suite 4320, New York, NY 10118, hereby assigns, transfers, and delivers to LBC, its successors, and/or assigns all of the rights, title, interest, options, and privileges in, to, and under the POLICY as owner/assignee thereof, subject to the terms of this agreement.

Included in this sale, assignment, transfer, and delivery shall be all monies due and to become due or payable under the POLICY and all dividends, options, benefits, and advantages derived from the POLICY, including, but not limited to, the right to surrender the POLICY at any time and to receive the surrender value thereof; the right upon the death of the insured, to collect the death benefit payable under the POLICY; and all other rights and benefits afforded to the owner, insured and/or beneficiary(ies) of and under the POLICY.

SELLING POLICY OWNER warrants the validity and sufficiency of this absolute and unconditional sale and assignment to LBC, its successors and/or assigns, of all of SELLING POLICY OWNER'S rights, title, to and/or interest in, and to the POLICY. SELLING POLICY OWNER further warrants that no tax or creditor's lien has been filed against SELLING POLICY OWNER, no judgment has been filed against SELLING POLICY OWNER or any of SELLING POLICY OWNER'S property, and no assignment has been made by SELLING POLICY OWNER for the benefit of creditors or any other persons.

SELLING POLICY OWNER hereby acknowledges and agrees that (a) SELLING POLICY OWNER is represented in this transaction by SELLING POLICY OWNER's independent life settlement broker ("BROKER") which BROKER acts as SELLING POLICY OWNER's agent in negotiations of the PURCHASE PRICE and in providing information and documentation to LBC on behalf of SELLING POLICY OWNER; (b) in addition to the PURCHASE PRICE, LBC will pay a commission as compensation for this transaction; (c) regardless of BROKER'S receipt of commissions

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1300
212.643.1390 FAX
WWW.LEGACYBENEFITS.COM

or other compensation from LBC, BROKER represents the interests of SELLING POLICY OWNER only and does not represent the interests of INSURANCE COMPANY or LBC in the sale of the POLICY; (d) BROKER is not an agent of LBC; and (e) LBC does not represent SELLING POLICY OWNER in the sale of the POLICY.

SELLING POLICY OWNER further represents and warrants to LBC that: (a) this PURCHASE AGREEMENT is the legal, valid and binding obligation of the SELLING POLICY OWNER enforceable in accordance with its respective terms, (b) SELLING POLICY OWNER is the sole and undisputed owner of the POLICY, (c) the face amount of, and net death benefit payable under, the POLICY is correctly set forth herein, (d) the benefits under the POLICY are incontestable, as set forth in any contestability provisions of the POLICY and to the best of SELLING POLICY OWNER's knowledge there are no facts or circumstances in existence as of the date hereof which could serve as a defense to payment in full of the death benefits payable by the INSURANCE COMPANY to the named beneficiaries upon the death of the INSURED, (e) there are no liens on the POLICY, (f) (1)SELLING POLICY OWNER has not filed for bankruptcy and the POLICY has not been subject to any bankruptcy proceedings since both the date of the POLICY was issued and the effective date of any additions or changes in coverage provided by the POLICY or (2) if SELLING POLICY OWNER has filed for bankruptcy, the POLICY was not subject to the claims of creditors and SELLING POLICY OWNER has provided LBC with a true, complete and correct copy of the bankruptcy discharge document and any bankruptcy documents related to the POLICY, (g) the POLICY is not the subject of any law, divorce decree or other legal impediment which requires that the POLICY be maintained for the benefit of any person or entity or which prohibits or restricts SELLING POLICY OWNER from executing this PURCHASE AGREEMENT and/or from transferring the full ownership of the POLICY and changing the beneficiary designation thereof, (h) there are no restrictions on the transfer of the POLICY, (i) there are no unpaid premiums on the POLICY, (j) the POLICY is in full force and effect and has not lapsed, and, the original owner of the POLICY at issuance had an insurable interest in the INSURED at the time the POLICY was originally issued, and (k) all of the information contained in each of the documents delivered by or on behalf of SELLING POLICY OWNER to LBC in connection with this PURCHASE AGREEMENT is true, complete and correct and none of such information or representation and warranty omits to state a material fact necessary to make such information, representation and/or warranty not misleading in light of the circumstances under which such statement(s) were made.

