UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10 4 10
```

GREENWICH LIFE SETTLEMENTS,
INC., and GREENWICH SETTLEMENTS
MASTER TRUST,

                Plaintiffs,

 - against -

VIASOURCE FUNDING GROUP, LLC,

                Defendant.

**OPINION AND ORDER**

08 Civ. 3062  (PKL)


**APPEARANCES**

OTTERBOURG, STEINDLER, HOUSTON & ROSEN
Richard Gerard Haddad
230 Park Avenue
New York, NY 10169

Attorney for Plaintiffs


KELLEHER & DUNNE LLP
John Walter Dunne
17 Battery Place, 11th Fl.
New York, NY 10004

Attorney for Defendant

**LEISURE**, **District Judge**:

This is a diversity action for breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with contract, tortious interference with business relations, and unjust enrichment. Plaintiffs Greenwich Life Settlements, Inc. ("Greenwich Life") and Greenwich Settlements Master Trust ("Greenwich Trust") (collectively referred to in the singular as "Greenwich") bring this action against defendant, ViaSource Funding Group, LLC ("ViaSource"), as purported third-party beneficiaries to a life insurance contract purchased from ViaSource by non-party Legacy Benefits Corp. ("Legacy") for the ultimate benefit of Greenwich. ViaSource moves to dismiss Greenwich's Corrected Amended Complaint on grounds of res judicata and failure to join an indispensable party. Alternatively, ViaSource moves the Court to transfer this case to the United States District Court for the District of New Jersey. For the reasons stated below, ViaSource's motion to dismiss this action on res judicata grounds is DENIED, ViaSource's motion to dismiss this action for failure to join an indispensable party is DENIED, and ViaSource's motion to transfer venue is DENIED.

## BACKGROUND

This case involves a sale of a life insurance policy gone awry.  Plaintiff, a purported third-party beneficiary, contends that it was damaged by defendant's alleged breach of an agreement to sell a life insurance policy to a non-party that had assigned to plaintiff its rights under the policy.

## I. Viatical or Life Settlement Industry

Greenwich and ViaSource are in the business of viatical or life settlements.  A viatical settlement transaction is one in which a terminally ill or elderly life insurance policyholder (the "viator"), sells the face value of his or her life insurance policy at a discounted price based upon the individual's life expectancy.  (See Corrected Am. Compl. ("Compl.") ¶ 10.)  The purchaser pays a lump sum to the viator and makes premium payments to keep the policy in force in exchange for becoming the owner and beneficiary of the policy upon the viator's death.  (Id.)  Plaintiff Greenwich Life, a Delaware corporation with a principal place of business in Greenwich, Connecticut, invests in the life settlement market. (Id. ¶ 4.)  Plaintiff Greenwich Trust, a Delaware Trust owned by Greenwich Life, "receive[s], on behalf of Greenwich Life, rights, title, and interest in in-force life insurance policies purchased in the life settlement market."  (Id. ¶ 5.)

3

Defendant ViaSource, a limited liability company organized in New Jersey and having its principal place of business in Bernard Township, New Jersey, also invests in the life settlement market.  (Id. ¶ 6; see also Verified Answer & Countercl. to Corrected Am. Compl. ("Answer") ¶¶ 6, 85.) ViaSource is registered in New York State as a foreign limited liability company authorized to conduct business in New York and does in fact conduct business in New York County.  (See Compl. ¶ 6; Answer ¶ 6.)  All of the members of ViaSource are citizens of New York, New Jersey, or Pennsylvania and neither ViaSource nor any of its members are citizens of Delaware or Connecticut. (See Compl. ¶ 7; Answer ¶ 7.)

It is common for an investor such as ViaSource, who has purchased a life insurance policy through a viatical settlement, to re-sell the policy in the secondary market.  (Compl. ¶ 11.) The purchase of a life insurance policy in the secondary market is often transacted through a "provider company," which acts as an intermediary representing the interests of the purchasing party and earns a fee or commission paid by the purchasing party when the transaction closes.  (Id. ¶ 12.)  In this case, non-party Legacy, a corporation organized and having its principal place of business in New York, acted as a provider and Greenwich acted as a financing entity.  (Id.; see also Answer Ex. F ¶ 4.)

The purchase and sale of a life insurance policy in the secondary market involves several steps.  After a provider (Legacy) and seller (ViaSource) enter into a purchase agreement, the financing entity (Greenwich) places the acquisition funds in escrow.  (Id. ¶ 13.)  The seller (ViaSource) executes forms to change the ownership and beneficiary designation of the policy in favor of the provider (Legacy).  (Id.)  Then the provider (Legacy) executes another set of forms to change the ownership and beneficiary designation in favor of the financing entity (Greenwich).  (Id.)  Both sets of forms are sent to the insurance company that issued the life insurance policy to record the change in designation.  (Id.)  Once the change is recorded, the financing entity (Greenwich) and provider (Legacy) instruct the escrow agent to release the acquisition funds to the seller (ViaSource).  (Id.)  As the new owner of the policy, the financing entity (Greenwich) continues to make premium payments to the insurer, and upon the viator's death, collects the policy's death benefit.  (Id.)