In the event that a premium payment on the POLICY becomes due following the date on which settlement funds are deposited to ESCROW AGENT's escrow account but prior to the date on which INSURANCE COMPANY has recorded that the POLICY's ownership has been transferred to LBC or the ESCROW AGENT, SELLING POLICY OWNER shall make the minimum required premium payment to INSURANCE COMPANY to maintain the POLICY in force.

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1330
212.643.1380 FAX
WWW.LEGACYBENEFITS.COM

SELLING POLICY OWNER hereby acknowledges and understands that this AGREEMENT is based upon SELLING POLICY OWNER's application to LBC and that the statements and answers therein contained, continue to be true to the best of the SELLING POLICY OWNER's knowledge and belief, and shall continue to be true at the time of closing. Any change in SELLING POLICY OWNER's application shall be made in writing and signed by SELLING POLICY OWNER and LBC.

SELLING POLICY OWNER hereby acknowledges and agrees that LBC shall be permitted to disclose the identity and/or medical and financial information of SELLING POLICY OWNER to a third person if such disclosure is necessary to effect this PURCHASE AGREEMENT or necessary to permit LBC's financing entity, related trust or special purpose entity to finance the purchase of the POLICY by LBC.

Notwithstanding the foregoing, SELLING POLICY OWNER hereby acknowledges and agrees that LBC, at its own will and discretion, may transfer, sell, assign, or otherwise dispose of the POLICY and all its related legal, insurance, and medical documents to another purchaser(s) or financial institution at any time. SELLING POLICY OWNER and INSURED hereby acknowledge and agree that following the transfer of the POLICY by LBC, a subsequent owner of the POLICY shall have the right to directly request and obtain updated medical records regarding the INSURED from INSURED's medical practitioners for purpose of updating the INSURED's mortality evaluation or selling the POLICY to potential third parties. SELLING POLICY OWNER further acknowledges and agrees that any consents and authorizations relating to the release of personal data and medical information specifically contemplate the potential resale of the POLICY and the redisclosure of such information to potential purchasers of the POLICY.

There are no fees to be paid by SELLING POLICY OWNER to LBC in order to sell the POLICY.

It is agreed that an escrow agreement ("ESCROW AGREEMENT") shall be signed by LBC, SELLING POLICY OWNER, Wells Fargo Northwest, National Association, as escrow agent ("ESCROW AGENT"). The ESCROW AGREEMENT provides for the transfer of settlement proceeds due to SELLING POLICY OWNER within three (3) business days of receipt by LBC of written confirmation from INSURANCE COMPANY that the POLICY's ownership and/or assignment has been transferred to LBC.

It is agreed that LBC, as per the ESCROW AGREEMENT, shall arrange for the settlement funds to be deposited to ESCROW AGENT's escrow account within three (3) business days of receipt by LBC or ESCROW AGENT of SELLING POLICY OWNER'S signed documents necessary to effect the transfer of the POLICY to LBC, its assigns or to the ESCROW AGENT.

SELLING POLICY OWNER has the right to rescind this PURCHASE AGREEMENT

88-PA-Weller, M-92551064                    Page 5 of 7                    THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.825.1000
212.643.1190
212.643.1190 FAX
WWW.LBCAGSHEFTIX.COM

before the earlier of thirty calendar days after the date when this PURCHASE AGREEMENT is executed by all parties or fifteen calendar days after the receipt of the settlement proceeds by the SELLING POLICY OWNER, provided that, within the rescission period SELLING POLICY OWNER advises LBC of SELLING POLICY OWNER'S desire to rescind and refunds LBC the settlement proceeds and any premiums, loans and loan interest. LBC's rights and interest in the POLICY will terminate upon LBC's timely receipt of such payment.

Should INSURED die prior to the end of the rescission period, it shall be deemed that SELLING POLICY OWNER has rescinded this PURCHASE AGREEMENT if repayment of all settlement proceeds and, if applicable, any premiums, loans and loan interest to LBC is made within forty-five days after the end of the rescission period.