## II.  The Transaction At Issue

The life insurance policy at issue was purchased in November 1993 by Frozen Foods Express Industries, Inc. ("Frozen Foods"), insuring the life of Melanie Weller (the "Weller Policy").  (Id. ¶ 14.)  Ms. Weller and her husband were majority

shareholders of Frozen Foods and the Weller Policy was to be used as part of a stock redemption plan in the event of Ms. Weller's death.  (Id.)  ViaSource subsequently purchased the Weller Policy in a life settlement transaction and became entitled to receive the Policy's death benefit upon Ms. Weller's death.  (See id.; Answer ¶ 14.)

On January 26, 2007, Greenwich Life and Legacy entered into a Life Settlement Origination and Financing Agreement ("Origination Agreement"), in which "Legacy agreed to source, purchase, arrange and effect the purchase of in-force life insurance policies on behalf of Greenwich Life, or such special purpose entities" that Greenwich Life might form to finance such purchases.  (Id. ¶ 15.)  Pursuant to the Origination Agreement, Greenwich Life, or its special purpose entity, "would become the sole owner and beneficiary of the in-force life insurance policy purchased by Legacy."  (Id.)  In return for its services under the Origination Agreement, Legacy was entitled to receive a commission for each policy purchased on behalf of Greenwich Life.  (Id. ¶ 16.)

On June 11, 2007, ViaSource signed a contract to sell the Weller Policy, which had a death benefit of approximately $5,200,000, to Legacy for $3,951,662 (the "Purchase Agreement"). (Id. ¶¶ 17-18 & Ex. A at 5.)  The parties dispute whether the Purchase Agreement ever came into force.  Greenwich contends

that the Purchase Agreement is valid and binding, while
ViaSource contends that it is invalid because ViaSource and
Legacy never agreed upon its terms and Legacy never signed and
delivered to ViaSource the Purchase Agreement and other
necessary documents.  (Answer ¶¶ 17, 90).  Greenwich pleads that
Legacy entered into the Purchase Agreement for the benefit of
Greenwich, who was expected to earn a profit equal to the
difference between the $3,951,662 purchase price and the
$5,200,000 death benefit, less the commission to Legacy, any
premiums paid between the close of the transaction and Ms.
Weller's death, and transaction costs.  (Compl. ¶ 19.)
Greenwich further pleads that ViaSource executed change of
ownership forms in favor of Legacy and Legacy executed change of
ownership forms in favor of Greenwich Trust.  (Id. ¶ 20.)
Thereafter, Greenwich transferred $3,951,662 to its escrow
agent, Wells Fargo Bank Northwest, N.A., to fund Legacy's
purchase of the Weller Policy.  (Id. ¶ 21.)

On July 25, 2007, Legacy and Greenwich executed an
Assignment and Assumption Agreement, whereby "Legacy agreed to
sell, transfer, assign and convey to Greenwich Trust, all of
Legacy's rights, title and interest in the [Weller] Policy
obtained by it pursuant to the Purchase Agreement."  (Id. ¶ 22.)
On or about August 1, 2007, the two sets of change of ownership
forms were sent to the insurer for processing and recording.

7

(Id. ¶ 23.)  On August 9, 2007, upon contacting the insurer to confirm that the change of ownership forms were received and processed, the insurer notified Legacy that ViaSource had instructed the insurer to disregard any change of ownership forms submitted after July 31, 2007.  (Id. ¶ 24.)

Greenwich alleges that ViaSource never informed it or Legacy that ViaSource instructed the insurer to disregard the change of ownership forms received after July 31, 2007, and never provided notice to Legacy or Greenwich of any rescission of the sale pursuant to ViaSource's limited right to rescind under the terms of the Purchase Agreement.  (Id. ¶¶ 25-26.) Greenwich contends that ViaSource unilaterally disrupted the sale after learning that Ms. Weller's health had deteriorated so that ViaSource could realize a greater profit by receiving the expected death benefit than by consummating the sale.  (Id. ¶ 27.)  Ms. Weller passed away on September 21, 2007.  (Id. ¶ 30.)

Greenwich states that ViaSource knew that providers such as Legacy purchased life insurance policies on behalf of third-party beneficiary financing entities such as Greenwich and was specifically aware that Legacy was doing so here.  (Id. ¶ 29.) "Greenwich was ready, willing and able to complete the purchase of the [Weller] Policy, and . . . provide[d] the purchase funds to the Escrow Agent in accordance with the Purchase Agreement." (Id. ¶ 28.)  When ViaSource purportedly breached the Purchase

Agreement, Greenwich states that ViaSource knew "that it would inflict economic damage upon Greenwich or whatever third party Legacy was purchasing the [Weller] Policy on behalf of."  (Id. ¶ 29.)