SELLING POLICY OWNER hereby acknowledges that SELLING POLICY OWNER has been given the opportunity to review this PURCHASE AGREEMENT with independent counsel of SELLING POLICY OWNER'S choosing and is entering into this PURCHASE AGREEMENT freely and voluntarily, without constraint and without anyone exerting any influence of any kind over SELLING POLICY OWNER.

SELLING POLICY OWNER hereby acknowledges that SELLING POLICY OWNER consents to this PURCHASE AGREEMENT, has a full and complete understanding of this PURCHASE AGREEMENT and the benefits of the POLICY, has released INSURED's medical records to LBC, and has consulted with any such persons as SELLING POLICY OWNER shall have deemed appropriate prior to entering into this PURCHASE AGREEMENT.

This PURCHASE AGREEMENT, together with SELLING POLICY OWNER's APPLICATION and ESCROW AGREEMENT, constitute the entire contract between LBC and OWNER.

This PURCHASE AGREEMENT shall be construed and enforced in accordance with the laws of the State of New York excluding any conflict-of-laws rule or principle that might refer the governance or the construction of this agreement to the law of another jurisdiction, and any litigation related to this PURCHASE AGREEMENT shall be brought in the State of New York.

ANY PERSON WHO KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE OR VIATICAL SETTLEMENT CONTRACT IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES OR CONFINEMENT IN PRISON.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

03-PA-Weller, M-92351064                    Page 4 of 7                    THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.805.3000
212.643.1250
212.643.1180 FAX
www.LEGACYBENEFITS.com

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____11_____ day of _____June_____, 200 7 .

SELLING POLICY OWNER: _____

STATE OF _____New Jersey_____ )
COUNTY OF _____Somerset_____ ) SS:

On this _____11_____ day of _____June_____, 200 07 , before me came _____
_____Christopher T. Daly – CFO/VP_____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____4/21/2010_____

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010


IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____11_____ day of _____June_____, 200 7 .

SELLING POLICY OWNER: _____

STATE OF _____New Jersey_____ )
COUNTY OF _____Somerset_____ ) SS:

On this _____11_____ day of _____June_____, 200 7 , before me came _____
_____Marc S. Feaster – CEO/Pres._____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____4/21/2010_____

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

08-PA-Weller, M-92251084                    Page 5 of 7

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 6320
NEW YORK, NY 10118
800.895.1000
212.643.1190
212.643.1180 FAX
WWW.EMPACEMGMT.COM

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____ day of _____, 200___.

SELLING POLICY OWNER: _____

STATE OF _____ )
                                   ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____
_____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____


IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this

_____ day of _____, 200___.

INSURED: _____

STATE OF _____ )
                                   ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____
_____ to me known to be the individual described
herein and who executed the foregoing instrument, and he duly acknowledged to me that
he executed the same.

Notary Public _____

My Commission Expires _____

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 6320
NEW YORK, NY 10118
800.873.1300
212.643.1390
212.643.1350 FAX
WWW.LEGACYBENEFITS.COM

LEGACY BENEFITS CORPORATION

By: _____    _____
     Name                         Title

     _____
     Date

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
800.875.1000
212.643.1390
212.643.1180 FAX
WWW.LEGACYBENEFITS.COM

Exhibit B

**TRANSAMERICA LIFE COMPANIES**

## Assignment To Transfer Ownership
### for Life Insurance Policies
This form cannot be used for Annuity Plans or Contracts
(This form does not change the beneficiary of the Policy)



☐ Transamerica Occidental Life Insurance Company
P.O. Box 419521
Kansas City, MO 64141-6521

☐ Transamerica Assurance Company
P.O. Box 30833
Los Angeles, CA 90030

☐ Transamerica Life Insurance and Annuity Company
P.O. Box 419521
Kansas City, MO 64141-6521

The Policy of Insurance is issued or entered by one of the companies shown above, herein called the "Company"