## III. Prior Litigation

On September 13, 2007, ViaSource filed an action in the Superior Court of New Jersey, Law Division, Monmouth County, against Legacy, seeking a declaration that there was no contract between ViaSource and Legacy for the sale of the Weller Policy because Legacy never signed the necessary documents and never provided those signed documents to ViaSource.  (See Answer Ex. G ¶ 3.)  Approximately one week later, on September 21, 2007, Legacy filed an action in New York State Supreme Court, New York County, against ViaSource for breach of contract in the amount of $151,838 and punitive damages, claiming that "ViaSource entered into a valid and binding contract with Legacy" and breached that contract "by willfully instructing the Insurer to obstruct performance."  (Id. Ex. F ¶¶ 21-24.)  Approximately four months later, on or about January 25, 2008, Legacy and ViaSource reached a confidential settlement.  (Id. ¶ 103.)  By Stipulation of Discontinuance filed December 3, 2007, Legacy discontinued with prejudice its claims against ViaSource in the New York state action.  (Id. ¶ 104 & Ex. H.)  By Stipulation of

Dismissal With Prejudice filed January 29, 2008, ViaSource

dismissed its claims against Legacy in the New Jersey state

action.  (Id. ¶ 105 & Ex. I.)


**IV.   The Instant Litigation**

Greenwich initiated this action against ViaSource on

February 29, 2008, in New York State Supreme Court, New York

County.  On March 26, 2008, ViaSource removed the action to this

Court.  On April 8, 2008, ViaSource filed a Verified Answer.  On

June 17, 2008, Greenwich filed an Amended Complaint.  The next

day, Greenwich filed a Corrected Amended Complaint, asserting

claims against ViaSource for breach of contract, breach of the

covenant of good faith and fair dealing, tortious interference

with contract, tortious interference with business relations,

and unjust enrichment.  (See Compl. ¶¶ 32-60.)  On July 17,

2008, ViaSource answered Greenwich's Corrected Amended Complaint

and asserted two counterclaims against Greenwich for fraud.

(See Answer ¶¶ 87-109.)

On July 21, 2008, ViaSource filed a complaint against

Legacy in the Superior Court of New Jersey, Law Division,

Monmouth County—the same Court in which ViaSource brought an

action against Legacy in 2007, which was discontinued with

prejudice in light of the settlement between ViaSource and

Legacy.  (Certification of Michael D. Schottland, Esq. In Supp.

10

of Mot. to Dismiss Compl. & For Alternative Relief ("Schottland
Certif.") Ex. C.)  On January 31, 2009, ViaSource's July 2008
action against Legacy in the Superior Court of Monmouth County,
New Jersey, was dismissed without prejudice for "lack of
prosecution." (Supplemental Aff. of Richard G. Haddad in
Further Opp'n to Def.'s Mot. to Transfer Venue or Dismiss
("Haddad Suppl. Aff.") Ex. A.)

ViaSource now moves to dismiss this action on two grounds.
First, ViaSource contends that this action should be dismissed
on res judicata grounds because of ViaSource's and Legacy's
settlement and because of the dismissals with prejudice of the
previous state court actions between ViaSource and Legacy.
Second, ViaSource moves to dismiss under Federal Rule of Civil
Procedure ("Rule") 12(b)(7) for failure to join Legacy, an
allegedly indispensable party under Rule 19.  Alternatively, if
the Court does not dismiss this action, ViaSource requests that
the Court transfer it to the United States District Court for
the District of New Jersey.

## DISCUSSION

The Court first addresses whether the instant action is
barred by res judicata.  Second, the Court addresses whether
this action should be dismissed for failure to join an

11

indispensable party.  Finally, the Court determines whether this
case should be transferred to the District of New Jersey.

## I. This Action Is Not Barred by Res Judicata

ViaSource contends that "Greenwich's claims are barred by
res judicata and the finality of the dismissals in the courts of
New York and New Jersey," and that this Court must give full
faith and credit to those dismissed actions and dismiss the
instant lawsuit. (Mem. of Law on Behalf of Def., ViaSource, In
Supp. of Mot. to Dismiss Compl. & For Alternative Relief
("Def.'s Mem.") 4.)  ViaSource contends that because "the claims
and issues in the prior actions are the same as those broached
by the [instant] Greenwich action[,] . . . Greenwich, the
alleged privy of Legacy, cannot revive those dismissed claims."
(Id. 5-6.)  ViaSource further maintains that "Greenwich's
purported assignment from Legacy does not impair the
effectiveness of the dismissals . . . [because] an assignment is
ineffective unless and until the obligor is notified of the
assignment" and, because ViaSource never was notified of the
assignment of the Weller Policy from Legacy to Greenwich,
Greenwich is bound by "Legacy's release of claims."  (Id. 7-8.)
Greenwich responds that "there can be no res judicata, because
neither Greenwich, nor Greenwich's claim, was before the Court
in the prior litigation between Legacy and ViaSource."  (Mem. of

Law of Greenwich in Opp'n to Def. ViaSource's Mot. to Transfer
Venue or to Dismiss ("Pl.'s Opp'n") 20.)