**Policy Number:** 9255 1064     **Insured's Name:** Melanie A. Weller

| New Owner's Name: Legacy Benefits Corporation | The recorded designation form will be mailed to the address shown at the left, unless otherwise indicated below and initialed by the owner. |
| Address 350 Fifth Avenue Suite #320 | Return Owner's Copy to: _____ Owner's Initials _____ |
| City New York   State NY   Zip 10118 | ☐ General Agency/GA Code _____ ☐ Fax to: ( ) |

**THIS FORM WILL NOT BE RECORDED IF MODIFIED UNLESS APPROVED BY THE COMPANY'S ADMINISTRATIVE OFFICES**

☒ For good and sufficient consideration,    ☐ As a gift for love and affection with no valuable consideration,
all rights, title and interest of the undersigned in the Policy is hereby assigned for the purpose of transferring ownership to:

NAME OF NEW OWNER: Legacy Benefits Corporation    13-3233785    New Owner's Social Security No/Tax ID No.

TRUSTEE (S) NAME IF TRUST OWNER: N/A

ADDRESS OF NEW OWNER: 350 Fifth Avenue Suite 9320   New York   NY   10118
   Address     City     State    Zip

The new Owner is:   ☐ Individual   ☒ Corporation   ☐ Partnership   ☐ Trust: ___(indicate date)___   ☐ Other ___(specify)___

NAME OF CONTINGENT OWNER (Optional): N/A    Contingent Owner's Social Security No/Tax ID No.

TRUSTEE (S) NAME IF TRUST CONTINGENT OWNER: N/A

ADDRESS OF CONTINGENT OWNER:
   Address     City     State    Zip

The Contingent Owner is:   ☐ Individual   ☐ Corporation   ☐ Partnership   ☐ Trust: ___(indicate date)___   ☐ Other ___(specify)___

Before the death of the Insured, the New Owner of the Policy alone shall be entitled to all rights granted by the Policy or allowed by the Company under the Policy, including the right to assign the Policy and the right to transfer ownership thereby revoking any prior designation of a Contingent Owner. If the New Owner is a Partnership, all rights of the Owner belong to the Partnership as constituted at the time a right is exercised. This Assignment revokes any previous designations of Contingent Owner for the Policy, regardless of whether a Contingent Owner is designated on this Assignment. If there is a designation for a New Contingent Owner, then if the Owner, or a Contingent Owner after becoming Owner, predeceases the Insured, the next successive living Contingent Owner designated shall be the Owner of the Policy. If there is no surviving Contingent Owner, the estate of the deceased Owner (or the estate of a Contingent Owner who became the Owner) shall own the Policy.

Beneficiary Not Changed: This Assignment does not change the beneficiary of the Policy. Unless the right to change the beneficiary is specifically exercised by the New Owner, the beneficiary of the Policy shall be the same as the beneficiary of record at the time of this Assignment.

The Company may rely solely upon the signature of the Owner under this Assignment for any receipt, release, waiver, transfer or other instruments, to whomsoever made. The validity of this Assignment is hereby guaranteed by the undersigned. The signature to this Assignment is a warranty that the undersigned is legally capable of executing this Assignment and that no proceedings in insolvency or bankruptcy have been instituted by or against the undersigned.

**ASSIGNMENT BY:** (Signature Requirements on Reverse Side)

DATE SIGNED: 07-17-07      ViaSource Funding Group, LLC
      Print Current Owner/Assignor's Complete Name

(732)280-8500      22-3649062
Current Owner's Daytime Telephone Number    Current Owner's Social Security Number/Tax ID Number   Christoper T Daly - CFO/VP

X _____    _____ CFO/VP _____   ViaSource Funding Group, LLC
   Witness Signature       Current Owner's Signature (include Title, if Business or Trust)

x166 Allen Road, Bernard Township, NJ 07920   _____ CEO/Pres. _____ ViaSource Funding Group, LLC
   Address of Witness       Current Owner's Signature (include Title, if Business or Trust)

| This Assignment has been recorded at the Company. The Company assumes no legal responsibility for the sufficiency or validity of the Assignment. |
| Date recorded: _____   by: _____ |