A. Res Judicata Standard

"Dismissal based on res judicata is appropriate where it is
clear from the face of the complaint and from matters of which
the Court takes judicial notice that plaintiffs' claims are
barred."  Tokio Marine & Nichido Fire Ins. Co., Ltd. v. Canter,
No. 07 Civ. 5599, 2009 WL 2461048, at *4 (S.D.N.Y. Aug. 11,
2009) (Leisure, J.); see also Kramer v. Time Warner Inc., 937
F.2d 767, 774 (2d Cir. 1991) (Winter, J.) ("[C]ourts routinely
take judicial notice of documents filed in other courts, . . .
not for the truth of the matters asserted in the other
litigation, but rather to establish the fact of such litigation
and related filings.").  State judicial proceedings "'have the
same full faith and credit in every court within the United
States . . . as they have by law or usage in the courts of such
State . . . from which they are taken.'"  Marrese v. Am. Acad.
of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S. Ct. 1327, 84
L. Ed. 2d 274 (1985) (quoting 28 U.S.C. § 1738).  "To determine
the effect of a state court judgment, federal courts, including
those sitting in diversity, are required to apply the preclusion
law of the rendering state."  Conopco, Inc. v. Roll Int'l, 231
F.3d 82, 87 (2d Cir. 2000) (McLaughlin, J.); see also Migra v.

Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984).

In this case, the rendering states are New York and New Jersey. The federal, New York, and New Jersey doctrines of res judicata are virtually identical. See In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008) ("Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" (citation omitted)); Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) ("Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that '[1] final judgment on the merits of an action [2] precludes the parties or their privies [3] from relitigating issues that were or could have been raised in that action.'" (citation omitted)). Therefore, the Court applies federal law and need not "undertake a separate analysis of the preclusive effect of the [New York] and [New Jersey] State Actions." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (McLaughlin, J.) (analyzing res judicata claim under federal law where there was no dispute "that there is no discernible difference between federal and New York law concerning res judicata").

Under the federal rules of res judicata, a subsequent lawsuit will be barred where the defendant can show:  (1) an adjudication on the merits in the previous action; (2) that the previous lawsuit involved the plaintiffs, or those in privity with them; and (3) that the claims asserted in the subsequent suit were raised, or could have been raised, in the prior proceeding.  See Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980); Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000); Torres v. City of N.Y., 154 F. Supp. 2d 814, 817 (S.D.N.Y. 2001).  With respect to the first prong, a settlement that results in a dismissal with prejudice of a lawsuit operates as an adjudication on the merits.  See Marvel Characters, 310 F.3d at 287 ("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes."); Harris v. Beth Isr. Med. Ctr., No. 08 Civ. 11029, 2009 WL 612498, at *6 (S.D.N.Y. Mar. 4, 2009) ("Under both federal and New York law, any dismissal of an action 'with prejudice,' including a stipulation of dismissal of discontinuance with prejudice, is a final judgment for res judicata purposes."), aff'd, 367 Fed. App'x 184 (2d Cir. 2010). "The preclusive effect of a settlement is measured by the intent of the parties to the settlement."  Greenberg v. Bd. of

15

Governors of Fed. Reserve Sys., 968 F.2d 164, 168 (2d Cir. 1992).

With respect to the second prong, privity exists and "a party will be bound by the previous judgment if his 'interests were adequately represented by another vested with the authority of representation.'" Monahan, 214 F.3d at 285 (quoting Alpert's Newspaper Delivery, Inc. v. N.Y. Times Co., 876 F.2d 266, 270 (2d Cir. 1989)). "Privity will be found where a party's interest in litigation is virtually identical to an interest it had in a prior litigation, where it was not actually named but can be said to have had 'virtual representation.'" Polargrid LLC v. Videsh Sanchar Nigam Ltd., No. 04 CV 9578, 2006 WL 2266351, at *10 (S.D.N.Y. Aug. 7, 2006); see also Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995) (Winter, J.) ("Res judicata may . . . preclude claims by parties who were not involved in the earlier lawsuit . . . only when the precluded party's interests have been represented in a previous lawsuit."; "Res judicata may bar non-parties to earlier litigation not only when there was a formal arrangement for representation in . . . the earlier action but also when the interests involved in the prior litigation are virtually identical to those in later litigation."); Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir. 1977) ("[O]ne whose interests were adequately represented by another vested with the

16

authority of representation is bound by the judgment, although not formally a party to the litigation."). "There is no bright line rule as to whether privity exists for res judicata purposes. . . . The core question is whether the parties' incentives to pursue [the] lawsuit were substantially similar." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 701 F. Supp. 2d 568, 586 n.11 (S.D.N.Y. 2010) (citations and internal quotation marks omitted). With respect to the third and final prong of res judicata, in considering whether claims asserted in a subsequent suit were, or could have been, raised in a prior proceeding, courts look to "'whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'" Monahan, 214 F.3d at 289 (quoting NLRB v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983) (Kearse, J.)).

## B. Application

The Court holds that the New York and New Jersey state actions, which were dismissed with prejudice, do not bar the instant litigation. As a threshold matter, ViaSource's motion to dismiss on res judicata grounds is not procedurally defective, as Greenwich contends. (See Pl.'s Opp'n 19-20 (arguing that ViaSource's motion to dismiss on res judicata

grounds effectively is a flawed Rule 56 summary judgment motion because discovery is not complete and there is no 56.1 statement).) "[T]he defense of res judicata . . . may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment." Sassower v. Abrams, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) (Leisure, J.). Here, where ViaSource preserved its res judicata defense by including it as an affirmative defense in its Verified Answer and Counterclaim to Greenwich's Corrected Amended Complaint, raising it on a motion to dismiss is proper. (See Answer ¶ 78 ("The plaintiffs' claims, if any, are barred by res judicata and collateral estoppel.").)