**TRANSFER OF OWNERSHIP**    TOA 304 MED. 9699

_John Garvey_   John Garvey - Duly Authorized Signatory    07/18/07
Current Collateral/Assignee - General Electric Capital Corporation    Date

**TRANSAMERICA LIFE COMPANIES**

**Beneficiary Designation**
for Life Insurance Policies

☐ Transamerica Occidental Life Insurance Company
P.O. Box 412121
Kansas City, MO 64141-6521

☐ Transamerica Assurance Company
P.O. Box 38852
Los Angeles, CA 90030

☐ Transamerica Life Insurance & Annuity Company
P.O. Box 412121
Kansas City, MO 64141-6521

The Policy of Insurance is issued or assumed by one of the companies shown above, herein called the "Company"

**Policy Number:** 9255 10 64          **Insured's Name:** Melanie A. Weller

| | |
|---|---|
| **Owner's Name** ViaSource Funding Group LLC<br>**Address** 106 Allen Road<br>**City** Bernards Township **State** NJ **Zip** 07920 | The recorded designation form will be mailed to the address shown at the left, unless otherwise indicated below and initialed by the owner.<br>**Return Owner's Copy to:**<br>☐ General Agency/GA Code _____  **Owner's Initials**<br>☐ Fax to: ( ) _____ |

This Beneficiary Designation cancels all prior Beneficiary Designations and settlement agreements for the policy, identified by the number above, herein called the Policy. Please see instructions, signature requirements, special provisions and sample Beneficiary Designations before completing this Form. The Policy's Death Benefit shall be paid in one even to the designated beneficiary (ies), unless otherwise requested.

BENEFICIARY: Print full name, address and relationship to Insured. For multiple beneficiaries of unequal shares, indicate each beneficiary's share in parts or as a percentage of the Policy's Death Benefit next to their names. (See reverse for additional instructions)

Primary Beneficiary (ies): If more than one beneficiary is named, proceeds will be made in equal shares to the survivor(s), unless otherwise indicated.

| Name | Address | City, State, Zip Code | Relationship |
|---|---|---|---|
| Legacy Benefits Corporation | 350 Fifth Avenue Suite 4320 | New York NY 10118 | Benefactor (Financial) |
| | | | |

Contingent Beneficiary (ies): Receives proceeds at the death of the Insured only if all of the Primary Beneficiaries predecease the Insured.

| Name | Address | City, State, Zip Code | Relationship |
|---|---|---|---|
| N/A | | | |

Signatures (Signature requirements on Reverse Side)

DATE SIGNED: 07-16-07

(732) 980-8500
**Current Owner's Daytime Telephone Number**

X _____
**Witness Signature**

X 106 Allen Road, Bernards Township, NJ 07920
**Address of Witness**

ViaSource Funding Group, LLC
**Print Name of Corporate/Company/Trust Name**

22-3849582
**Current Owner's Social Security Number/Tax ID Number**

X _____ CFO/VP  ViaSource Funding Group, LLC
**Current Owner's Signature (Include Title, If Entity)**  **Print Name of Corporate Name**

X _____ CO/Member  ViaSource Funding Group, LLC
**Current Owner's Signature (Include Title, If Entity)**  **Print Name of Corporate Name**

| |
|---|
| This Beneficiary Designation has been recorded by the Company's Administrative Offices. The Company assumes no legal responsibility for the sufficiency or validity of this Beneficiary Designation.<br>Date recorded: _____  by: _____ |

_____ John Garvey — Duly Authorized Signature  6/18/07
**Current Collateral Assignee — General Electric Capital Corporation**  **Date**

BENEFICIARY DESIGNATION                    TCB 205 M ED. 0799

Index No. 603172/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LEGACY BENEFITS CORPORATION

Plaintiff

against

VIASOURCE FUNDING GROUP, LLC

Defendant

SUMMONS AND VERIFIED COMPLAINT

Lord, Bissell & Brook, LLP
885 Third Avenue 26th Floor
New York, NY 10022
212-947-4700