Although procedurally proper, ViaSource's res judicata defense fails on the merits because ViaSource cannot establish the second prong of res judicata—that the previous lawsuits involved Greenwich or someone in privity with Greenwich such that the prior state court dismissals with prejudice bar the claims that Greenwich now brings against ViaSource. Monahan, 214 F.3d at 285. First, Greenwich was not a party to either the New York or New Jersey state action. Second, Greenwich is not in privity with Legacy, the plaintiff in the New York and New Jersey state actions, for res judicata purposes. ViaSource fails to demonstrate that Legacy's interests "in the prior litigation are virtually identical to" Greenwich's interests in

the instant litigation.  Chase Manhattan, 56 F.3d at 345.  In
its New York state action, Legacy alleged that "ViaSource
breached the Purchase Agreement by willfully instructing the
Insurer to obstruct performance of the Purchase Agreement" and
sought, solely on its own behalf, compensatory damages in the
amount of $151,838, punitive damages, and attorneys' fees.  (See
Answer Ex. F ¶¶ 20-28.)  Legacy's complaint did not mention any
third-party beneficiaries to the Purchase Agreement, including
Greenwich, nor did it state that it was representing an interest
in the Weller Policy other than its own.  Moreover, Greenwich
did not vest Legacy "'with the authority of representation'" in
Legacy's prior state actions.  Monahan, 214 F.3d at 285 (quoting
Alpert's Newspaper, 876 F.2d at 270).  In comparison to Legacy's
complaint, Greenwich now asserts a third-party beneficiary
claim, solely on its own behalf, for compensatory damages "not
less than $1,200,000" and punitive damages of $5,000,000 for
ViaSource's alleged breach of contract, breach of the covenant
of good faith and fair dealing, tortious interference with
contract, tortious interference with business relations, and
unjust enrichment.  (Compl. ¶¶ 32-60.)  Based on the pleadings,
Greenwich's interests are not "virtually identical" to Legacy's
interests in the New York state action, Chase Manhattan, 56 F.3d
at 345, and "the parties' incentives to pursue" each lawsuit are
not "substantially similar."  Mosdos, 701 F. Supp. 2d at 586

19

n.11 (citations and internal quotation marks omitted).
Therefore, Greenwich could not have been "'adequately
represented by'" Legacy in the prior state actions.  Monahan,
214 F.3d at 285 (quoting Alpert's Newspaper, 876 F.2d at 270).
For these reasons, ViaSource's motion to dismiss Greenwich's
claims on res judicata grounds is denied.

## II.  Legacy Is Not an Indispensable Party Under Rule 19

ViaSource moves, pursuant to Rule 12(b)(7), to dismiss the
Corrected Amended Complaint for failure to join a party under
Rule 19.  ViaSource contends that Legacy is a necessary and
indispensable party to the claims at issue here because Legacy
averred "that it was the sole purported owner of the [Weller]
Policy under its alleged agreement with ViaSource" and "Legacy
dealt with ViaSource, throughout, as if it were the sole party
in interest."  (Def.'s Mem. 10.)  ViaSource also contends that
dismissal is appropriate under Rule 19(c) because Greenwich
"breached its obligations to identify Legacy Benefits, and to
either join Legacy or justify non-joinder."  (Def.'s Mem. 10.)
Greenwich opposes ViaSource's Rule 12(b)(7) motion on the
grounds that it is procedurally improper, that full relief can
be awarded among the existing parties, and that Legacy's absence
"will not impair any of Legacy's interests" because Legacy "has
relinquished any claims it might have against ViaSource" through

the settlement and dismissals with prejudice of the prior state actions between Legacy and ViaSource.  (Pl.'s Opp'n 15-17.)

### A. Legal Standard Under Rule 19

The burden of demonstrating that a party is necessary rests with the moving party.  See Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 137 (E.D.N.Y. 2000); King v. Pine Plains Cent. Sch. Dist., 918 F. Supp. 772, 782 (S.D.N.Y. 1996).  Rule 19 "sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party."  Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000) (Sotomayor, J.); see also Bodner, 114 F. Supp. 2d at 137.  "First, the court must determine whether an absent party . . . qualifies as a 'necessary' party under Rule 19(a)."  Viacom, 212 F.3d at 724.  If a court determines that the criteria set forth in Rule 19(a) is met, it "must order" the absent party to be joined.  Fed. R. Civ. P. 19(a)(2).  Where joinder of that party is not feasible, the court must proceed to the second step and consider under Rule 19(b) "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Id. 19(b); see also Jota v. Texaco, Inc., 157 F.3d 153, 162 (2d Cir. 1998); Bodner, 114 F. Supp. 2d at 137.  "Only where the Court makes a finding that a party is necessary will it continue to the second inquiry . . . ."

Bodner, 114 F. Supp. 2d at 137; see also Temple v. Synthes Corp., Ltd., 498 U.S. 5, 8, 111 S. Ct. 315, 112 L. Ed. 2d 263 (1990) (per curium); Ryan v. Volpone Stamp Co., Inc., 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000).