LEGACY BENEFITS CORPORATION
Plaintiff

GREGORY T. CASAMENTO
SARAH M. CHEN
LORD, BISSELL & BROOK LLP
Attorneys For Plaintiff
Legacy Benefits Corporation
885 Third Ave.
New York, NY 10022
212.947.4700
Fax 212-812-8385

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LEGACY BENEFITS CORPORATION                    :    Index No. 603172/07

                          Plaintiff,           :

            - against -                         :    **SUPPLEMENTAL
                                               :    VERIFICATION TO
                                               :    COMPLAINT**
VIASOURCE FUNDING GROUP, LLC,                  :

                          Defendant.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NEW YORK
COUNTY CLERK'S OFFICE
OCT - 2 2007
NOT COMPARED
WITH COPY FILE

## VERIFICATION

STATE OF NEW YORK    )
                         ) ss:

COUNTY OF NEW YORK  )

     ANAT ELIAV-PEIREZ, being duly sworn deposes and says:

     I am the General Counsel for Legacy Benefits Corporation, the Plaintiff in the above entitled action. I have read the foregoing complaint and know the contents thereof. The same is true to my knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
      ANAT ELIAV-PEIREZ

STATE OF NEW YORK    )
                         ) ss:

COUNTY OF NEW YORK  )

     SUBSCRIBED AND SWORN to before me, a Notary Public in and for said County and State, this 25th day of Sept. 2007

_____
Notary Public

SUSAN SHAPIRO
Notary Public, State of New York
No. 01SH6015061
Qualified in Kings County
Commission Expires Sept. 8, 2010

Index No. 603172/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LEGACY BENEFITS CORPORATION

                                    Plaintiff,

                            against,

VIASOURCE FUNDING GROUP, LLC

                                    Defendant.

SUPPLEMENTAL VERIFICATION TO COMPLAINT

Lord Bissell & Brook LLP
885 Third Avenue 26th Floor
New York, NY 10022
(212) 947-4700

Attorney for
LEGACY BENEFITS CORPORATION
Plaintiff

# EXHIBIT R

## TRANSAMERICA LIFE COMPANIES

Assignment To Transfer Ownership
for Life Insurance Policies

☐ Transamerica Occidental Life Insurance Company
☐ Transamerica Assurance Company
☐ Transamerica Life Insurance and Annuity Company

Policy Number: 92551064

Insured's Name: Melanie A. Weller

NAME OF NEW OWNER: Lowell Capital Group

ADDRESS OF NEW OWNER: 250 Fifth Avenue, Suite 8D2, New York, NY 10118

NAME OF CONTINGENT OWNER

ADDRESS OF CONTINGENT OWNER

ASSIGNMENT BY: WuSource Funding Group, LLC

22-3846982

468 Allen Road, Bernards Township, NJ 07920

TRANSFER OF OWNERSHIP — Only Individual Signatures

DATE SIGNED: 03/12/07

---

## TRANSAMERICA LIFE COMPANIES

Assignment To Transfer Ownership
for Life Insurance Policies

☐ Transamerica Occidental Life Insurance Company
☐ Transamerica Assurance Company
☐ Transamerica Life Insurance and Annuity Company

Policy Number: 92551064

Insured's Name: Melanie A. Weller

ASSIGNMENT BY: WuSource Funding Group, LLC

22-3846982

468 Allen Road, Bernards Township, NJ 07920

TRANSFER OF OWNERSHIP — Only Individual Signatures

DATE SIGNED: 5-10-07

# EXHIBIT S

TRANSAMERICA
LIFE COMPANIES

**Beneficiary Designation**
for Life Insurance Policies

☐ Transamerica Occidental Life Insurance Company
P.O. Box 42831
Kansas City, MO 64141-6531

☐ Transamerica Assurance Company
P.O. Box 42831
Los Angeles, CA 90060

This Policy of Insurance is issued or assumed by one of the companies shown, herein called the "Company"

Insured's Name: Melanie A. Weller

Policy Number: 92SS10644

Owner's Name: Via Source Funding Group LLC

Address: 186 A Allen Road

City: Bernards Township   State: NJ   Zip: 07920

Legacy Benefits Corporation

350 Fifth Avenue
Suite 4320   New York, NY 10118

Signature (Witness to whomever is Responsible)