Under Rule 19(a), an absent party is necessary to a litigation if (A) "the court cannot accord complete relief among existing parties," or (B) the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in [that party's] absence may" either "(i) as a practical matter impair or impede [the absent party's] ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1); see also Johnson v. Smithsonian Inst., 189 F.3d 180, 188 (2d Cir. 1999). "[T]he substantial risk of inconsistent obligations must be caused by the nonparty's absence in the case." Mastercard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 388 (2d Cir. 2006) (emphasis in original). "The possibility of different damage awards is not sufficiently 'inconsistent' to invoke the protection of the Rule." Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co., 09 Civ. 1431, 2009 WL 2135396, at *4 (S.D.N.Y. July 16, 2009) (citation and internal quotation marks omitted)).

B. Application

     As a threshold matter, the Court holds that ViaSource has

not waived its right to bring a motion to dismiss on grounds of

failure to join an indispensable party because it preserved this

objection by asserting it as an affirmative defense in its

Verified Answer to Greenwich's Corrected Amended Complaint.

(See Answer ¶ 64 ("The Complaint must be dismissed as Plaintiffs

failed to name all necessary parties."); see also Fed. R. Civ.

P. 12(h)(2)(A) (permitting failure to join a party to be raised

in a pleading).)

     For ViaSource to prevail on its motion to dismiss for

failure to join an indispensable party, it first must establish

that Legacy is a necessary party under Rule 19(a) and, if so,

that Legacy's joinder is infeasible.  ViaSource fails to meet

its burden of proving that Legacy is a necessary party under

Rule 19(a).  ViaSource does not demonstrate that "the court

cannot accord complete relief among existing parties."  Fed. R.

Civ. P. 19(a)(1)(A).  Greenwich, should it prevail, can obtain

complete relief from ViaSource.  Likewise, should ViaSource

prevail on its counterclaims for fraud, it can obtain full

relief from Greenwich.  (See Answer 18 & ¶ 109 (requesting

relief on its counterclaims for the "malicious and fraudulent

actions of Greenwich" in an amount "not less than $1,000,000").)

To the extent that Legacy has information relevant to this

action, it is discoverable through third-party discovery methods
and is insufficient to confer "necessary party" status on
Legacy.  See, e.g., S&S Mach. Corp. v. Gen. Motors Corp., No. 93
Civ. 3237, 1994 WL 529867, at *5 (S.D.N.Y. Sept. 28, 1994)
(declining to find a non-party necessary to the litigation where
pertinent information in the non-party's possession could be
uncovered through "ordinary discovery").

     ViaSource also fails to show that Legacy "claims an
interest relating to the subject of the action" such that
disposition of this action in Legacy's absence may impede
Legacy's ability to protect its interest.  Fed. R. Civ. P.
19(a)(1)(B).  To the contrary, ViaSource acknowledges that
Legacy's interest in the attempted sale of the Weller Policy was
resolved through the settlement and dismissals with prejudice of
its lawsuits with ViaSource.  (See Def.'s Mem. 7 ("Legacy's
claims under its purported contract were dismissed and
extinguished . . . in two courts.").)  ViaSource further fails
to demonstrate that it will be "subject to a substantial risk of
incurring double, multiple, or otherwise inconsistent
obligations" if Legacy is not joined in this action.  Fed. R.
Civ. P. 19(a)(1)(B); see also Yonofsky v. Wernick, 362 F. Supp.
1005, 1024 (S.D.N.Y. 1973) (stating that where a non-party has
no interest in the outcome of a matter, there cannot be a
"'substantial risk' that a party will incur multiple or

24

inconsistent obligations by virtue of the failure to join" that non-party).  ViaSource alleges that Legacy is a necessary party because it represented itself as the sole party in interest, never mentioned an assignment or a third-party beneficiary, and concealed Greenwich's interest in the Weller Policy. (Def.'s Mem. 10-11.)  While these arguments may be relevant to ViaSource's defense against Greenwich's third-party beneficiary claims, they do not satisfy the requirements of Rule 19(a). Because ViaSource has not demonstrated that Legacy is a necessary party under Rule 19(a), the Court need not address whether Legacy's joinder is feasible under Rule 19(b).

The Court also rejects ViaSource's argument that dismissal is appropriate under Rule 19(c) because Greenwich "breached its obligations to identify Legacy Benefits, and to either join Legacy or justify non-joinder." (Def.'s Mem. 10.)  Rule 19(c) requires a party "asserting a claim for relief" to state "(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person." Fed. R. Civ. P. 19(c).  "While failure to comply with Rule 19(c) may lead the court to dismiss [a] plaintiff's claims, a plaintiff who honestly believes that there are no outsiders who need to be joined will not be penalized." S&S Mach., 1994 WL 529867, at *4.  "Dismissal would only be warranted where a necessary party was hidden from the defendant,

preventing complete and fair adjudication." Id. at *6. In this case, dismissal is not warranted under Rule 19(c) because Greenwich did not hide Legacy's existence, but rather articulated its relationship with Legacy in paragraph three of its Corrected Amended Complaint, and discussed it in detail throughout the Complaint. (See generally Compl.)

        For these reasons, ViaSource's motion to dismiss Greenwich's claims for failure to join and indispensable party is denied.