DATE SIGNED: 07-16-07
(792)380-9500

186 Allen Road, Bernards Township, NJ 07920

John George, Via Source of Funding   6/18/07

BENEFICIARY DESIGNATION

---

TRANSAMERICA
LIFE COMPANIES

**Beneficiary Designation**
for Life Insurance Policies

☐ Transamerica Occidental Life Insurance Company

☐ Transamerica Assurance Company

Insured's Name: Melanie A. Weller

Policy Number: 92SS10644

Signature (Witness to whomever is Responsible)

DATE SIGNED: 5-16-07
(792)380-9500

186 Allen Road, Bernards Township, NJ 07920

Via Source Funding Group, LLC

John George, Via Source of Funding   6/18/07

BENEFICIARY DESIGNATION

# EXHIBIT T

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this ___ day of _____, 200 7.

SELLING POLICY OWNER: _____

STATE OF _New Jersey_ } SS:
COUNTY OF _Somerset_ }

On this ___ day of _June_, 200 7, before me came _Christopher Tilley - Oro VP_ to me known to be the individual described herein and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires __4/21/2010__

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

---

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this ___ day of _____, 200 7.

SELLING POLICY OWNER: _____

STATE OF _New Jersey_ } SS:
COUNTY OF _Somerset_ }

On this ___ day of _June_, 200 7, before me came _Michael E. Fester - Solutions_ to me known to be the individual described herein and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires __4/21/2010__

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

---

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this ___ day of _____, 200 7.

SELLING POLICY OWNER: _____

STATE OF _New Jersey_ } SS:
COUNTY OF _Somerset_ }

On this ___ day of _June_, 200 7, before me came _Christopher Tilley - Oro VP_ to me known to be the individual described herein and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires __4/21/2010__

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

---

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this ___ day of _____, 200 7.

SELLING POLICY OWNER: _____

STATE OF _New Jersey_ } SS:
COUNTY OF _Somerset_ }

On this ___ day of _June_, 200 7, before me came _____ to me known to be the individual described herein and who executed the foregoing instrument, and he duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires __4/21/2010__

SONIA LYNN AYERS
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/21/2010

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this _____

_____ day of _____, 200___

SELLING POLICY OWNER: _____

STATE OF _____ )
                      ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____ to me known to be the individual described herein and who executed the foregoing instrument, and is duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires _____

---

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this _____

_____ day of _____, 200___

INSURED: _____

STATE OF _____ )
                      ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____ to me known to be the individual described herein and who executed the foregoing instrument, and is duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires _____

Part 47

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
212.273.1000
212.643.1388
212.643.1389 FAX
EMAIL@COMPANY.COM

---

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this _____

_____ day of _____, 200___

SELLING POLICY OWNER: _____

STATE OF _____ )
                      ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____ to me known to be the individual described herein and who executed the foregoing instrument, and is duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires _____

---

IN WITNESS WHEREOF, we have signed this PURCHASE AGREEMENT this _____

_____ day of _____, 200___

INSURED: _____

STATE OF _____ )
                      ) SS:
COUNTY OF _____ )

On this _____ day of _____, 200___, before me came _____ to me known to be the individual described herein and who executed the foregoing instrument, and is duly acknowledged to me that he executed the same.

Notary Public _____

My Commission Expires _____

Part 47

THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
212.273.1000
212.643.1388
212.643.1389 FAX
EMAIL@COMPANY.COM

LEGACY BENEFITS CORPORATION

By: 

Name

Title

Date

LEGACY BENEFITS CORPORATION

By:

Name

Title

Date



THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
NEW YORK, NY 10118
212.643.3000
212.643.3390
MICHAEL@LEGACYBENEFITS.COM

Page 7 of 7

650 A/ Phila, M #231984



THE EMPIRE STATE BUILDING
350 FIFTH AVENUE
SUITE 4320
New York, NY 10118
212.643.3000
212.643.3393 FAX
MICHAEL@LEGACYBENEFITS.COM

Page 7 of 7

650 A/ Phila, M #231984