### III. **Venue is Proper in the Southern District of New York**

    ViaSource moves to transfer venue to the District of New Jersey, should the Court not dismiss this action. ViaSource contends that venue lies in New Jersey, not New York, because: (1) Greenwich's claims involve wrongdoing in New Jersey that should be adjudicated in the New Jersey courts; (2) a subsequently-filed action by ViaSource against Legacy is pending in New Jersey state court; (3) the dismissals of the prior New York and New Jersey state actions voided the contract between Legacy and ViaSource, which contains a New York forum selection clause; (4) Legacy's failure to deliver the Purchase Agreement to ViaSource after Legacy signed it and Legacy's "fraudulent alteration" of certain documents renders void the Purchase Agreement and the forum selection clause therein; and (5) even

if the Purchase Agreement between Legacy and ViaSource were valid, it does not bind ViaSource to litigate disputes "with Greenwich in New York." (Def.'s Mem. 12-17 (emphasis in original).)  In opposition, Greenwich proffers several arguments for why venue lies in New York:  (1) ViaSource waived its improper venue argument; (2) ViaSource contracted to adjudicate any disputes in New York; (3) Greenwich's choice of forum must be given deference; (4) the claims at issue arose in New York and non-party witnesses are located in this state; and (5) New York's strong public policy militates in favor of adjudicating claims in New York where the parties so agree.  (Pl.'s Opp'n 3, 8, 15-16.)

     The Court need not resolve the validity of the Purchase Agreement and the forum selection clause therein at this stage of the litigation because, as discussed below, venue is proper in the Southern District of New York irrespective of the forum selection clause in the Purchase Agreement.

### A. Waiver of Defense of Improper Venue

     ViaSource preserved its improper venue defense by asserting it as an affirmative defense in its Verified Answer and Counterclaim to Greenwich's Corrected Amended Complaint.  (See Answer ¶ 72 ("The Complaint must be dismissed as . . . venue is improper."); see also Fed. R. Civ. P. 12(h)(1)(B) (permitting

27

defense of improper venue to be raised in a responsive pleading
or by motion).)   Thus, Greenwich's argument that ViaSource may
not seek to transfer venue is without merit.   The substantive
question, therefore, is whether ViaSource contracted to litigate
the instant dispute in New York and, if not, whether the
Southern District of New York nonetheless is a proper venue on
independent grounds.   The Court holds that even if the Purchase
Agreement, and the forum selection provision therein, is
unenforceable, venue in this District is proper under 28 U.S.C.
§ 1391 and 28 U.S.C. § 1404(a).


   B. Law Governing Motions to Transfer Venue

    "For the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any civil
action to any other district or division where it might have
been brought."   28 U.S.C. § 1404(a).   "Venue may be proper in
more than one district."   Arch Specialty Ins. Co. v. Entm't
Specialty Ins. Servs., Inc., No. 04 Civ. 1852, 2005 WL 696897,
at *7 (S.D.N.Y. Mar. 24, 2005); see also Bates v. C & S
Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992).   "For
purposes of venue," a corporate defendant "reside[s] in any
judicial district in which it is subject to personal

jurisdiction at the time the action is commenced."[1] 28 U.S.C. §
1391(c).

"The decision whether to transfer a case from one judicial
district to another is a two-part inquiry." Beckerman v.
Heiman, No. 05 Civ. 5234, 2006 WL 1663034, at *3 (S.D.N.Y. June
16, 2006); see also In re Nematron Corp. Sec. Litig., 30 F.
Supp. 2d 397, 400 (S.D.N.Y. 1998). "First, the court must
determine whether the case sought to be transferred could have
been brought in the proposed transferee court." Beckerman, 2006
WL 1663034, at *3; see also In re Nematron, 30 F. Supp. 2d at
400. "Second, the court must decide whether transfer is
warranted for the convenience of parties and witnesses, and in
the interest of justice." Beckerman, 2006 WL 1663034, at *3;
see also In re Nematron, 30 F. Supp. 2d at 400. Here, there is
no dispute that this action could have been brought in the
District of New Jersey because ViaSource, the only defendant in
this case, resides in New Jersey. See 28 U.S.C. § 1391(a)(1)
("A civil action wherein jurisdiction is founded only on
diversity of citizenship may . . . be brought only in (1) a
judicial district where any defendant resides, if all defendants

---

[1] Because ViaSource conducts business in New York County, (see Compl. ¶ 6;
Answer ¶ 6), it is subject to personal jurisdiction in the Southern District
of New York, which encompasses New York County. See N.Y. C.P.L.R. § 302(a)
("[A] court may exercise personal jurisdiction over any non-domiciliary . . .
who in person or through an agent: 1. transacts any business within the
state or contracts anywhere to supply goods or services in the state . . .
.").

reside in the same State . . . ."); Compl. ¶ 6; Answer ¶ 6.
Therefore, only the second part of the inquiry is at issue.

"A transfer should not be granted 'absent a clear cut and
convincing showing by defendant that the balance of convenience
weighs strongly in favor of the transferee court . . . .'"
Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962
(S.D.N.Y. 1995) (quoting Star Lines, Ltd. v. Puerto Rico Mar.
Shipping Auth., 442 F. Supp. 1201, 1207 (S.D.N.Y. 1978)).  The
burden is on the defendant, when it is the moving party, to make
a "clear and convincing showing that the balance of convenience
favors defendants['] choice" of venue.  Id.; see also Factors
Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978),
abrogated on other grounds by Pirone v. MacMillan, Inc., 894
F.2d 579 (2d Cir. 1990).  The following factors should be
considered in evaluating a motion to transfer venue:  (1) the
convenience of witnesses; (2) the availability of process to
compel the attendance of unwilling witnesses; (3) the
convenience of the parties; (4) the locus of operative facts;
(5) the location of relevant documents and relative ease of
access to sources of proof; (6) the relative means of the
parties; (7) the forum's familiarity with the governing law; (8)
the weight accorded the plaintiff's choice of forum; and (9)
trial efficiency and the interests of justice, based on the
totality of circumstances.  Elec. Workers Pension Fund, Local

103, I.B.E.W. v. Nuvelo, Inc., Nos. 07 Civ. 975, 07 Civ. 1229, 07 Civ. 1777, 07 Civ. 1953, 2007 WL 2068107, at *3 (S.D.N.Y. July 17, 2007).  "'The convenience of the witnesses and the parties are generally considered as the most important factors in a transfer application.'"  Id. (quoting D'Anton Jos, S.L. v. Doll Factory, Inc., 937 F. Supp. 320, 323 (S.D.N.Y. 1996)); see also Hubbell, 883 F. Supp. at 962 ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.").

### C. Application

    ViaSource has not shown clearly and convincingly that the District of New Jersey is a more convenient venue than the Southern District of New York.  See Hubbell, 883 F. Supp. at 962; Star Lines, 442 F. Supp. at 1207.  Nowhere does ViaSource discuss how litigating this action in the District Court of New Jersey would be more convenient to the parties and witnesses. ViaSource is the only party in this case that resides in New Jersey.  Legacy, a key witness in this case, is incorporated and maintains its principal place of business in New York.  (See Answer Ex. F ¶ 4.)  Also, ViaSource itself is present in this District, as it conducts business in New York County and at least one member of the limited liability company is a citizen of New York.  (See Compl. ¶¶ 6-7; Answer ¶¶ 6-7.)  ViaSource has

not proffered any information regarding any other potential
witnesses in this case.

ViaSource also fails to demonstrate that the locus of
operative facts took place in New Jersey, rather than New York,
or that the relevant documents are located in New Jersey.  See
Freeman v. Hoffmann-La Roche Inc., No. 06 Civ. 13497, 2007 WL
895282, at *2 (S.D.N.Y. Mar. 21, 2007) (granting motion to
transfer venue to the District of New Jersey where "substantial
operative facts and events took place in New Jersey," defendants
and one of two plaintiffs were New Jersey residents, and
"[d]efendants list several potential witnesses . . . who 'are
all resident in New Jersey.'" (citation omitted)).  ViaSource
does not allege that it does not have the means to travel from
New Jersey to New York, and mere inconvenience is insufficient
to warrant transfer.  See Arch Specialty, 2005 WL 696897, at *8
("Plaintiff's choice of forum should not be disturbed merely
because of the inconvenience of travel to Defendants or because
this lawsuit could have been brought in [another state].").

The remaining factors that the Court has considered
likewise do not merit transfer.  ViaSource relies on an action
that it brought against Legacy in New Jersey state court after
Greenwich filed the instant action in support of transferring
venue.  However, ViaSource's subsequent action, which was
brought in New Jersey state court rather than the District of

New Jersey, was dismissed without prejudice six months after it was filed for "lack of prosecution."  (See Haddad Suppl. Aff. Ex. A.)  ViaSource contends that "[t]he courts of New Jersey have an interest" in this action because Legacy, by failing to disclose Greenwich's identity, committed a fraud on the courts in New Jersey, which "[t]he courts in New Jersey should be able to vindicate" to preserve "the integrity of their proceedings." (Def.'s Mem. 12, 17.)  However, ViaSource does not point to any purportedly falsified documents that Legacy submitted to a New Jersey court.  Rather, the allegedly fraudulent documents were submitted by Legacy to the New York state court as exhibits to Legacy's complaint.  (See Answer Ex. F ¶¶ 14-15 (Legacy discussing the change of ownership forms, attached as Exhibit B to Legacy's complaint, which ViaSource now contends were fraudulently altered by Legacy).)  Thus, if ViaSource's allegations of fraud are true, the courts of New York, rather than New Jersey, have a greater interest in addressing those claims.

For these reasons, ViaSource has failed to demonstrate clearly and convincingly "'that the balance of convenience weighs strongly in favor of'" transferring this case to the District of New Jersey.  Hubbell, 883 F. Supp. at 962 (quoting Star Lines, 442 F. Supp. at 1207).  Accordingly, ViaSource's motion to transfer venue is denied.

## **CONCLUSION**

For the foregoing reasons, ViaSource's motion to dismiss the Corrected Amended Complaint on grounds of res judicata is DENIED, ViaSource's motion to dismiss the Corrected Amended Complaint for failure to join an indispensable party, Legacy, is DENIED, and ViaSource's motion to transfer this action to the United States District Court for the District of New Jersey is DENIED.  The Clerk of Court is asked to close docket number 18.

**SO ORDERED.**
**New York, New York**

October **4**, 2010

_____
U.S.D.J.